# IN THE UNITED STATES DISTRICT COURT
## THE NORTHEN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **S. JAIN, for herself, and as parent of and** ) <br> **for her son "A", a minor,** ) <br>                    **Plaintiffs,** ) <br> ) <br>    **vs** ) <br> ) <br> **BUTLER ILLINOIS SCHOOL** ) <br> **DISTRICT 53, THE BOARD OF** ) <br> **EDUCATION OF THE BUTLER** ) <br> **ILLINOIS SCHOOL DISTRICT 53,** ) <br> **LOU PASKALIDES, in his official** ) <br> **capacity", RAJIV ADVANI, in his** ) <br> **official capacity, LIZ CHUN, in her** ) <br> **official capacity, TODD RUSTENBERG,** ) <br> **in his official capacity, HITESH PATEL,** ) <br> **in his official capacity, ALAN** ) <br> **HANZLIK, in his personal and official** ) <br> **capacity, ALAN KUMAR, in his official** ) <br> **capacity, HEIDI A. WENNSTROM, in** ) <br> **her personal and official capacities,** ) <br> **KELLY VOLIVA, in her personal and** ) <br> **official capacities, and LISA OWEN, in** ) <br> **her personal and official capacities,** ) <br> **LIBBY N. MASSEY, CAROLINE** ) <br> **ROSELLI, and ATTORNEY DOE,** ) <br> ) <br>                   **Defendants.** ) | **VERIFIED COMPLAINT** <br> **JURY TRIAL DEMANDED** <br><br>  **Case  Number** <br><br><br><br><br><br> **CIVIL RIGHTS ACTION** <br> **FOR VIOLATION OF THE** <br> **5TH & 6TH AMENDMENTS,** <br> **FEDERAL & STATE DUE** <br> **PROCESS RIGHTS, DENIAL** <br> **AND VIOLATIONS OF RIGHTS** <br> **UNDER THE DISTRICT'S UGP,** <br> **FOR RETALIATION, CHILD** <br> **ABUSE, DEFAMATION, &** <br> **FOR DECLARATORY &** <br> **INJUNCTIVE RELIEF &** <br> **FOR DAMAGES** |

## COMPLAINT

Now comes S. Jain, for herself and as Mother of and for her son "A" and states and alleges

against the Defendants as follows:

# I

## NATURE OF ACTION AND JURISDICTION

1.  This is a civil action under 42 U.S.C § 1983 seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of their rights secured under the Constitution and laws of the United States and the State of Illinois, including under the 5th and 6th Amendments, and their federal and State Due Process rights and rights under the Defendant School District's Uniform Grievance Procedure ("UGP"), for the retaliatory actions taken against Plaintiffs for their exercise of constitutionally protected Due Process rights; and for refusing or neglecting to prevent such deprivations and denials to Plaintiffs, for not taking corrective action to cure these violations and for committing other acts which harmed and injured Plaintiffs, including for Child Abuse and Defamation.

2.  This case arises under the United States Constitution and 42 U.S.C. §§ 1983 and 1988, as amended. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343. The declaratory and injunctive relief sought is authorized by 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §1983 and Rule 57 of the Federal Rules of Civil Procedure, and pursuant to the Court's ancillary and supplemental jurisdiction, this Court has jurisdiction over Plaintiffs' related State and common law claims and venue of the named Defendants is proper under 28 U.S.C. §1391.

3.  Plaintiffs bring this action to redress the violations of their rights and for damages for the injuries they sustained, as a result of Defendants' unconstitutional and illegal interrogation of A, for their wrongful and unconstitutional finding that A had cheated with respect to the National

GeoBee 2015-16 contest, the 2015 Fountas & Pinnell ("F&P") assessment, and the 2015 WordMaster test, for the retaliatory actions taken against Plaintiffs when they exercised their rights to dispute those findings, for the denial of their rights to a fair and impartial proceeding to investigate, review and adjudicate their grievance challenging the validity of Superintendent's findings and punitive actions taken against them and their other rights under the Defendant School District's Uniform Grievance Procedure, and for the child abuse and defamation they committed against Plaintiffs. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. 1391(b)(1) and (b)(2). The actions complained of took place in this judicial district.

## II

## THE PARTIES

4. Plaintiff and her biological son, A, reside with her husband and his biological father, at 104 Indian Trail Road, Oak Brook, DuPage County, IL 60523, which is within this Court's territorial jurisdiction. Plaintiff's son was 9 years of age and in the 5th Grade when he was interrogated on January 19, 2016, and later A turned 10. (The term "Plaintiffs" in this Complaint refers to S. Jain and her son and the terms "Plaintiff" and "A's Mother" refers to S. Jain.) Plaintiff S. Jain is also acting on behalf of her minor son as his lawful guardian and representative. They are parties adversely affected by Defendants' actions and decisions and are thus properly before this Court.

5. The Defendant Butler Illinois School Board is a local public agency acting under color of State law in charge of and managing the Butler Illinois School District 53 to provide public education to Elementary and Middle School children living in the District. The Board has

its principal place of business at 2801 York Road, Oak Brook, Illinois 60523, and receives

federal and State education funds. Defendants Lou Paskalides, Rajiv Advani, Liz Chun, Todd

Rustenberg, Hitesh Patel, Alan Hanzlik, and Alan Kumar, were at all times relevant to the events

complained of, the duly elected Members of the Defendant Board and their principal place of

business is at 2801 York Road, Oak Brook, Illinois 60523.  Defendant Alan Hanzlik was and is

the President of the Defendant Board.  The actions and decisions complained of in this

Complaint taken by the above named Defendants, who will be commonly referred to as "The

Board"  in this Complaint, took place within DuPage County, IL, within the geographic boundary

of this Court and are thus subject to this Court's jurisdiction.

    6.    Defendant Heidi A. Wennstrom is the Superintendent of the Defendant School

District, Defendant Kelly Voliva was at all relevant times the Principal of the Brook Forest

Elementary School of the Defendant School District but resigned her position in mid-August

2016.  Ms.Voliva resides at  13080 Ct Waverly, Saint John, IN, 46373, and the actions which are

the subject of the claims against her occurred in Oak Brook in the Defendant School District.

Defendant Lisa Owen is the Assistant Principal of the ~~Brook~~ Forest Elementary School of the

Defendant School District.  Defendants Wenstrom and Owen utilize as their official address that

of the School District, 2801 York Road, Oak Brook, Illinois 60523, and all their actions and

decisions which are the subject of this Complaint took place within the geographic boundaries of

this Court and they are thus subject to this Court's jurisdiction and Defendant Voliva is

otherwise subject to the Court's long arm jurisdiction.  Defendants Wennstrom, Voliva and

Owen are also referred to as "the Interrogators" and as the "Defendant school officials" in this

Complaint.

7. Defendant Libby Massey, is a resident of the City of Chicago, IL, at all times relevant to this action, was employed as an Associate Attorney with the Robbins Schwartz law firm with offices at 55 West Monroe Street, Suite 800, Chicago, IL 60603-5144. Defendant's actions took place in Cook and DuPage Counties, IL, which are in this Court's territorial jurisdiction. Defendant Massey, over Plaintiffs' conflict of interest objection, wrongfully assumed the task of being the UGP independent, impartial attorney fact investigator assigned to investigate and report the facts pertaining Plaintiffs' Appeal of the findings and punitive actions made and imposed on Plaintiffs by Defendant Wennstrom. Defendant Massey, however, as was subsequently learned, was employed by the law firm that provided counsel and assistance to Defendant Wennstrom and other school officials and the Defendant Board respecting the investigation, adverse findings and actions taken against Plaintiffs and was acting as the Defendants School District's. the Board's and School Officials' attorney, which was also not disclosed to Plaintiff Jain when she was notified that Defendant Massey was assigned to be the UGP's independent, impartial fact investigator.

8. Defendants Caroline Roselli and Attorney Doe, at all times relevant to this actions, were also attorneys with the Robbins Schwartz law firm, and the actions of these, who represented the School Defendants as their attorneys in the matters which are the subject of this action. Defendant Roselli represented and provided counsel to the Defendant Board and Defendant Wennstrom during and after Defendant Wennstrom's investigation of and findings of cheating she made against Plaintiffs and worked with Defendant Massey to protect the Defendant School Officials and Board President. Defendant Doe was the Robbins Schwartz attorney who authorized, supervised and approved the work of Defendants Massey and Roselli. The actions of

these Defendants which are the subject matter of this Complaint occurred in Cook and DuPage

Counties, IL, which are in this Court's territorial jurisdiction.

**III**

**FACTS COMMON TO ALL CLAIMS**

**A. The January 19, 2016 Interrogation of A**

9. On January 19, 2016, at approximately 2:00 P.M., without prior notice to A or his

parents, A was taken out of his classroom by the Assistant Principal, Defendant Lisa Owen, who

was also then his home-room teacher, and brought to the Principal's Office where he met the

Superintendent, Defendant Heidi Wennstrom, and the Principal, Defendant Kelly Voliva, who

were waiting for him. Defendant Owen remained in the office and participated in the

interrogation of A. According to A, the interrogation lasted more than an hour and A was

released in time to catch his 3:20 P.M. school bus to go home. Appended hereto as **Exhibit 1** is

a true and correct copy of A's Statement about his interrogation by these three senior school

officials who are tall, heavily and strongly built women. In contrast A was a small, frail, shy

child.

10. A was not told why he was taken from the classroom, nor given the options to remain

in the classroom, or to call his parents. No neutral, third party was present to observe or to

represent and protect A. A was alone, scared, confused, and was told that the interrogation was

being video recorded. A did not want to be in the office. He was surrounded by the three

Interrogators and the setting was overpowering and frightening to A. At some point during the

interrogation A was told that he had to answer "Yes" or "No" to the questions they asked as if he

was in a court of law. He was told that if he answered correctly, he would not be punished.

These remarks made A realize that what was going on was something very serious and he did not know what it was that they thought he did wrong. A was, accordingly, in custody, and not given a choice not to attend, was unrepresented and thus alone with these Interrogators for well more than an hour until he was released to get his things and get the 3:20P.M. school bus home. At the time he was a 9 year old child in the 5th Grade of the Brook Forest Elementary School.

