# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| S. Jain, for herself and on behalf of her minor son "A," | ) ) ) | |
| Plaintiffs, | ) ) | No. 17-cv-0002 |
| v. | ) ) | Judge Ronald A. Guzmán |
| Butler Illinois School District 53, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

The Court grants Defendants' motions to dismiss [48] [53], and this case is dismissed without prejudice. Plaintiff may file an amended complaint, if her counsel can do so in good faith and in keeping with Rule 11, by 9/21/2017. Should Plaintiff fail to file her amended complaint consistent with this order or within the allotted time, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute.

## STATEMENT

This is a Section 1983 case pertaining to the investigation and discipline of Plaintiff S. Jain's minor son "A" for academic dishonesty.

## I. Background

In a sprawling 69-page complaint, Plaintiff alleges a litany of purported (and misguided) constitutional claims against Defendants, ranging from due process violations "under the 5th, 6th, 10th, and 14th Amendments" regarding the investigation of A's academic dishonesty, to claims that Defendants violated A's Fifth Amendment rights when he was questioned in the principal's office (despite no law enforcement being present or any threat of criminal prosecution). (4th Am. Compl. [Dkt. # 42] at 37.) The complaint itself, moreover, is riddled with

ambiguity and imprecision, and the facts alleged are presented in a disorganized fashion. The combination of these shortcomings makes it difficult to discern the precise nature of Plaintiff's claims. The Court will therefore attempt to frame the pertinent facts in a logical fashion and then turn to specific allegations within the context of its analysis.

### (A) The National Geographic Spelling Bee and Initial Investigation

A was formerly a fifth grade student at Butler School District 53. In January 2016, Dr. Heidi Wennstrom (the district Superintendent) received a report suggesting that Plaintiff and other District 53 parents were engaging in unethical and deceptive practices in order to provide A and other students with unfair advantages in the National Geographic Bee (the "GeoBee"), which is an extracurricular academic activity. Specifically, the report stated that the subject parents obtained the official questions for the GeoBee in advance by illegitimately registering themselves as educators, thus prompting an investigation by Dr. Wennstrom.

The investigation came to a head on January 19, 2016, when Assistant Principal Lisa Owen escorted A out of his classroom and brought him to the Principal's office, where he was "interrogated" for over an hour by Dr. Wennstrom and Principal Kelly Voliva. Neither A nor his parents were informed of this meeting (or the accusations) ahead of time. According to Plaintiff, Wennstrom, Owen, and Voliva intimidated A until he falsely admitted to cheating (i.e., that his parents gave him an unauthorized copy of that year's GeoBee test in advance). Thus, given A's admissions, and combined with her review of the evidence and discussions with GeoBee administrators and other students, Dr. Wennstrom concluded that A had cheated with the help of his parents and documented her findings in a letter to Plaintiff dated February 8, 2016.[1]

---

[1] Although this document is not attached to the complaint, its authenticity has not been challenged, it is referred to in the complaint, and it is part of a public record (viz., a state-law administrative review proceeding instituted by Plaintiff in the Circuit Court of DuPage County,

The letter states in pertinent part as follows:

The District was able to confirm . . . :

> 1. You falsified registration with WordMasters [a separate spelling bee] and signed up as a homeschool provider in order to access contest questions in advance . . . so your child would have an unfair advantage during the contest.
>
> [. . . .]
>
> 5. You obtained the official [GeoBee] contest questions by accessing them through a shared joint email and password with another District parent prior to the first day of the contest on January 19, 2016.
>
> 6. Your child admitted that prior to the January 19, 2016 [GeoBee], you reviewed and studied with your child the actual contest questions. . . . Your child identified approximately 20 questions by content and answer choices that he was exposed to prior to the contest.
>
> 7. Your child engaged in academic dishonesty and cheating on the WordMasters Challenge and [GeoBee] with your assistance.
>
> 8. You obtained copies of school assessments, specifically the Foutnas & Pinnell assessment, and reviewed and such with your child prior to his reassessment of the entrance exam into the Advanced Learning Program. . . . Due to your child's [improper] exposure to the material . . . . entrance to the ALP ELA class was based on an inaccurate score.
>
> 9. You have declined to meet with the District Administration as part of this investigation even though a request to do so was provided three times.