11. The three Defendant school officials interrogated A with the purpose and objective of getting A to admit he had cheated taking the F&P, the GeoBee, and the Word Masters tests. In the case of the GeoBee test, he was accused of using the current GeoBee test that was chosen by the school officials to be given in the Brook Forest Elementary School to prepare to take that same test. A never had that test and did not use it to prepare to take that test. A's Mother had only acquired generally, publicly available materials and used them to prepare A to take the tests as others students had. A had no knowledge whether any of the preparatory materials he used were not allowed to be used to prepare to take the tests. Defendant Wennstrom's anonymous Summary of that interrogation was produced on February 25, 2016, in response to Plaintiffs' February 11, 2016 Freedom of Information Act request. A true and correct copy of this Summary is attached as **Exhibit 2** to this Complaint. No video or audio recording of that interrogation was produced nor any contemporaneous notes. According to the Summary, A was questioned for only 15 minutes, and was told by Defendant Wennstrom that A had admitted that he had cheated on the three tests and that he could not continue to take the GeoBee test which he had started to take that morning of January 19 and that he would be subject to additional punishment. As shown below those findings were unsupported and intentionally contrived in bad faith. Defendant Wennstrom called A's home at approximately 3:30 P.M., on January 19, 2016,

and spoke to A's Father and notified him that she had found that A had cheated with respect to the GeoBee, F&P and WordMasters tests and that he was prohibited from continuing to take the GeoBee test.

**B. The Interrogation Did Not Prove A Had Cheated**

12.   Plaintiff Jain acquired and used generally, publicly available materials, including from the test makers, to help prepare A to take these tests. Plaintiff Jain gave A the National Geographic Atlases, prior GeoBee test questions, Quizlets,  the Geobee Android App, National Geographics and Geobee DVDs, and other similar study materials which are generally used by students to prepare to take the Geobee tests.  Plaintiffs never acquired or used the GeoBee test that was selected to be given in January 2016 to prepare A to take that test.  According to A, during the interrogation, A was questioned about approximately 40 questions regarding Geobee with approximately purportedly 25 current GeoBee test questions and asked if he had recognized or seen them before taking the test.  A said he did not know or that they were similar to questions of old GeoBee tests he had studied.  But his response was rejected by the Interrogators as a lie but it was never shown that what A stated was not the case.

13.   With respect to the F&P and WordMasters tests, Plaintiff Jain purchased and subscribed to use publicly available materials for 5th Graders and there were no restrictions posted on either website that stated that these materials could not be purchased by a parent to help children to prepare to take the respective tests or that the materials would be used in the test to be given by public schools during the 2015-16 academic year. Nor did A's school post any restrictions respecting what materials could be used to prepare to take the F&P or WordMasters tests.

14. Defendants Wennstrom, Voliva and Owen conducted the interrogation of A in an improper and unlawful manner to coerce and mislead A into making statements they wanted him to make, irrespective of whether those statements were true or not, to support their predetermination that A had cheated and irrespective of whether his statements supported the predetermined findings that would be made. According to the Summary, A was first interrogated about the F&P test. Although A admitted that he had used some story books his Mother had given him to help him to prepare to take the assessment, nothing that he said constituted an admission that he or his Mother knew that those story books could not be used for him to prepare to take the reading comprehension assessment or that they knew they were the same materials that would be used for their school assessment. So the finding that A had knowingly cheated was not supported by his interrogation answers about the F&P test. As for A's mother, no restriction was on the website when she ordered the study materials. According to Defendants, a single restriction on the use of the F&P books is inside an unidentified manual out of the many manuals and books she received. There was no evidence or proof that Plaintiff Jain opened or read anything other than few of the story booklets she gave to A to use and none of those booklets contained any restriction against a student using them to prepare to take the test or a notice that these exact versions could be used as public school test materials and Plaintiff had denied having any knowledge of any restriction.

15. With respect to the WordMaster's materials, during the interrogation A made no statement that could be fairly construed that he knowingly cheated by using the practice online Challenge to prepare to take the actual test knowing that it was the same test that would be used, or in taking, the public school test if it was the test that was given. Similarly, it was not

established that Plaintiff Jain knew that the practice online Challenge could not be used by A to prepare to take the public school test or that it would be the exact test that would be given if it was the one used. A's Mother admitted that she had ordered unrestricted, publicly available materials to help A prepare to take the test. At the time there was nothing stated on WordMaster's website that the acquisition and use of these materials could not be used to prepare students to take the tests and there was no statement of such a restriction on the face of the materials received by A's Mother. There was no restriction in the materials downloaded on who could use it or that it would be the WordMasters test for Fifth Graders that year in public schools or that it wasn't a practice test or a recycled used test.

**C. The Interrogation Was Not Fair and Impartial**

16. Defendant Wennstrom's Summary of the Interrogation dealt mostly with the GeoBee test. The Interrogators wanted A to admit that he has used the current GeoBee test to prepare to take the same test the school chose to use. That would have shown that his Mother had obtained a copy of that GeoBee test. The interrogation did not establish that:

(a) A was initially asked some geography questions which he thought he had to answer and prove that he knew the correct answer. That he knew the answer was interpreted to mean that he had the current GeoBee test but it was not shown that he knew the answer because he had studied without having the GeoBee Test and using it to prepare to take it. For example, there is only a limited way of asking what the capitol of a State is and it is easy for a child who studied intensely to take the GeoBee test to answer correctly and say he or she knew the question because he had studied and used other materials to prepare to take the 2016 GeoBee Test.

(b) A when asked if he had seen a specific GeoBee question before, A had

responded either that he did not remember or that they were the same or similar to past GeoBee test questions. Defendant Wennstrom denied that and accused A of lying. But it was not established that he was lying, that the question was not the same or similar to questions in the generally, publicly available preparatory study materials which utilize the question methodology as the principal learning mechanism.

(c) The three Defendant interrogators did not establish on the face of the Summary or otherwise that they had only used questions that were not based on the materials in the National Geographic Atlases or were not the same or similar to previously used test questions on prior GeoBee tests. That was a material omission that was obvious and an act of gross negligence. Their premise was that A could not have seen or been familiar with the GeoBee questions had he not had the 2016 GeoBee test and that premise was faulty and unsupport and the result of ignorance about the GeoBee test and how questions were formulated for the GeoBee tests.

17. The GeoBee tests are based on the facts in its Atlases, study guides and prior tests, and re-ask the same or similar questions of facts in past tests. Student-contestants are allowed to use these materials to prepare to take the new GeoBee test, as is typical of other tests like the SATs. So it is very likely that questions in the current test were from or similar to questions in these materials. Defendants excluded without justification, or documentary support, the possibility that current questions were the same or similar to prior used questions. When the son of Vandana Badlani, who admitted to knowing what the current GeoBee test questions were, was asked how he prepared to take the GeoBee test, he said he studied similar questions and that was accepted and not challenged even though he had the highest score of the Brook Forest fifth grade

students who took that test.

18.   In addition, the format of the questions asked was not neutral.  When A was instructed to answer simply "Yes" or "No", as if he were in a court of law being questioned by the judge, to the questions  the school officials asked was in a manner that suggested the answer. For example, "Didn't you use this question from the GeoBee test to prepare to take the test?"  If the form of the question sought a "Yes" and if A responded "No" that he did not see the question, he was reprimanded and immediately contradicted in a harsh tone of voice:  "We know the truth. Do not lie." That was said repeatedly when his answers to their questions were not the answers they wanted.

19.   During the interrogation, A started to shake and cry, and he was told by the Assistant Principal, Defendant Owen,   "A, do not cry. You are not allowed to cry."  They also told A that they would not proceed to the next question until he answered the question "correctly", "truthfully", when they rejected the truthful answer he gave.  He had to give them the answer they wanted even if that answer was not the truth. Ultimately being traumatized, scared, and confused, A purportedly said whatever they wanted him to say, whether it was true or not, in order to end the ordeal and escape from the Principal's office and go home.  At the end of the interrogation, he was told that he was a cheater and would not be allowed to take the second day of the GeoBee test and was released in time to get the 3:20 P.M. school bus home.

20.   The conclusion that A cheated is invalid, unreasonable, and an unsupported conclusion made improperly, and pre-contrived, in violation of law and the Constitution, of a secret, coercive and abusive interrogation of an unrepresented  9 year old child.

21.   Furthermore, when Plaintiff Jain asked Defendant Wennstrom what GeoBee test

questions were used to interrogate her son, that information was not provided and no document was produced which showed that the Interrogators had screened out GeoBee facts published in the National Geographic Atlases and questions used in prior tests, other publicly available materials, which the Plaintiff's son had studied. By not providing the questions used, Defendant Wennstrom denied Plaintiffs the opportunity to show that A knew the answers from the materials Plaintiffs had which were appropriate for A to use to prepare to take the test.

22. In addition, the Interrogators unreasonably and wrongfully presumed that a frightened, confused, 9 year old child, could remember and distinguish if he had seen that exact question presented him before and separate it out from the innumerable facts and hundreds or thousands of prior or practice GeoBee questions he properly used to prepare to take the GeoBee test or even the same questions he was asked that morning by the Geobee proctor. The Interrogators never established that none of the GeoBee questions that they asked about were never used before in any GeoBee test or allowed preparatory materials.

**D. Defendant Wennstrom's Failure To Provide The Support For Her January 19, 2016 Findings & Punishment of A**

23. Similarly, when after January 19, 2016, Plaintiffs requested on January 20, 22, 24 and February 7, 2016, Defendant Wennstrom to produce the support and basis for her finding that they had cheated on the GeoBee test, and the two other tests, Defendant Wennstrom did not produce any support for her January 19, 2016 findings. She did not produce the video or audio recording that A was told was being made, nor the notes taken by any of the Interrogators during the interrogation, nor a transcript of the interrogation. The unsigned, undated Summary was first produced 37 days later, without other support or proof of Defendant Wennstrom's findings that

Plaintiffs had cheated on the GeoBee test, or that Plaintiff had acquired the GeoBee test and used it to prepare A to take the test as Defendant Wennstrom stated as a finding in her formal February 8, 2016 cheating determination.  Plaintiff Jain's offer to state under oath that they never had that test or used it to prepare A to take the test was also not accepted.  The failure to produce the documents and support for Defendant Wennstrom's findings of cheating, including the failure to disclose to date the actual GeoBee test questions used in interrogating A, or the audio or video recording of the interrogation, or a transcript, are material omissions that can not be ignored and disregarded as a matter of simple justice given the severity of the matter: A was officially found to be a cheater with that finding made a permanent part of his official school record; he is also barred from being able to participate in any extracurricular academic activity while a student in the school district and is required to be treated differently and more harshly than other students as a cheater and a student not to be trusted and to be closely monitored and disciplined and, as a result is experiencing education as a negative encounter and being thereby denied the benefits of the education he is entitled to receive. Plaintiffs are also suffering public humiliation, rejection, ostracization, great emotional and mental pain and suffering as a result of their being condemned and treated as cheaters and persons who are not trustworthy.