The findings of my investigation yielded a clear picture of intentional academic dishonesty and unethical behaviors harmful to the District, its students, and your child. . . . Based on such and the above outlined findings, the District is immediately instituting the following sanctions:

> 1. Your child is no longer permitted to participate in any Butler 53 School District academic contests and/or competitions, team or individual, while he is a student within the District. Your child is allowed to participate in after school clubs, activities, and extracurricular activities that do not have an academic contest and/or competition component.

---

case no. 2016 MR 000864). The Court may therefore take judicial notice of the letter. *See Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000).

> 2. You are not permitted to serve in any capacity as a parent volunteer in any school related contests. . . .
> 3. Based upon entrance data that provided inaccurate academic standing, the District could remove your child from ALP ELA. However, at this time we will keep your child in ALP ELA and continue to monitor [his performance].

(Wennstrom Letter [Dkt. # 54, Ex. A] at 22-23.) That same day, Dr. Wennstrom also sent an email to teachers, administrators, and parents within the District explaining the investigation, her findings, and policy changes in the District's extracurricular programs to discourage cheating in the future. The letter did not, however, mention Plaintiff, A, or any other student/parent by name. (*See* Wennstrom Email [Dkt. # 54, Ex. A] at 26-27.)[2]

**(B)    Plaintiff's Follow-up: Grievance and Appeal**

On February 26, 2016, Plaintiff filed a grievance complaint with the School Board pursuant to Butler School District 53's Uniform Grievance Procedure ("UGP"), which permits students and parents to submit a formal complaint if they believe the school or its employees have violated any of their rights under state or federal law. Plaintiff's grievance was, in essence, an appeal of Dr. Wennstrom's February 8th letter. Pursuant to the process required by the UGP, the Board appointed a private attorney, Libbey Massey, as Complaint Manager and Board representative in the investigation. Plaintiff was afforded the opportunity to present evidence to Massey, which she did. Nevertheless, Massey's investigation confirmed Dr. Wennstrom's findings, and the Board issued an eight-page decision affirming them in their entirety.

Plaintiff, of course, maintains that both Massey's investigation and the Board's findings were based on erroneous, fabricated evidence and poor investigative procedure. Accordingly, she

---

[2] The Court similarly takes judicial notice of this email, which is attached as an exhibit to the administrative review proceeding filed by Plaintiff. The Court further notes that, according to the Complaint, Wennstrom publicly mentioned A's academic dishonesty in this email. (*See* Compl. ¶ 30). But the email itself is devoid of any parent or student names, so paragraph 30 is of no moment.

filed a complaint in the Circuit Court of DuPage County seeking judicial review of the Board's decision. This lawsuit soon followed, premised upon the largely the same allegations, albeit with additional constitutional claims. Defendants now move to dismiss this case in its entirety.

## LEGAL STANDARD

Rule 12(b)(6) permits a party to move for dismissal where a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint need only contain a short and plain statement showing that the plaintiff is entitled to relief. *See EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In ruling on a 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). A complaint may survive a motion to dismiss under Rule 12(b)(6) if it contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ANALYSIS

The operative complaint, while technically organized into separate "counts," is not a bastion of clarity. Each of Plaintiff's thirteen claims adheres to the following format:

### SECOND CLAIM FOR RELEIF

64. Defendants' decisions that Plaintiffs cheated and the punishment and sanctions imposed were based solely on what Defendant Wennstrom found that Plaintiff A's Mother did in acquiring and using F&P materials, WordMaster materials, and the generally available allowable geography resources to prepare A to take those assessments and competitive tests and without establishing that A himself knowingly and intentionally wrongfully used those materials to cheat. A

5

innocently used materials his Mother gave him to help him prepare for the tests and assessments as he always did believing that there was nothing wrong in using those materials to prepare for the tests and assessments.

65. Cheating by a test taker is a knowing and intentional, wrongful act involving conduct and actions by the test taker that he or she knew were wrong and not permitted and done to have an advantage other persons taking the test do not have. . . .