**E.  Defendants' Misconduct With The Evidence**

24.  In addition to Defendant Wennstrom's not timely producing in response to Plaintiffs requests made on January 20, 22, 25, and February 7, 2016, any documentation to support her January 19, 2019 findings of cheating, Defendant Wennstrom also failed to disclose exculpatory evidence including:

(a) That, contrary to Defendant Wennstrom's representations,  GeoBee did not

confirm that A's Mother acquired the test but instead intentionally misrepresented that GeoBee confirmed that Plaintiff had fraudulently obtained access together with another parent, when Plaintiff hadn't and when GeoBee had never represented that Plaintiff did;

(b) That the F&P and Wordmasters had acknowledged there was at the time no restriction on the use and purchase of the publicly available materials on their websites and notwithstanding Defendants represented that Plaintiff Jain knowingly wrongfully obtained materials from these sites;

(c) That Defendant Wennstrom did not report and disclose that her effort to get confirmation that Plaintiff Jain had acquired the GeoBee Test that was to be given from a Mother who had acquired it failed. Vandana Badlani had told Defendant Wennstrom that Plaintiff Jain had acquired the GeoBee test from that woman. To get that confirmed, they agreed and arranged to have Vandana Badlani call that woman and secretly record that telephone conversation, in violation of law, to get that collaborating evidence. That call and another were made on January 16, 2016, and secretly recorded but the woman denied that she had given the GeoBee test to Plaintiff or that she knew that Plaintiff had acquired the test from another source. Vandana Badlani failed in the three attempts made to get such a statement from that woman. The transcript that was obtained showed that Defendant Wennstrom was privy to those calls, that she and/or Defendant Voliva made a transcript from the recording which shows on its face that the transcript is incomplete. The oral recordings of those calls were destroyed by the Badlanis and the Defendant school officials and not produced when requested by the Oak Park Police Department.

(d) That the transcript made of another student's questioning about the WordMasters and GeoBee tests was materially incomplete and the recording of that questioning

upon which the transcript was made was destroyed;

(e) That the Summary of A's interrogation was fabricated and materially false and inaccurate, and that the recordings and contemporaneous notes were intentionally destroyed to prevent discovery of evidence that would contradict or be inconsistent with what was represented in that Summary or establish that A was subject to a coercive, manipulative interrogation that was emotionally and psychologically abusive and harmful to A.

(f) That all attempts to get confirmation from a third party that Plaintiffs had acquired the GeoBee test to prepare A to take the same test had failed.

(g) That the evidence that a forensic psychologist found that A was so traumatized by the interrogation that any wrongdoing he may have admitted to committing was totally unreliable and to be ignored and disregarded.

(h) That the January 19, 2016 interrogation of A was conducted improperly, in an abusive manner that nullified its results and rendered unreliable any purported admission of wrongdoing, and

(i) That what the three Interrogators did so traumatized A that it constituted unlawful child abuse which was required by law to be reported to Department of Children and Family Services (DCFS) for investigation and that the Interrogators', the Board's and the Defendant attorneys' failure to do so was in violation of law.

25. Defendant Wennstrom then decided to interrogate A with the assistance of Defendants Voliva and Owen, to present an overpowering atmosphere and to use adult criminal interrogation techniques on A who was alone, without allowing his parent or a representative to be there. In light of what happened, what they did, the invalidity of the interrogation and

impropriety of the methods used, and the false, inaccurate, misrepresented and fabricated purported answers of A render the Summary inadmissible.

26. Defendants' Summary is also unsupported by required objective evidence such as the contemporaneous video or audio recording, or an actual and complete transcript. In contrast, Defendants recorded and made transcripts of other students questioned as part of the investigation of Plaintiffs. The recording and notes taken of the interrogation were destroyed, and also any transcript that was made. It was in the best interests of Defendants Wennstrom, Voliva, and Owen, that this evidence not be preserved but destroyed to preclude discovery of what actually happened and any objective evidence of the abuse and coercion of A that occurred during the interrogation, thus leaving the only "official record" of that interrogation to be the anonymous, undated Summary that produced after the passage of 37 days. That document is materially incomplete and false, including that the interrogation lasted only 15 minutes.

27. The destruction and failure to preserve any of the contemporaneous recordings previously referred to and the original notes of A's interrogation was done knowingly, intentionally, wrongfully and in violation of Plaintiffs' 5th and 6th Amendment Constitutional rights and the requirements of basic justice, and constituted an abuse of authority, discretion, and were acts of professional misconduct, violations of law, including their obligations to preserve evidence of the interrogation and to disclose exculpatory evidence, and their unlawful, coercive and abusive conduct and actions which would have had to be reported to the Department of Children and Family Services (Abused and Neglected Child Reporting Act, 325 ILCS 5/4.)

**F. Wennstrom's Statement Of Her Intent**

28. According to what another parent told Plaintiff, Vandana Badlani told that other

parent that Defendant Wennstrom told Vandana Baldani on or about January 19, 2016, that Defendant Wennstrom had found that Plaintiffs had cheated and that A was barred from taking the second day of the GeoBee test and that she would force A out of the School District. The disclosure of that information by Defendant Wennstrom to Vandana Badlani was in violation of federal and state laws prohibiting disclosure of information respecting a student by school officials. Significantly, Defendant Wennstrom's statement of her intent to get rid of A from the school district was made before any opportunity was provided Plaintiffs to contest her January 19th findings and punishment of A and this confirmed the she had unfairly and with bias pre-determined to find Plaintiffs were cheaters.

**G. Additional Acts Of Misconduct and Retaliation By Defendants**

29.  On February 26, 2016, Plaintiffs filed their Appeal which was treated as a Grievance Complaint to be processed under the District's pre-established UGP according to the Notice dated March 2, 2016, a true and correct copy of which is appended hereto as **Exhibit 3**.

30.  The March 2, 2016 Notice identified the two designated independent Complaint Managers were to oversee the Grievance/Appeal process, including appointing an independent, impartial Fact Investigator and assist the complainant as needed. That was not done in violation of the UGP and Plaintiffs' UGP rights and constitutional rights to due process. Instead, A's parents, the complainants, were never contacted by either of the designated Complaint Managers nor received the assistance they were to provide, including gathering additional support for their grievance. Instead, they were notified by the Robbins Schwartz law firm that Defendant Massey, would be the independent, impartial Fact Investigator. At the time Plaintiffs did not know and were not then informed that Massey was representing the Defendant school officials and Board

during the investigation and findings made against the Plaintiffs or that the Robbins Schwartz law firm had counseled the Defendant School Officials and Board in connection with the investigation of Plaintiffs and the findings made against them.  A serious conflict of interest existed which should have precluded any attorney from that firm being appointed the Fact Investigator. Defendant Massey was chosen to represent the Defendant school officials and Board to assure that the fact investigation and findings would  affirm and uphold the findings of cheating and punishment imposed. and that the above wrongs and errors committed by Defendant Wennstrom and others would be ignored, suppressed, discounted and not taken into account.  To this end and consistent with this objective, Defendant Massey proposed that Defendant Roselli would be the Resolution Facilitator even though no attorney to any party was allowed to participate in the Resolution process and Defendant Roselli had in fact been involved as the attorney counseling Defendant School Officials and Board in the investigation and the findings of cheating and punishment imposed.  Furthermore, it was not then disclosed to Plaintiffs at the time that both Defendant Massey and Defendant Roselli were acting as attorneys representing the Defendant school officials and Board in the UGP investigation.  As explained below, when that was learned by Plaintiffs, they asserted their conflict of interest objection to both Defendants Roselli and Massey being involved in the UGP.  Their objection was rejected.

31. Defendant Massey's "investigation" included ignoring and disregarding the evidentiary deficiencies and misconduct referenced above, the time discrepancy in the length of the interrogation, the exculpatory evidence, evidence of Defendant Wennstrom's improper actions with 3rd parties and misrepresentations of what they said, and the facts respecting what happened to A during the interrogation, what A said had happened, and any evidence to support what A said had happened, including the forensic pediatric psychologist's conclusions, and the

interrogation's adverse effects on A's emotional and psychological well being. After the interrogation by Defendants Wennstrom, Voliva and Owen, A returned home crying, visibly shaken, confused, in a great emotional and mental distress, traumatized and disturbed, feeling great personal shame. He stated that he had been barred from completing the GeoBee test because they said he had cheated and was condemned as a cheater. By being barred from taking the second day of the test all his classmates would wonder why he was not being allowed to finish taking the test. He was known as being an enthusiastic GeoBee test participant. He did not understand how he cheated; he had just used the study materials he had always used which his Mother had obtained and given him to use previously and for the current academic year. He had taken great pride in his knowledge of Geography learned diligently over two years and which his family supported and took great pride in his accomplishments that even as a 4th Grader GeoBee contestant, A was runner-up for the school. A is generally shy and reticent with adults and was known and admired for his knowledge of Geography. After relating to his parents what happened, A went to his room to be alone, secluded, feeling great shame, A did not want to discuss the matter further, and refused to eat supper. He also did not understand how or why the interrogators would not accept his truthful answers and instead wanted him to make the false statements that they wanted. The next morning A also refused to go to school.

32. A obtained counseling support from his Grandmother who is a licensed Ph.D., clinical-psychologist. A was also subsequently seen by an expert pediatric forensic psychologist who concluded that A had been wrongfully traumatized by the interrogation and that his purported admissions of cheating should not be relied upon for any purpose.

33. On January 20, 2016, Plaintiff Jain objected to and denied Defendant Wennstrom's findings and the punishment imposed and requested Defendant Wennstrom to produce the support

for her findings. So it was clear to Defendant Wennstrom that Plaintiffs were contesting her

decision and sought disclosure of the evidence supporting her decision as was their constitutional

right to do. On January 21, 2016, on returning to school, in response Defendant Wennstrom's

informing A's teachers and members of the school staff of her findings of cheating by Plaintiffs,

A and his Mother were treated in a negative and abusive, retaliatory and punitive manner, before

providing Plaintiffs an opportunity to answer and rebut her findings, as if a final decision had been

made including, but not limited to the following instances:

(a) A loves Math and excels in it; after the January 19, 2016 finding that he was a

cheater, his Math and Language Arts teacher would not assign him to work with certain other

students as had been routinely done before.

(b) Defendant Wennstrom also instructed the school staff to report to her any

errors or mistakes that A made and this resulted in A being frequently reported as making

mistakes so that derogatory statements could be included in his school records presumably to

justify his being characterized as a cheater by the added notes of his being a behaviorally bad,

dishonest and academically weak student, more so than other students in the school. That was

done repeatedly and to make A's being a student in the School District unbearable and have his

parents withdrawn him as a student in the School District.

(c) On March 10, 2016 Defendant Owen accused A and humiliated him in front of

the class of plagiarizing by his failure to insert into the text of a first rough draft summary the

sources for the information he was using, the references to which A had listed at the end of the

final summary and entire display board project as per the instruction sheet. Even though A had

already revised the first draft and had correctly inserted into the text the references to the sources,

Defendant Owen, who had accepted and approved the revision, subsequently proceeded to accuse

him of plagiarism, causing him to suffer great embarrassment and humiliation A in front of the

other students and great injury to his good name and reputation. A was then brought to Defendant

Principal's Voliva's office, interrogated and further humiliated in the office and he was given a

major blue slip, which is a penalty of three day sit-ins detentions during lunch and recess to serve

time and write about how wrong it was for him to plagiarize and to admit and reflect on his

dishonesty. Three other students in A's class made the same mistake but they were not punished at

all by Defendants Owen or Voliva. They were simply told to revise their draft.