66. The Defendants' punishments imposed on A were for the purported wrongs that A's Mother did and not for what A himself knowing and intentionally did to cheat and that is in violation of A's Fifth Amendment Rights which bar a person from being punished for wrongs committed by another person, including a parent.

67. As a result of the aforesaid unconstitutional and unlawful attribution of cheating imposed on A, and violations of Illinois laws protecting children from child abuse by school officials, all references in all documents referring to A as having engaged in cheating are to be removed, deleted, nullified and destroyed, and for the wrongful injury, harm and the sanction imposed on him removed and nullified and damages awarded against each of the Defendants in the sum of $10 million for violation of A's 14th, 5th, and 6th Amendment constitutional rights . . . .

(Compl. at 40-41.) These paragraphs provide little insight into the nature of Plaintiff's claims. The parties' briefing, however, provides some focus.

To the best the Court can discern, Count I is a claim for "coercive interrogation" of A, Count II pertains to the sanctions against A violating his Fifth and Sixth Amendment rights, Count III is a defamation claim, Count IV is another claim regarding A's interrogation (related to A's and Plaintiff's First Amendment rights to family privacy), Count V is for intentional infliction of emotional distress, Count VI alleges a breach of fiduciary duty, Count VII is a due-process fabrication of evidence claim (although phrased as a Fifth, Sixth, and Fourteenth Amendment issue), Count VIII alleges administrative errors under the School Board's UGP, Count IX is a state and federal conspiracy claim, Count X is another version of a defamation claim ("injury to reputation"), Count XI is a similar defamation claim, Count XII alleges

violations of Illinois administrative law, and Count XIII is a Section 1983 Tenth Amendment claim.

The Court need not delve into the particulars of each claim, however, because as Defendants argue, Plaintiff's federal claims are lacking. Those claims are scattered across Counts I, II, III, IV, VII, IX, X, XI, and XIII, and appear to be Section 1983 claims based on violations of the First, Fifth, Sixth, Tenth, and Fourteenth Amendments. For the sake of analytical clarity, the Court will structure its analysis with respect to each Amendment.

**I.      Federal Claims: Section 1983**

Section 1983 prohibits any "person" acting under "color of law" from depriving citizens of their constitutional rights. 42 U.S.C. § 1983. Assuming, without deciding, that each Defendant in this case is a state actor for the purposes of Section 1983, the fact remains that Plaintiff's allegations do not rise to the level of constitutional violations.

**(A)**      *First Amendment Claims*

(i)      The Petition Clause

Plaintiff's First Amendment claims are best expressed in her own words. She first insists that "[Defendants violated her] Right to Petition the Government respecting their Grievances [by imposing] additional punitive measures, in retaliation for not acquiescing to Defendant Wennstrom's . . . cheating determination. . . . The Complaint alleges that additional punishments were in fact imposed as a result of Plaintiffs' contesting Defendant Wennstrom's [findings] and [should therefore not be dismissed]." (Pl.'s Br. [Dkt. # 61] at 8) (citing Compl. ¶¶ 29-33). But this will not do for at least two reasons.

Primarily, Plaintiff has pleaded herself into a corner: her Petition Clause claim is premised upon purported retaliation for filing her grievance claim with the Board, which

7

happened on February 26, 2016 according to the Complaint, (*see id.* ¶ 30). The acts of retaliation referred to in paragraphs 29 through 33, however, all predate that filing. (*See, e.g., id.* ¶¶ 29-33.) This sequence of events necessarily forecloses any claim that those "punishments" (such as A being scrutinized by his teachers) was in retaliation for Plaintiff's exercise of her First Amendment rights.

Still, there are deeper problems with this claim: the nature of Plaintiff's grievance places it outside the scope of the Petition Clause's protections. The Petition Clause prohibits retaliation against persons who file grievances only if the grievance qualifies as "protected speech." *Wright v. DeArmond*, 977 F.2d 339, 346 (7th Cir. 1992). And Plainitff's grievance does not meet this standard as it does not touch upon a matter of "public concern." *See Wright v. DeArmond*, 977 F.2d 339, 346 (7th Cir. 1992) (explaining that the Petition Clause protects only speech that is a matter of public concern).