(d) Furthermore, although A's parents were notified that they or his Grandmother

could sit with A in the classroom while he did his punishment assignments, when they went to the

school to do that, they were not allowed to be with A and had, instead, to sit in the hallway

waiting for the lunch and recess period to end and submit to the humiliation of that. A's

punishment and isolation furthered his sense of rejection and isolation and further damaged his

self-esteem and A refused to return to school for 2 days after he completed the last sit in.

(e) On May 11, 2016, without prior notice to A or his parents, A was taken by Ms.

Melissa Wills, the school's reading specialist, from his Math class causing him to miss most of

the pre-final test Math review lesson. She had A take a lengthy and intensive reading and writing

test, even though he had taken that day a comprehensive Language Arts benchmark test which

also involved reading and writing tests. Since the extra test was very long, A missed his Science

test and Ms. Wills had him take it separately when he should have been in his Social Science class

reviewing for the final Social Science test to be given the next day. As a consequence A did not

perform as well on these tests as he could have. No other student was required to do this and there

was no reason or explanation given why the special reading and writing test had to be taken by A

and why it was not scheduled for a day when it would not interfere with the already scheduled

-22-

tests and pre-test review classes.

(f) On May 20, 2016, A was taking his computer Parcc science exam which had multiple-choice questions and a few essay questions. The essay questions had a 999 word or character limit. A proceeded to type his essay with eagerness and diligence, trying his best effort, and went over the limit causing his computer to freeze. He was told he needed to see the school's technology director to have his computer reset. Normally, a person may just edit the text to reduced the word or character count, and A indicated to Defendant Owen he did not know how many words or characters remained that could be used. Defendant Owen intercepted A on his way to return to finish the exam and spoke to A harshly, and in derogatory tone, and had him write a statement that he was a dishonest student and had been dishonest to the technology director before he was allowed to return to class and retake the exam. A was devastated and again made to feel badly of himself in addition to likely compromising his final performance on the complete rewrite of his science Parcc test after being put down and humiliated in front of his classmates and the technology director.

(g) After Defendant Wennstrom's February 8, 2016 letter to all parents and employees of the School District that she had found cheating by two families, in response to Freedom of Information Act requests, documents were released with Plaintiffs' names not blocked out or deleted as required by law, or persons were simply told the names of the 2 families, and Defendant Wennstrom spoke to persons not authorized to be told about her findings against Plaintiffs whom she identified. The above disclosures caused families and children previously friendly with Plaintiffs to avoid Plaintiffs and view and treat them in a negative, disapproving manner.

**H. Defendant Wennstrom's Failure to Provide Support for Her January 19, 2016 Finding and Decision**

34.   In response to Defendant Wennstrom's telephone announcement to A's Father on January 19, 2016, that she had found A had cheated, Plaintiff emailed Defendant Wennstrom on January 20, 2016, to complain and object to A's secret interrogation and asserted that her son did not cheat and was not a cheater and to object to A's being barred from taking the second day of the GeoBee test and requested that Defendant Wennstrom provide the support and documentation she had for her January 19, 2016 finding that Plaintiffs had cheated with respect to the GeoBee test and the other two tests.   Plaintiff further stated that she would meet with Defendant Wennstrom after she had an opportunity to review the information Defendant Wennstrom had based her findings and decision on and have a reasonable opportunity to gather the information needed to address those issues. Plaintiff also requested a copy of the video recording of the interrogation that the interrogators told A was being made of the interrogation.

35.   Prior to Defendants' issuance of her February 8, 2016, formal decisions regarding Plaintiffs having cheated, Defendant Wennstrom, did not produce a single item to support her findings that Plaintiffs had cheated despite Plaintiffs four requests for that information made on January 20, and again on January 22, 24 and February 7, 2016.   Plaintiff had repeatedly requested that information so she could be prepared to meet with Defendant Wennstrom, but Defendant Wennstrom repeatedly failed and refused to disclose and produce any of that support and also never explained the reasons and justification for not producing the requested information except to deny that a video recording existed. As for A's interrogation, Defendant Wennstrom did not produce the video recording, an audio recording, a transcript, or even the contemporaneous notes that were made.   Only 37 days after the January 19, 2016 interrogation and 17 days after issuance

of the February 8, 2016 formal decision, in response to a Freedom of Information Act request

made by Plaintiffs, the anonymous, undated Summary of the interrogation was produced which, if

it existed in mid January 2016, could have been produced when Plaintiff first requested support

for the cheating charges.

**I. Defendant Wennstrom's Misconduct and Misrepresentations**

36.  Defendant Wennstrom attempted to get collaborating evidence that Plaintiffs cheated

but failed to obtain any including by having another child and friend of A questioned on February

2, 2016.  As stated above, the transcript that was produced is materially incomplete and the

recording upon which it was based was destroyed.

37.  In addition, in attempts to get corroborating evidence, Defendant Wennstrom

contacted National Geographic, Wordmasters, and F & P test makers, and other test makers, and

stated to them that Plaintiffs had cheated on those tests by acquiring copies of the tests in advance

and used them to prepare A to take the tests and had them barred from accessing or using their

sites for any purpose. And asked them to confirm her conclusions.  Defendant Wennstrom made

those statements, which were materially false and untrue, with reckless disregard of the truth,

knowingly and intentionally, to represent and defame Plaintiffs as cheaters and to block their

access to those three sites and others, and did so in violation of Plaintiffs' Due Process rights to

dispute Defendant Wennstrom's accusations and charges before she publically condemned

Plaintiffs as cheaters to these organizations, to the community and public.  Defendant Wennstrom

also had those entities disclose to her private and confidential information such as Plaintiff's

credit card information and her Mother's name, without first obtaining court authorization to do

so and without giving prior notice or after the fact notice to them that disclosure of that

confidential information was requested and that the information was disclosed..  Defendant

Wennstrom also contacted other test entities, even those in which A did not participate in order to intentionally and falsely defame A and his Mother.

38. Defendant Wennstrom was informed by National Geographic, the F&P and WordMaster test makers that no restriction was posted that stated that their respective publicly available material could not be purchased or used to prepare children to take their respective tests and she disregarded those facts as irrelevant to her finding that Plaintiff had intentionally cheated and notwithstanding represented that these entities had confirmed that Plaintiff S. Jain was a cheater.

39. In addition to not producing the support for her January 19, 2016 findings and punishment, Defendant Wennstrom also failed to produce to Plaintiffs exculpatory evidence referred to above. Defendants Massey, Roselli and Doe of the Robbins-Schwartz law firm, and the Board knew or should have known about the exculpatory evidence and did know about the illegal secretly recorded telephone conversation, but disregarded this evidence or failed to undertake any inquiry or remedial actions respecting the violation of law that occurred, and instead disregarded, failed to disclose and otherwise approved the withholding, destruction and fabrication of evidence that had occurred.

**J. The February 8, 2016 Decision and Letters**

40. On or about February 8, 2016, Defendant Wennstrom issued a formal decision barring A from participating in any academic contest while a student in the School District, i.e. until he graduated from 8th Grade or left the School District, stating that Plaintiffs had cheated on the GeoBee, WordMasters contests, and with the F&P assessment. Wennstrom had no reason to make her February 8, 2016, decision before providing Plaintiff with the information she requested and meeting with Plaintiff after Plaintiff had time to study and prepare a response to the information

requested but which Wennstrom never provided. The WordMasters test had been taken by A in November 2015 and the results had been nullified by Wennstrom; Plaintiff was denied access to downloads of Challenges and A had been disqualified from the GeoBee test and he was not to participate in any other extracurricular academic activity. So there was nothing imminent to be avoided. In addition the indefinite punishment did not comply with nor was authorized by any provisions in the School District's disciplinary rules, provisions and policies. There was no reason for Wennstrom to rush to judgment and publish her decision rather than provide the information Plaintiff Jain requested and arrange a meeting after Plaintiffs had time to review and address that information and meet at a mutually convenient time. Since Defendant Wennstrom was constitutionally obligated to give Plaintiffs the support for what she found that they did wrong, including what she relied on in making that January 19, 2016 finding, and give Plaintiffs a reasonable opportunity to respond and be heard in person, but never did, her statements in her February 8 letter that she attempted to meet with Plaintiff and Plaintiff refused to meet, and that she had read and considered all the emails Plaintiffs sent to her, are materially, intentionally misleading and inaccurate and are an admission that she knew and ignored Plaintiffs' repeated requests for the support for her cheating findings.

41. Wennstrom also sent a letter to all parents and School District Employees stating her allegations of cheating by two families rather than dealing with the matter on a confidential basis as is the norm and required by law. Issuance of that letter was totally unnecessary and unjustified in light of the facts of both cases and intended, *inter alia,* to defame and penalize Plaintiff and her son because it was common knowledge that they were one of the families charged and punished for cheating. As a result of the harsh, derogatory statements in that letter, the attitude of school staff towards Plaintiff became widespread and more hostile. Parents of other school children who

knew Plaintiff and her son, including school friends of A, became unfriendly and hostile, and refused to associate with Plaintiffs.

**K. Plaintiffs' Grievance and the Defendants' Misuse of the UGP Process**.

42. During the UGP process Defendant Massey acted as the Defendant school officials and Board's attorney and wrongfully, knowingly and intentionally did not follow the UGP's requirements, rules and policies but under the guise of proceeding pursuant to the UGP misused it for the purpose of upholding Defendant Wennstrom's findings despite Plaintiffs' conflict of interest objections and to Defendant Massy, and any other attorney with the Robbins Schwartz law firm, being the independent, impartial Fact Investigator. Defendant Massey's ability to be the independent, impartial attorney fact investigator placed her in the position of possibly having to make fact findings that would be inconsistent with, contrary to, what her law firm had counseled and approved, and that inherent conflict could influenced her findings and it did.