To determine whether a plaintiff's speech touches on matters of public concern, courts look to the content and form of the speech, in this case Plaintiff's grievance/appeal to the board. (*See* Grievance [Dkt. # 48, Ex. D].) Here, the grievance contains detailed complaints about A's treatment, the School's investigation of A and Plaintiff, the sanctions imposed against them, and the School's decision to speak of the matter publicly. (*See id.*) It does not, however, contain any complaints pertaining to similar mistreatment of other students or a broader school policy. Indeed, the resolution of Plaintiff's and A's personal dispute with Dr. Wennestrom appears to be the sole motivation for Plaintiff's filing of the grievance. Taken together, these considerations suggest that Plaintiff's grievance was of private, not public, concern, which means her Petition Clause claim necessarily fails. *See Gray v. Lacke*, 885 F.2d 399, 413 (7th Cir. 1989) (similarly finding that a plaintiff's speech was of personal rather than public concern because the content of

the grievance was related only to her personal disputes with her boss, and the "resolution of those personal disputes appears to be the only reasons why [she] filed the complaint").

    (ii)  <u>Freedom of Association</u>

Relying on *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), Plaintiff next contends that "Defendants, by publicizing . . . the cheating dispute, force[d] Plaintiffs to leave the Oak Brook School system" and thereby violated their right to freedom of association under the First Amendment. (Pl.'s Br. at 8.) This claim, too, fails on its face, and indeed, it is not even bona fide First Amendment issue.

As the Supreme Court has explained, the Constitution protects two distinct forms of free association. The first, freedom of expressive association, arises from the First Amendment and ensures the right to associate for the purpose of engaging in activities protected by the First Amendment (e.g., being a part of certain political groups). *Roberts,* 468 U.S. at 617-18; *Klug v. Chicago Sch. Reform Bd. of Trustees*, 197 F.3d 853, 857 (7th Cir. 1999). The second, freedom of intimate association, protects the right "to enter into and maintain certain intimate human relationships," and it has been interpreted to include family decisions about the "raising and education of children." *Roberts*, 468 U.S. at 617-620. Plaintiff's claim plausibly falls into the latter category, as she has not argued or alleged that she or A were singled out for their participation in a political group.

This latter sort of freedom, however, is not analyzed under the First Amendment but instead "receives protection as a fundamental element of personal liberty" under the due process clauses. *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005). The question, then, is whether Plaintiff has demonstrated that Defendants deprived her or A of a liberty interest. *Id.* The Court finds that they did not.

9

As framed by Plaintiff, the purported constitutional wrong is Defendants' decision to publicize the "cheating incident," which "force[d] Plaintiffs to leave the Oak Brook School system . . . [as it] effectively resulted in Plaintiffs being ostracized by the Oak Brook School Community." (Pl.'s Br. at 8.) The school never suspended or expelled A, however, which means the publicizing of the "cheating incident," at most, harmed A's reputation. And harms to reputation alone are not constitutional injuries cognizable under Section 1983 or the Due Process clause. *Siegert v. Gilley,* 500 U.S. 226, 234 (1991). Accordingly, Plaintiff's "Freedom of Association" claim fails.[3]

## II. Fifth and Sixth Amendment Claims

Plaintiffs reliance on A's Fifth Amendment rights is similarly misguided. To the extent the Court can reasonably discern, Plaintiffs appear to assert that A's Fifth Amendment rights were violated when he was "interrogated" in the principal's office, without the presence of his parents. (*See* Pl.'s Br. at 27.) But the Fifth Amendment is simply inapplicable here: it was designed to safeguard a *criminal defendant's* right against self-incrimination. *See generally*, *Miranda v. Arizona*, 384 U.S. 436 (1966). The meeting in the principal's office, however, was neither an arrest nor part of (or a predicate to) a criminal proceeding. Thus, A's Fifth Amendment rights were not even implicated, much less violated.[4]

---

[3] Plaintiff also notes in her brief that the First Amendment provides A with the "right to attend the school [of his choosing]. (Pl.'s Br. at 8.) But Plaintiff has not cited, and the Court has not found, any case law interpreting the freedom of association (under either the First Amendment or the Due Process Clause) so expansively, and, in any event, the fact remains that Plaintiff has not alleged any official school policy or action that actually precluded A from attending Oak Brook schools.