43. Defendant Massey ignored:

- the admitted destruction of evidence by school officials and other misconduct involving the evidence,

- the exculpatory evidence,

- the misconduct involving the illegal secretly recorded telephone conversation,

- Plaintiffs' account of the interrogation as recounted by A, the traumatic effect it had on A, which contradicted Defendant Wennstrom's description of it as a gentle, interview,

- and even the forensic psychologist' report about A's interrogation, the traumatic effect it had on A, and the unreliability of statements A made during that interrogation;

-28-

- the difference in how Defendant Wennstrom questioned Vandana Badlani's son compared to how A was interrogated;

- Defendant Wennstrom's improper and defamatory statements to third parties respecting her conclusion that Plaintiffs had cheated, her instruction to them what to say and her misrepresentations what they did say;

- treated Plaintiffs in a different manner than she treated Defendant Wennstrom and other school officials, affording them preferential treatment; and

- coordinated and cleared what she was doing with Defendants Roselli, Wennstrom, Hanzlik, and the Board; and even sought their pre-approval; and

- Each of the named Defendants' failure to refer to proper State authorities, for investigation the January 19, 2016 interrogation as a possible instance of child abuse after being informed how psychologically and emotionally traumatized A was by the interrogation, the forensic psychologist's findings.

44.    The Defendants Massey, Roselli and Attorney Doe opposed any non-Robbins Schwartz attorney being made the Fact Investigator because they wanted to control the supposedly independent, impartial investigation and rejected  Plaintiffs' request that an attorney from another law firm or one on the State Board of Education approved list of attorneys be the independent fact investigator.   Defendants Massey, Roselli and Doe's refusal and failure to have Massey replaced by an independent attorney was intentional and knowingly made in breach of their obligations to the School District and in violations of Illinois Professional Code of Conduct and other applicable ethical standards, and unjustified in light of, *inter alia*, the following:

-Defendant Wennstrom's failure to produce the support and evidence for her findings of cheating by Plaintiffs,

- the destruction of evidence by school officials,

- the failure to take into account exculpatory evidence,

- the misconduct involving the illegal secretly recorded telephone conversation,

- Plaintiffs' account of the interrogation as recounted by A, the traumatic effect it had on A, which contradicted Defendant Wennstrom's description of it as a gentle interview,

- and even the forensic psychologist' report about A's interrogation, the traumatic effect it had on A, and the unreliability of statements A made during that interrogation; and

- the failure of school officials, Board Members and themselves to report the instances of possible child abuse for investigation by proper non-school Illinois state authorities.

## L.  The Defendant Board's Decisions Upholding Defendant Wennstrom's Finding & Actions, and Public Statements

45.  On April 15, 2016, the Defendant Board issued its decision denying Plaintiffs' grievance/appeal and approved Defendant Wennstrom's findings and punishments.  The decision quoted from Defendant Massey's Fact Report but did not attach a copy of that Report so Plaintiffs do not know to what extent what was quoted was the complete Fact Report.  Also, although the Fact Report was given to school officials, including to Defendant Wennstrom's administrative assistant and presumably to Defendant Wennstrom, and the Board, it was not given to Plaintiffs nor produced in response to Plaintiffs' FOIA requests.  Plaintiffs in their May 18, 2016. Reconsideration application pointed out that the facts quoted presented the Defendant Wennstrom's version as the correct version, e.g. what she said happened when A was questioned

on January 19, 2016, and that Defendant Massey's facts were essentially one-sided and not objective, and that there were material omissions, including the length of the interrogation, the destruction of evidence, the forensic psychologist's finding that A had been traumatized by the interrogation and the way it was conducted and A's statements were coerced and not to be relied upon. Such evidence could not, consistent with standards of basic justice and due process, have be omitted and disregarded since Defendant Massey's obligation was to report all the facts in an impartial and objective manner. That was not done. She was also obligated to report that child abuse may have occurred and have informed the Board that the Illinois Department of Children and Family Services ( DCFS) were required to be informed that A may have been subjected to one or more instances of emotional and psychological child abuse. The Board's decision did not indicate that that happened or that it, or any member, reported what happened to DCFS for investigation.

46. Although Plaintiffs understood or were told that Defendant Massey's Fact Report would be provided to them so that they could respond to any statement of fact that they thought was inaccurate or wrong, and to point out any facts that were omitted, when Defendant Massey submitted her Fact Report to the Board, Plaintiffs were not served with a copy of that Fact Report but as alleged above it was given to school officials, including Defendant Wennstrom. As alleged above, Plaintiffs subsequent requests for the Fact Report were ignored and denied.

47. When Plaintiffs' grievance was to be heard, the Board did not allow Plaintiffs to address the Board, to answer any questions. Instead, the Board retired to consider the matter in a closed session, which excluded Plaintiffs. Defendant Wennstrom left the hearing room with the Board presumably to be present and to address any matters raised in Defendant Massey's Fact Report or raised by Plaintiffs in their original written Appeal. Plaintiffs were not afforded a

similar opportunity. Nor were Plaintiffs allowed to question Defendant Wennstrom at any time during the investigation and UGP process. Plaintiffs were, in effect, denied their right to a fair hearing and opportunity to be heard by the Defendant School Board before it rendered its decision or to examine Defendant Wennstrom about her investigation, the evidence or findings.

48. Plaintiffs applied for Reconsideration since material evidence supporting their Grievance/Appeal had been disregarded and in their Reconsideration application also proposed a conciliatory resolution which Plaintiffs believed would satisfy the Defendant School District's concerns. That proposal was rejected and subsequently Defendants Wennstrom and Board issued public statements stating that while the Board was open to working out a conciliatory resolution, the two families found to have cheated were not. Plaintiffs had and so that was a materially false statement, intended to further injure and damage Plaintiffs' public good name and reputation.

49. Defendants Wennstrom and the Board also made public statements alluding that the property values in Oak Brook would decrease as a result of the cheating scandal. Since at that time Plaintiffs had made no public statements about the matter when that allegation was made, it was the Defendants School District's, Wennstrom's and Hanzlik's public statements since its February 8, 2016, public letter to all families and School District employees that caused the purported decrease in property values if any had actually occurred. The Defendants' public statement that Plaintiffs and the other family had caused property values to fall was made to further defame the two families and to cause unrest in the community which it, in fact, did.

50. This action is filed to seek redress and compensation for violations of Plaintiffs' civil and constitutional rights and the related wrongs and injuries they suffered.

IV

**FIRST CLAIM FOR RELIEF AGAINST
DEFENDANT SCHOOL DISTRICT 53,
DEFENDANTS WENNSTROM, VOLIVA AND OWEN**

51.  Repeat and reallege the allegations set forth in Paragraphs 1-50, *supra,* as though fully set forth and realleged herein.

52.  The Defendant School District and Defendants Wennstrom, Voliva and Owen are public officials and as such are obligated in all official acts to comply with all applicable requirements of federal and state law, including the protection and rights afforded persons under the United States Constitution and its Amendments.

53.  The January 19, 2016, interrogation of A, was conducted by these Defendants to obtain false admissions and untrue confessions of his cheating that he and his Mother allegedly did in connection with several tests.  The interrogation was conducted in a prosecutorial manner, typically used by police interrogation of adult suspect criminals, the methods used, threats made, and the coercion exerted on this child, Plaintiff A, then 9 years old, violated Plaintiff A's Constitutional Rights, including the rights and protections afforded him under the 5th and 6th Amendments, including his right to representation, his right not to be deprived of life, liberty or property without due process of law, and his right against self incrimination.  In addition the conclusions reached not supported by the facts, evidence, and were arbitrary, unreasonable and result of what was predetermined would be the contrived findings irrespective of the truth.  The Defendant School Board, with assistance of counsel, pre- approved what Defendants Wennstrom, Voliva and Owen did and the misuse of the UGP process that contravened the very purpose of that proceedure and violated its provisions, and then affirmed Defendant Wennstrom's findings and the punishments imposed not with standing the violations of law and other irregularities alleged

-33-

above and below.

54.  At the time, A was a small, slightly built 9 years old, shy child, in the 5th Grade, was considered by Defendants as performing below expectation in his English and Language Art classes and was later evaluated as having language and intellectual skills of a 4th Grader.

55.  The aforesaid Defendants violated A's 5th and 6th Amendment Rights by:

(a) interrogating A secretly, without anyone being present to represent A;

(b) by not informing him of the purpose of his being taken from class or of the interrogation with no option to leave, thereby rendering the interrogation custodial in nature;

(c) not video or audio recording the interrogation which prevented the creation of an objective evidentiary record of the interrogation, and if any type of recording was made, their destroying it, was done intentionally to prevent discovery and use of the recording of the interrogation, and as evidence of their wrongful, acts and threats towards the child during the interrogation.  Their intention was to get statements from him to support their predetermination that A had cheated, to disqualify him from finishing taking the GeoBee test and to condemn punish him severely for cheating even if he hadn't;

(d) using threats and coercion and otherwise intimidating A by both the circumstances, what was said and tone of voice, including by removing him from his classroom to be interrogation alone by Defendants Wennstrom, Voliva and Owen in Principal Voliva's office, without giving A the option of not being interrogated or having a parent present or some one else to represent and assist him;

-34-

(e) by asking confusing, ambiguous, and misleading questions and instructing him to answer "yes" or "no" as if he was in a court of law;

(f) by rejecting his answers as lies when his answers were not the ones that they wanted; and

(g) when A's parents denied that A had cheated on the GeoBee test and appealed the February 8, 2016 decision that he had, A was subject to retaliatory measures, including the imposition of punishments and harsher treatment than were imposed on other students, and generally treated differently by his teachers who considered him to be dishonest, a cheater and someone not to be trusted.

56.   As a result and direct consequence of the aforesaid interrogation and actions taken in disregard of and in violation of A's 5th and 6th Amendment Rights, Illinois laws protecting children from child abuse by school officials, A's statements should be suppressed, voided and nullified, *ab initio*, and damages awarded against each of the Defendants in the sum of $10 million for violation of A's constitutional rights, and punitive or exemplary damages awarded against Defendants Wennstrom, Voliva and Owen in an amount the Court or trier of fact deems appropriate to penalize and prevent them from engaging in such conduct blatantly in violation of Constitutional limitations on the exercise of their governmental powers and official duties, and granting preliminary and permanent injunctive relief granted mandating the correction of school records and enjoining and striking the punishment imposed on A barring him from participating in extracurricular academic activities.

V

## SECOND CLAIM FOR RELIEF AGAINST
## DEFENDANT SCHOOL DISTRICT 53,
## THE DEFENDANT BOARD AND BOARD MEMBERS,
## DEFENDANTS WENNSTROM, VOLIVA AND OWEN

57.   Repeat and reallege the allegations set forth in Paragraphs 1-56, supra, as though fully set forth herein.

58.   Defendants' decision that Plaintiffs cheated and the punishment and sanctions imposed were based solely on what Defendant Wennstrom found that Plaintiff, A's Mother, did in acquiring and using F&P materials, Wordmaster materials, and the Geography resources to prepare A to take those assessments and competitive tests and without establishing that A himself knowingly and intentionally wrongfully used those materials to cheat.  A innocently used materials his Mother gave him to help him prepare for the tests and assessments as he always did believing that there was nothing wrong in using those materials to prepare for the tests and assessments.