[4] The sole case on which Plaintiff relies to support her Fifth Amendment claim is *J.D.B. v. North Carolina*, 131 S.Ct. 2394 (2011), which held that the Fifth Amendment was triggered by a police officer's questioning of a seventh grader. Here, since it is undisputed that A was never

10

In the same vein, there is no sense in which A's Sixth Amendment rights were violated, because the Sixth Amendment right to counsel is triggered only after the initiation of criminal proceedings. *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 219 (2008) ("The text of the Sixth Amendment thus makes clear that the right to counsel arises only upon initiation of a criminal prosecution.") (citation and quotations omitted).

### III. Tenth Amendment Claims

Perhaps most puzzling is Plaintiffs' Tenth Amendment claim. It appears to be predicated upon the school district's purported interference with Plaintiff's right to assist with A's education (for example by providing her own materials to supplement A's studies for the GeoBee). But the Tenth Amendment merely provides that the powers not delegated to the federal government are reserved to the states or the people. U.S. Const. Amend. X. Whatever the merits of Plaintiff's right to provide A with "supplemental school materials," it does not support a Section 1983 claim based on the Tenth Amendment. *See Johnson v. Miller*, 680 F.2d 39, 42 (7th Cir. 1982) (describing Tenth Amendment claims as necessarily "malapropos" under Section 1983).

### IV. Due Process: Fifth and Fourteenth Amendments

The due process clauses protect persons from deprivations of liberty and property. Thus, in order to state a claim based on the due process clause under either the Fifth or Fourteenth Amendments, a plaintiff must allege a constitutionally protected property or liberty interest. *Piekosz-Murphy v. Bd. of Educ. of Cmty. High Sch. Dist. No. 230*, 858 F. Supp. 2d 952, 959 (N.D. Ill. 2012). Here, both Plaintiff and the parties dedicate the entirety of their due-process arguments to the adequacy of the proceedings (viz., the initial investigation and appeal) or the

---

interrogated by law enforcement regarding his academic dishonesty, Plaintiff's reliance on *J.D.B.* is simply misplaced.

substance of A' and Plaintiff's rights. Yet neither has addressed a critical, more fundamental, point: whether A or Plaintiff has any liberty or property interest at stake in the first instance.

(A)  *Liberty Interest*

Based on the (unclear) allegations in the complaint and Plaintiff's briefing, the only plausible "liberty interest" she asserts pertains to reputation. (*See, e.g.,* Pl.'s Br. at 19) (suggesting that A's due process rights were violated by his stigmatization as a cheater); (Compl. at 39) (alleging a constitutional defamation claim). But, as noted above, injury to reputation alone cannot support a constitutional violation. *O'Gorman v. City of Chi.*, 777 F.3d 885, 891 (7th Cir. 2015). Rather, one's due process rights are implicated only when damage to reputation is "paired with the alteration of legal status, such as a right previously held and granted by the state." *Id.* In that respect, the complaint does not allege, nor does Plaintiff argue, that either she or A had a state-created right to participate in the GeoBee or other extracurricular activities. It follows that any reputational harms they suffered are not protected liberty interests in this sense. *See Piekosz-Murphy*, 858 F. Supp. at 959 (N.D. Ill. 2012) (finding that a student failed to assert a liberty interest because he did not show that his participation in the National Honor Society was a state-created right); *Butler v. Oak Creek-Franklin Sch. Dist.*, 116 F. Supp. 2d 1038, 1047 (E.D. Wis. 2000) (declining to find a liberty interest where a student athlete claimed that his reputation was tarnished after being suspended from participating in sports); *see also Siegert v. Gilley,* 500 U.S. 226, 234 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation.").