59.   Cheating by a test taker is a knowing and intentional, wrongful act involving conduct and actions taken by the test taker that he or she knew were wrong and not permitted. Defendants' decision that A cheated were not based upon or supported by any such knowing, intentional and wrongful acts that A had taken but were based upon what A's Mother had purportedly wrongfully did in acquiring preparatory test materials.

60.   The Defendants' punishments imposed on A were for the purported wrongs that A's Mother did and not for what A himself knowing and intentionally did to cheat and that is in violation of A's Fifth Amendment Rights which bar a person being punished for wrongs committed by another person, including a parent.

61.  As a result of the aforesaid unconstitutional and unlawful attribution of cheating imposed on A, and violation of Illinois laws protecting children from child abuse by school officials, all references in all documents referring to A has having engaged in cheating are to be removed, deleted, nullified and destroyed, and for the wrongful injury, harm and the sanctions imposed on him removed and nullified and damages awarded against each of the Defendants in the sum of $10 million for violation of A's constitutional and state law rights, including Illinois laws protecting children from child abuse by school officials, and punitive or exemplary damages awarded against Defendants Wennstrom, Voliva and Owen in an amount the Court or trier of fact deems appropriate to penalize and prevent them from engaging in such conduct blatantly in violation of Constitutional limitations on the exercise of their governmental powers and official duties and preliminary and granting permanent injunctive relief granted mandating the correction of school records and enjoining and striking the punishment imposed on A barring him from participating in extracurricular academic activities.

## VI

### THIRD CLAIM FOR RELIEF AGAINST
### DEFENDANT SCHOOL DISTRICT 53,
### THE DEFENDANT BOARD AND BOARD MEMBERS,
### DEFENDANTS WENNSTROM, VOLIVA AND OWEN

62.  Repeat and reallege the allegations set forth in Paragraphs 1-61, *supra*, as though fully set forth herein.

63.  To defame and injure Plaintiffs, Defendant Wennstrom on or about and after January 19, 2016, disclosed in violation of federal and state law to various persons,  information about A's school academic activities that she had found that he had cheated on the GeoBee, WordMasters and F&P tests and persons who received, appropriately or in violation of law, that information

passed it onto other persons not entitled to have that information, including similar unlawful disclosures made by Defendants Voliva and Owen. Defendant Wennstrom, as Superintendent, is the person with the primary responsibility under federal and state law to see that all school officials and personnel comply strictly with the provisions barring the unauthorized disclosure of information about any student and her violations of those restrictions were knowingly and intentionally done, with malicious intent, and in egregious violation of the duties she owed A.

64. As a direct and proximate cause of A's being wrongfully and unconstitutional determined to be a cheater and the unlawful disclosure of that information, after his being barred on January 19, 2016, from completing the GeoBee test, most other children who had befriended and associated with A stopped having anything to do with him because they found out or believed he was barred from completing the GeoBee test because he was found to be a cheater, and he was singled out by his Language Arts and Math teacher to not work with certain other students as had been the common, routine practice, and the attitude and treatment he received from other teachers also changed and became negative. After the February 8, 2016 letter that Defendant Wennstrom sent to all parents and school employees and officials, the estrangement and negative treatment grew and it quickly became know in the community that A was one of the students declared to be a cheater. Issuance of that letter was premature and unnecessary since the punitive measures had taken effect, there was no imminent threat or a similar violation by A or any other student, and the validity of Wennstrom's findings were subject to appeal and review, and thus not final, and it is customary and expected that such matters remain confidential for the protection of the good name of the students and families even where guilt of cheating is not contested or open to question.

65. As a direct and proximate result of the aforesaid wrongful acts and condemnation by Defendants of A, and in violation of laws against child abuse by school officials, A suffered great

emotional and psychological injury, harm and distress, pain and suffering, was fearful and reluctant to go to school, of being treated differently and harshly by teachers, withdrew and became more isolated and reticent, and less trusting of his parents for which A seeks $10 million in damages from each of the above named Defendants and punitive or exemplary damages awarded against Defendant Wennstrom and the School District in an amount the Court or trier of fact deems appropriate to penalize and prevent them from engaging in such conduct blatantly in violation of Constitutional limitations on the exercise of their governmental powers and official duties and preliminary and garnting permanent injunctive relief granted mandating the correction of school records and enjoining and striking the punishment imposed on A barring him from participating in extracurricular academic activities.

## VII

### THE FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT SCHOOL DISTRICT 53, THE DEFENDANT BOARD AND BOARD MEMBERS, DEFENDANTS WENNSTROM, VOLIVA AND OWEN

66.  Repeat and reallege the allegations set forth in Paragraphs 1-65, *supra*, as though fully set forth herein.

67.  The interrogation of A was in violation of the family's Constitutional and common law privacy rights in that it was in fact an investigation of wrongdoing by A's Mother that exceeded the lawful limitations of Defendants' authority by using a 9 year old child to get information about possible acts of cheating by his Mother.   Defendants should have met privately with A's parents and reviewed with them their concerns and evidence.   Instead they wrongfully disregarded and rejected the statements made and evidence offered or submitted to support that they had not cheated, including A's Mother explanations to them that she never had a copy of the

GeoBee test that was to be given and had only acquired for her son to use to prepare to take the tests only generally, publicly available material that was not stated to be restricted and not to be used by students who would take these tests. Defendants simply wrongfully and unreasonably in violation of their duties as public officials failed to assess all the evidence and its sufficiency in a fair, impartial, reasonable, and objective manner, and not assume that Plaintiffs had knowing obtained and used materials that were barred from being used to prepare a student to take the tests in question and disregarded all the evidence that was exculpatory, the Defendant school officials misconduct, including with respect to the evidence, in dealings with third parties, Plaintiffs' UGP submissions.

68. The Defendant School District and the Defendant Board and its Members approved what was done by Defendants Wennstrom, Voliva and Owen, in total disregard of the family's Constitutional and common law rights to family privacy and laws protecting child from emotional and psychological child abuse by school officials and other persons.

69. As a direct and proximate result of the aforesaid wrongful acts of the Defendants, the family's privacy was wrongfully invaded, the family placed under undue stress and strain, have endured great mental and painful anguish, pain and suffering, have had inter-family relationships injured and harmed, a loss of trust by A with his Mother, tensions and difficulties between the family members, the withdrawal of A from being active in family matters and in activities he had been active in but with the loss of friends and their good will, more alone, and have caused A to be denied the full benefits of the education he is entitled to have and undermined his trust in authorities and the system of justice, for which Plaintiffs seek $10 million in damages from each of the Defendants, and punitive and exemplary damages against Defendants in an amount the Court or trier of fact deems appropriate to penalize and prevent her from engaging in such conduct

blatantly in violation of the family's Constitutional privacy rights and A's right to be educated in a

safe school environment without being subject to being emotionally and psychologically abused

by school officials and granting preliminary and permanent injunctive relief granted mandating

the correction of school records and enjoining and striking the punishment imposed on A barring

him from participating in extracurricular activities.

## VIII

### THE FIFTH CLAIM FOR RELIEF AGAINST
### DEFENDANT SCHOOL DISTRICT 53,
### DEFENDANTS WENNSTROM, VOLIVA AND OWEN

70.  Repeat and reallege the allegations set forth in Paragraphs 1-69, *supra*, as though fully

set forth herein.

71.  The January 19, 2016 interrogation of A and the manner in which it was done caused

A to suffer unjustifiably extreme trauma involving mental and emotional abuse and, as a

consequence,  he returned home in a traumatized state, not knowing or understanding what he did

wrong, questioning himself, his self of personal goodness and respect, and having his trust in the

integrity and honesty of his Mother questioned, if not undermined. Furthermore, A continued to

suffer from emotional trauma resulting from the harsh interrogation using him to try to prove the

guilt of his Mother, from being labeled and punished as a cheater, being repeatedly treated

negatively, harshly and differently at school.  This trauma was severe, debilitating and continued

till the end of the school year and is continuing to the present.

72.  Defendants' actions with respect to the interrogation constituted an act of child abuse

and their continued maltreatment of A furthered the harm, injuries and damages suffered by A

for which A seek $10 million in damages from each of the Defendants, and punitive and

exemplary damages against Defendants Wennstrom, Voliva and Owen in an amount the Court or

trier of fact deems appropriate to penalize and prevent them from engaging in such conduct that injures and harms children and granting preliminary and permanent injunctive relief granted mandating the correction of school records and enjoining and striking the punishment imposed on A barring him from participating in extracurricular academic activities.

## IX

### THE SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT SCHOOL DISTRICT 53, DEFENDANTS WENNSTROM, VOLIVA AND OWEN

73.    Repeat and reallege the allegations set forth in Paragraphs 1-71, *supra*, as though fully set forth herein.

74.    Defendants Wennstrom, Voliva and Owen in breach of their professional and fiduciary duties as school officials to keep and report accurately timely records on investigations of suspected or accused misconduct, intentionally and in knowing violation of their professional duties and general accepted ethical principles applicable to school officials and as generally required by well established law

(a) failed to make a contemporaneous video or audio recording of the January 19, 2016 interrogation of A;

(b) failed to make and preserve contemporaneous accurate and complete notes of the Interrogation of A that took place on January 19, 2016;

(c) conspired and agree to make and fabricate the Summary of the January 19, 2016 interrogation of A knowing that it was materially inaccurate, incomplete, and intended to avoid disclosure of their improper actions, how the interrogation was in fact conducted and what threats and coercion they exercise on A and how what they did traumatized him and caused him to

suffer great emotional and psychological abuse and harm to his well being;

(d) produced transcripts of other 5th Grade students questioned about the one or more of the tests that A was found to have cheated on but destroyed the audio or video recordings upon which those transcripts were based;

(e) failed to preserve the secret, illegal telephone recording of Vandana Badlani's conversation with that Mother;

(f) composed an inaccurate and incomplete transcript of the illegal, secret telephone recording; and

(g) failed to disclose to the Board and its attorneys as exculpatory evidence the fact the three failed attempts made to get confirmation from GeoBee, and other persons investigated or questioned.

75. These aforesaid breaches of their professional and fiduciary duties were carried out with the specific intent and as a vicious, malevolent conspiracy to support the false and unsupported "finding" made by Defendant Wennstrom that Plaintiffs had acquired the GeoBee test for the purpose of A's cheating when he took the test when in fact they had not and to bar him from competing with Vandana Badlani's son in the GeoBee test competition and to establish that A had knowingly cheated with regard to the WordMasters test when he hadn't and to prevent the existence of any objective evidence of the above listed events, including A's interrogation.

76. As a direct and proximate result of these Defendants' aforesaid breaches of their professional and fiduciary duties owe Plaintiffs, Plaintiffs have been injured and suffered losses and damages for which Plaintiffs seek $10 million in damages from each of the Defendants, and punitive and exemplary damages against Defendants Wennstrom, Voliva and Owen in an amount the Court or trier of fact deems appropriate to penalize and prevent them for their misconduct and

breaches of professional and fiduciary duties owed Plaintiffs and granting preliminary and permanent injunctive relief granted mandating the correction of school records and enjoining and striking the punishment imposed on A barring him from participating in extracurricular academic activities.