(B)  *Property Interest*

The same conclusion holds true with respect to Plaintiff and A's purported property interests. A property interest arises from some "legitimate claim of entitlement," which can be

12

found in "existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Plaintiff has asserted nothing of the sort here, so the Court has no basis for finding a protected property interest. Accordingly, her due process claims necessary fail.[5]

(C) *Procedural and Substantive Due Process*

For the sake of thoroughness, the Court notes that even if Plaintiff (or A) had a protected liberty or property interest, she has not argued, much less demonstrated, that Defendants' procedures failed to meet the requirements of due process. In *Schaill v. Tippecanoe County School Corp.*, the Seventh Circuit explained that, before being suspended from high school athletics, a student is entitled to "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." 864 F.2d, 1309, 1323 (7th Circuit 1998). Indeed, the procedures required by the Due Process Clause are "rudimentary," amounting only to "an informal give-and-take between student and disciplinarian." *id.; see also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (explaining that courts should weigh the importance of the interest at stake against the adequacy of the process provided).

Here, is undisputed that the only penalties imposed upon A or Plaintiff pertained to A's participation in extracurricular activities and increased monitoring of A's progress in his advanced learning class. These are minimal deprivations (if at all), which means the procedures

---

[5] This conclusion is consistent with cases holding that students do not have a protected liberty or property interest in participating in sports or other extracurricular activities. *See, e.g., Piekosz-Murphy*, 858 F. Supp. 2d at 959 (N.D. Ill. 2012); *A.C. v. Bd. of Educ. for Cambridge Cmty. Unit Sch. Dist. #277*, No. 05-4092, 2005 U.S. Dist. LEXIS 38070, 2005 WL 3560658, at *2 (C.D. Ill. Dec. 28, 2005) (collecting cases); *Smith v. Chippewa Falls Area Unified Sch. Dist.*, 302 F. Supp. 2d 953, 957 (W.D. Wis. 2002) (same); *see also Todd v. Rush Cnty. Schs.*, 133 F.3d 984, 986 (7th Cir. 1998) (noting that playing high school football is a privilege, not a right).

the school was required to provide were similarly minimal. To that end, Plaintiff and A were given notice of the charges (via Dr. Wennestrom's letter) and provided an opportunity to submit written statements and their own evidence (including reports from psychologists about A's state of mind) throughout the appeals process, which was heard by the Board. This was all that due process required by way of procedure.

Similarly, to the extent that Plaintiff is bringing a substantive due process claim based on the inadequacy of the investigation (or fabrication of evidence), this claim would similarly fail because Section 1983 is rarely the proper vehicle for challenging school disciplinary actions. In *Wood v. Strickland*, 420 U.S. 308, 312 (1975), for example, two high school girls spiked the punch at a school event and were expelled for the remainder of the semester. The amount of alcohol put in the punch was negligible, and the girls claimed that the suspension violated their substantive due process rights because there was no evidence on which to base the disciplinary action. *Id.* The Supreme Court, in finding for the school district, explained as follows:

> It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. . . . But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal-court corrections of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

*Id.* at 326; *accord. Tun v. Whitticker*, 398 F.3d 899, 903-04 (7th Cir. 2005) ("It is one thing to say that officials acted badly, even tortiously, but--and this is the essential point--it is quite another to say that their actions rise to the level of a constitutional violation. We have declined to impose constitutional liability in a number of situations in which we find the officials' conduct

abhorrent."). Based on these principles (as well as the lack of any liberty/property interest), the Court finds that Plaintiff's claims do not state either a procedural or substantive due-process claim under Section 1983.

Therefore, absent any plausible basis for finding a constitutional violation, Plaintiff's Section 1983 claims are dismissed in their entirety, leaving only her state law claims remaining. Given that the parties are non-diverse, however, the Court has no basis for asserting jurisdiction over those claims, and this case is accordingly dismissed without prejudice. Plaintiff may file an amended complaint within 21 days if she can, in good faith, allege a legitimate constitutional violation. Otherwise the dismissal will convert to a dismissal with prejudice.

## CONCLUSION

The Court grants Defendants' motions to dismiss [48] [53], and this case is dismissed without prejudice. Plaintiff may file an amended complaint, if her counsel can do so in good faith and in keeping with Rule 11, by 9/21/2017. Should Plaintiff fail to file her amended complaint consistent with this order or within the allotted time, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute.

**SO ORDERED.**                                              **ENTERED: September 5, 2017**

*Ronald A. Guzmán*

_____
**HON. RONALD A. GUZMÁN**
**United States District Judge**