## X

### THE SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT SCHOOL DISTRICT 53, DEFENDANT WENNSTROM

77. Repeat and reallege the allegations set forth in Paragraphs 1-76, *supra*, as though fully set forth herein.

78. Defendant Wennstrom and Vandana Badlani conspired together to create false evidence that Plaintiffs had the GeoBee test, used it to prepare A to take the test, and to have them condemned as cheaters and have A disqualified from taking or completing the GeoBee test. They did this by

(a) Defendant Wennstrom and Vandana Badlani agreeing and arranging to secretly record a telephone conversation between Vandana Badlani and the Mother whom Vandana Badlani tried unsuccessfully three (3) times to get to say that she had given the test to Plaintiff or knew that Plaintiff had acquired it;

(b) The Badlanis and the Defendant school officials destroyed the secret, illegal recordings of the telephone calls thereby preventing their production to both the Oak Brook police and to Plaintiffs;

(c) Defendant Wennstrom then attempted but failed to get confirmation from the National GeoBee that Plaintiff had acquired the test or was a part of a home school account. Notwithstanding, Defendant Wennstrom misrepresented that National GeoBee had confirmed that

Plaintiff had acquired the test from it and was involved in the creation of the home school account which obtained the test.

(d) Then by having Defendants Voliva and Owen question a child who never studied with A to prepare to take the GeoBee test to get him to say that A had used the GeoBee test to prepare to take it, ignoring the lack of any evidence to support what the child's hearsay statements were based upon, and destroying the oral recording that the transcript that was based upon to preclude evidence that the transcript was incomplete, the statements were incorrectly transcribed and not taken out of context.

(e) Defendant Wennstrom's conveying information in violation of federal and state law about A, the finding that they had cheated on the GeoBee test to other persons not entitled to have that information, Plaintiffs' appeal to the Defendant Board and the objections Plaintiffs raised, and Defendant Wennstrom's disclosing that information to persons not entitled to be given that information, in order to diminishes Plaintiffs' standing in the community, their personal good name, reputation, and credibility.

79. As a direct and proximate result of these Defendants' aforesaid conspiracy to defame and injure Plaintiffs and have them falsely accused and found to have cheated by acquiring and using the GeoBee test when they had not, Plaintiffs have been injured and suffered losses and damages for which Plaintiffs seek $10 million in damages from each of the Defendants, and punitive and exemplary damages against Defendants Wennstrom, Voliva and Owen in an amount the Court or trier of fact deems appropriate to penalize and prevent them for their misconduct and breaches of professional and fiduciary duties owed Plaintiffs and preliminary and granting permanent injunctive relief granted mandating the correction of school records and enjoining and striking the punishment imposed on A barring him from participating in extracurricular academic

activities.

## XI

## THE EIGHTH CLAIM FOR RELIEF AGAINST
## DEFENDANT SCHOOL DISTRICT 53,
## DEFENDANT BOARD AND BOARD MEMBERS,
## AND DEFENDANT MASSEY

80.  Repeat and reallege the allegations set forth in Paragraphs 1-79, *supra, as though*
fully set forth herein.

81.  When Plaintiffs filed their grievance/appeal, they had a right under the Uniform
Grievance Procedure, State Education Law and as a matter of Due Process to have appointed a
fact investigator who was independent and impartial, with no ties to the school officials, Members
of the Board, nor with the Robbins Schwartz law firm, who had any involvement in the matters
that were the subject of the grievance/appeal.  The School Defendants did.  Defendant Massey
was wrongfully appointed by the Defendant Board to be the independent, impartial fact
investigator when she was precluded from being the fact investigator because Massey was an
attorney with the Robbins Schwartz law firm which was involved in counseling Defendants
Wennstrom and the Board in connection with the cheating decision which Plaintiffs were
disputing and that rendered her less likely to be impartial and independent and to counter the
counsel her law firm had provided. Under Illinois Rules of Professional Conduct General Rule
1.10.(a), which states:

> No lawyer associated with a firm shall represent a client when
>
> the lawyer knows or reasonably should know that another
>
> lawyer associated with that firm would be prohibited from
>
> doing so by Rules 1.7, 1.8(c) or 1.9, except as permitted by

Rules 1.10(b), (c) or (d), or by Rule 1.11 or Rule 1.12,

and other ethical rules and standards Defendant Massey, including as a person acting in a quasi judicial capacity, even if she had no prior involvement in the matter. Massey could not be the independent attorney Fact Investigator because, *inter alia,* other attorneys from her law firm, in particular Defendant Roselli, had been involved in counseling and assisting the Defendant Superintendent and Board in the matter, including during the investigation, that was being appealed. Plaintiffs asserted their conflict of interest objection with respect to both Defendant Roselli and Massey's being the Resolution Facilitator or Fact Investigator because of the existing, blatant conflict of interest which Plaintiffs refused to waive and which Plaintiffs also raised with the Defendant Board and all its Members. Plaintiffs were told that Defendant Massey would investigate the facts notwithstanding, were assured that Massey would proceed in an impartial, independent manner, and if Plaintiffs did not submit to the investigation meeting, Defendant Massey would issue her fact report without the benefit of their input. Plaintiffs did meet with Defendant Massey but expressly noted that they were not waiving their conflict of objection. Defendant Massey did not proceed in an independent, neutral and impartial manner as the UGP required but as an attorney representing the Defendants school officials and Board to have the Board affirm Defendant Wennstrom's findings and actions which it had in fact approved.

82. Defendant Massey refused to allow Plaintiffs to audio or video record the meeting, refused to allow a licensed court reporter to transcript the meeting even though Massey said that notes could be taken, to prevent an accurate, objective record of her meeting with Plaintiffs, disregarded evidence supporting Plaintiffs, including Plaintiffs' written submission, and the numerous school officials' misconduct regarding evidence, Defendants' misrepresentations respecting the evidence, attempts to influence statements of third parties and have stated

-47-

conclusions that Plaintiffs cheated when they could not honestly do so, and treated Plaintiffs unfavorably and differently than she treated the Defendant school officials and repeatedly sought the approval of the other Defendants to what she wrote, did and decided.

83.   After Defendant Massey met separately with Plaintiff and the responsible Defendant School officials, she issued a fact report to the Defendant Board but did not provide a copy of that report to Plaintiffs denying them their right to respond to errors and omissions in that Fact Report which was supposed to present all the evidence in an impartial, objective fashion. In contrast a copy of her Fact Report was given to school officials and later also to the Defendant Board.

84.   When Plaintiffs' grievance was heard, no opportunity was presented to Plaintiffs to address the Defendant Board, to answer questions they had.  Instead the Board held an *in camera* meeting which Defendant Wennstrom participated in and subsequently the Board issued its decision affirming the February 8, 2016 findings of cheating, relying in part on Defendant Massey's fact report.

85.  Defendant Massey's Fact Report was not impartial but, *inter alia*, adopted the Defendant Wennstrom's version of the facts and ignored material facts that supported Plaintiffs as heretofore described  and which undermined the integrity and correctness of the February 8, 2016 cheating findings, including the Fact Report's omission of the forensic psychologist's report that A's testimony could not be relied upon in light of how the interrogation was conducted and A's desire to escape by saying anything that the interrogators wanted inorder to return to class and go home, ignored the material evidentiary deficiencies, misconduct regarding the evidence, and the severe traumatic injury A sustained as a result of the interrogation, and the fact that A's interrogation constituted an illegal act of child abuse which was required to be reported for

-48-

investigation to the Department of Children and Family Services. Defendant Massey did not even mention that A had been seen by a forensic psychologist.

86. In addition, Defendant Massey ignored, did not investigate or even refer to the exculpatory evidence that showed that Plaintiffs had not acquired the GeoBee test. Nor did Defendant Massey note the discrepancies in the documents, Defendant Wennstrom's total failure to provide Plaintiffs with the support she had to support her January 19, 2016 findings of cheating by Plaintiffs, the substantive evidentiary deficiency for Defendant Wennstrom's findings, her misconduct and violations of law, the failure of the School District's disciplinary rules to authorize the punishment imposed, and she also ignored the Constitutional violations of plaintiffs rights that had occurred.

87. As a result of the above, the Defendants denied Plaintiffs their legal and constitutional rights under the Uniform Grievance Procedure, and their constitutional right to Due Process; and Defendant Massey denied and violated her obligation to Plaintiffs to proceed in an independent and impartial manner, and to report or recommend that the School Board file the required report of possible child abuse, and, accordingly, the Defendant Board's Decision upholding the February 8, 2016 finding of cheating should be declared null and void, all documents in school records referring to the cheating be deleted and sanctions against A vacated as unauthorized, contrary to law, an abuse of discretion, and unconstitutional, and award damages against Defendant Massey in the sum of $10 million for violation of A's constitutional rights, and punitive or exemplary damages in an amount the Court or trier of fact deems appropriate to penalize and prevent her from engaging in such conduct blatantly in violation of Constitutional limitations on the exercise of her powers under the Uniform Grievance Act and granting preliminary and permanent injunctive relief granted mandating the correction of school records and enjoining and striking the

punishment imposed on A barring him from participating in extracurricular academic activities.

## XII

### THE NINTH CLAIM FOR RELIEF AGAINST, DEFENDANT BOARD AND BOARD MEMBERS, DEFENDANTS ROSELLI AND DOE

88.  Repeat and reallege the allegations set forth in Paragraphs 1-87, *supra*, as though fully set forth herein.

89.  The Defendants, having been placed on notice that serious questions were raised about the validity of Defendant Wennstrom's findings of Plaintiffs' cheating, the methods used to interrogate A, the sufficieny and legitimacy of the evidence, the questions and issues raised by the discrepancies in documents and the destruction of evidence, including audio and video recordings, and the existence of exculpatory evidence which undermined the validity of Defendants Wennstrom's finding that Plaintiffs had cheated with respect to the GeoBee contest and undermined the validity of the Summary of A's interrogation,  had a duty to investigate what Defendants Wennstrom, Voliva and Owens did and the evidentiary issues raised and they owed this duty to the School District and to Plaintiffs who are members of the School District.

90.  Defendants failed to fulfill their professional duties and obligations to Plaintiffs and the School District in accordance with generally accepted applicable standards and as a direct and proximate result of their breaches of the duties and obligations owed Plaintiffs and the School District, and as required by law for the reporting of child abuse, Plaintiffs have been injured and suffered losses and damages for which Plaintiffs seek $10 million in damages from each of the Defendants, and punitive and exemplary damages against Defendants in an amount the Court or trier of fact deems fair, reasonable and appropriate, and further request the Court to consider requiring these Defendants to reimburse and make whole the School District for the costs and

losses it has incurred in this matter and granting preliminary and permanent injunctive relief

granted mandating the correction of school records and enjoining and striking the punishment

imposed on A barring him from participating in extracurricular academic activities.

## XIII

### THE TENTH CLAIM FOR RELIEF AGAINST
### DEFENDANT SCHOOL DISTRICT 53,
### THE DEFENDANT BOARD AND BOARD MEMBERS,
### DEFENDANT WENNSTROM

91.  Repeat and reallege the allegations set forth in Paragraphs 1-90, *supra*, as though fully

set forth herein.

92.  Defendant Wennstrom officially advised National Geographic that Plaintiff had

cheated in connection with the GeoBee test and requested that A be permanently barred from

being allowed to participate in future GeoBee test contests and to bar A's parents from having

access to the National geographic/GeoBee site and its materials.  The Defendant Board and its

Members approved and supported what Defendant Wennstrom told the National

Geographic/GeoBee authorities and the restrictions that she requested to be imposed.  In response

National Geographic announced that this was the worse case of GeoBee cheating in the history of

the GeoBee contests.  Defendants quoted National Geographics condemnation in their statements

and letters as made against Plaintiffs.

93.  Defendants' aforesaid statements to the National Geographic/GeoBee authorities

about Plaintiffs having cheated with regard to the 2015-16 GeoBee test contest were false and

untrue, made with reckless disregard of the truth, including the exculpatory evidence that existed

and other evidentiary issues which undermined the integrity and veracity of the investigation and

documents, and with malice a forethought to knowingly and intentionally damage and injure

Plaintiffs good name and reputations which it did as alleged above.

94.  As a direct and proximate cause of Defendants' wrongful defamation of Plaintiffs, Plaintiffs have suffered substantial and irreparable injuries to their personal and professional good names and reputations, have suffered great emotional and psychological injury, harm and distress, pain and suffering, endured loss of friends, public scorn and condemnation as heretofore alleged, for which Plaintiffs seek $10 million in damages from each of the above named Defendants and punitive or exemplary damages awarded against Defendants in an amount the Court or trier of fact deems fair, just reasonable and appropriate to penalize and prevent them from engaging in such conduct in the future, and granting preliminary and permanent injunctive relief granted mandating the correction of school records and enjoining and striking the punishment imposed on A barring him from participating in extracurricular academic activities.

## XIV

## THE ELEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT SCHOOL DISTRICT 53, THE DEFENDANT BOARD AND BOARD MEMBERS, DEFENDANT WENNSTROM

95.  Repeat and reallege the allegations set forth in Paragraphs 1-94, *supra*, as though fully set forth herein.

96.  Defendant Wennstrom also officially advised the F&P, Wordmasters and other test makers that they were found to have cheated in connection with extra-curricular tests given at the school and requested that A be permanently barred from being allowed to participate in future test contests and to bar A's parents from having access to their site and its materials.  As alleged above, the Defendant Board and its Members approved and supported what Defendant Wennstrom did and the restrictions that she requested to be imposed and did so even though they

were not authorized by the District Disciplinary Rules.

97.  Defendants' aforesaid statements to the test makers about Plaintiffs having cheated with extracurricular tests A took at the school were false and untrue, made with reckless disregard of the truth, including the exculpatory evidence that existed and other evidentiary issues which undermined the integrity and veracity of the investigation and documents, and with malice a forethought to knowingly and intentionally damage and injure Plaintiffs' good name and reputations which it did as alleged above and confidential information was obtained without judical authorization or notice to Plaintiffs and Plaintiff Jain's mother.

98.  As a direct and proximate cause of Defendants' wrongful defamation of Plaintiffs and invasion of their privacy, Plaintiffs have suffered substantial and irreparable injuries to their personal and professional good names and reputations, have suffered great emotional and psychological injury, harm and distress, pain and suffering, endured loss of friends, public scorn and condemnation as heretofore alleged, for which Plaintiffs seek $10 million in damages from each of the above named Defendants and punitive or exemplary damages awarded against Defendants in an amount the Court or trier of fact deems fair, just reasonable and appropriate to penalize and prevent them from engaging in such conduct in the future and granting preliminary and permanent injunctive relief granted mandating the correction of school records and enjoining and striking the punishment imposed on A barring him from participating in extracurricular academic activities.

## XV

### THE TWELFTH CLAIM FOR RELIEF AGAINST
### DEFENDANT SCHOOL DISTRICT 53,
### THE DEFENDANT BOARD AND BOARD MEMBERS

99.  Repeat and reallege the allegations set forth in Paragraphs 1-98, *supra*, as though fully

set forth herein.

100.  Defendant Wennstrom's findings and decision of January 19, 2016, and February 8, 2016, and the Defendant Board and Board Member's Decision upholding Defendant Wennstroms aforesaid findings, decisions and actions, and their rejection of Plaintiffs Reconsideration was arbitrary, capricious, unreasonable, unlawful, and unconstitutional, and in breach of their fiduciary and official duties owed to Plaintiffs and accordingly needs to be vacated, set aside and all actions taken on the basis of that reversed, vacated, and enjoined.

**XVI**

**THE THIRTEENTH CLAIM FOR RELIEF AGAINST
DEFENDANT SCHOOL DISTRICT 53,
THE DEFENDANT BOARD AND BOARD MEMBERS**

101.  Repeat and reallege the allegations set forth in Paragraphs 1-100, *supra*, as though fully set forth herein.

102.  The Tenth Amendment of the United States Constitution and Section 24 of Article I of the Illinois Constitutions provide that rights not delegated to either governmental authority are preserved and retained by the people and these reserved rights include the fundamental and common law rights of the parents to educate their children, to oversee and assist in their education, including by using publicly available materials to prepare their children, and other children with their respective parents permission, to learn the subject matter of the courses being taken in school, to prepare to take tests both those given by the school, the State or by entities that provide extracurricular tests, and to engage in learning of additional or supplemental disciplines to further educate the children.

103.  Plaintiff's exercise of her right to assist and supplement A's education and those of other children by use of publicly available materials is not, and was not, in violation of any law or

-54-

restriction and Defendants aforesaid actions and condemnations of Plaintiffs have in violation of their aforesaid protected Federal and State Constitutional and common law rights adversely impeded, interfered with, injured and denied their exercise of these rights unfairly and unjustly.

104.  Plaintiffs request entry of a Declaratory Judgment stating that Defendants aforesaid actions and condemnations of Plaintiffs have, in violation of their aforesaid protected Federal and State Constitutional and common law rights adversely impeded, interfered with, injured and denied their exercise of these rights unfairly and unjustly and that Plaintiff may continue to exercise her aforesaid protected rights to educate her son and other children by use of publicly available materials, supplemental courses and educational programs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that their claims be adjudicated by a jury and pray that Judgment be entered against the Defendants, jointly and severally, granting the following relief:

A.  On the **First, Second,  Eighth, Ninth, and Twelfth Claims for Relief,** entering an Order nullifying the February 8, 2016 cheating decision and the Board's Decisions upholding the February 8, 2016 findings and sanctions, mandating that all references to Plaintiff A's cheating be removed, deleted as null and void and sanctions imposed on A be vacated and removed.

B.  On the **First and Second Claims for Relief** against the Defendant School District No. 53, and Defendants Wennstrom, Voliva and Owen, jointly and severally, $10 million in compensatory damages for punitive or exemplary damages in the amount the Court or trier of facts determines is fair, just and reasonable and that the Plaintiffs be attorney fees and the costs incurred in this action, and such other and different relief as is just and proper;

C.  On the **Third and Fourth Claims for Relief** against the Defendant School District No. 53, the Defendant Board and its Members, and Defendants Wennstrom, Voliva and Owen,

jointly and severally, $10 million in compensatory damages for punitive or exemplary damages in the amount the Court or trier of facts determines is fair, just and reasonable and that the Plaintiffs be attorney fees and the costs incurred in this action, and such other and different relief as is just and proper;

D.  On the **Fifth and Sixth, Claims for Relief** against the Defendant School District No. 53, and Defendants Wennstrom, Voliva and Owen, jointly and severally, $10 million in compensatory damages for punitive or exemplary damages in the amount the Court or trier of facts determines is fair, just and reasonable and that the Plaintiffs be attorney fees and the costs incurred in this action, and such other and different relief as is just and proper;

E.  On the **Seventh Claim for Relief** against the Defendant School District No. 53, Defendant Wennstrom, $10 million in compensatory damages for punitive or exemplary damages in the amount the Court or trier of facts determines is fair, just and reasonable and that the Plaintiffs be attorney fees and the costs incurred in this action, and such other and different relief as is just and proper;

F.  On the **Eighth and Ninth Claims for Relief** against the Defendant Board and its Members, and the Defendants Massey, Roselli and Doe of the Robins Schwartz law firm, jointly and severally, $10 million in compensatory damages for punitive or exemplary damages in the amount the Court or trier of facts determines is fair, just and reasonable and that the Plaintiffs be attorney fees and the costs incurred in this action, and such other and different relief as is just and proper;

G.  On the **Tenth and Eleventh Claims for Relief** against the Defendant School District No. 53, the Defendant Board and its Members, and Defendant Wennstrom, jointly and severally, $10 million in compensatory damages for punitive or exemplary damages in the amount the Court

or trier of facts determines is fair, just and reasonable and that the Plaintiffs be attorney fees and the costs incurred in this action, and such other and different relief as is just and proper;

H.  On the **Twelfth and Thirteenth Claims for Relief** against the Defendant School District No. 53, the Defendant Board and its Members, for entry of a Declaratory Judgment that Plaintiff has protected Federal and State Constitutional and common law rights and may continue to exercise her aforesaid protected rights to educate her son and other children by use of publicly available materials, supplemental courses and educational programs which Plaintiff did not abuse or misuse by the use of publicly available educational materials she acquired and use in exercising her rights to educate her son.

I. On **All Claims for Relief,** granting preliminary and permanent injunctive relief granted mandating the correction of school records and enjoining and striking the punishment imposed on A barring him from participating in extracurricular activities,  such further and different relief as the Court may determine is just, proper, reasonable or necessary.

Dated: December 30,  2016

*Richard P. Caro*

_____

Richard P. Caro, Esq.
 Attorney for Plaintiffs
 S. Jain, for herself and her Minor Son "A"
 Rpc29@yahoo.com
 312-375-1415

## VERIFICATION

I, S. Jain, verify under penalty of perjury under the laws of the United States that I have read the foregoing Complaint and that the allegations are true and correct to the best of my knowledge and the results of the reasonable investigation of the events which are the subject matter of this action.

Dated: December 3, 2016

_____
S. Jain, Plaintiff

-58-