1  **TRANSCRIBED FROM DIGITAL RECORDING**

2              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
3                      EASTERN DIVISION

4  S. JAIN, et al.,                    )
                                       )
5              Plaintiffs,             )
                                       )
6          vs.                         )  No. 17 C 0002
                                       )
7  BUTLER ILLINOIS SCHOOL DISTRICT 53, )
   et al,                              )  Chicago, Illinois
8                                      )  August 22, 2017
              Defendants.              )  1:34 P.M.
9
                  TRANSCRIPT OF PROCEEDINGS - Hearing
10    BEFORE THE HONORABLE SIDNEY I. SCHENKIER, Magistrate Judge

11 APPEARANCES:

12 For the Plaintiffs:        MR. RICHARD P. CARO
                              724 N. Northwest Highway, Apartment A
13                            Park Ridge, Illinois  60068
                              (Appearing telephonically)
14
                              LAW OFFICES OF FREDRICK R. HARBECKE
15                            53 West Jackson Boulevard
                              Suite 1510
16                            Chicago, Illinois  60604
                              BY:  MR. FREDRICK RAHN HARBECKE
17
   For School District        ANCEL, GLINK, DIAMOND, BUSH,
18 Defendants:                   DICIANNI & KRAFTHEFER, P.C.
                              140 South Dearborn Street
19                            6th Floor
                              Chicago, Illinois  60603
20                            BY:  MS. LUCY B. BEDNAREK

21              PAMELA S. WARREN, CSR, RPR
                     Official Court Reporter
22               219 South Dearborn Street
                        Room 2342
23               Chicago, Illinois   60604
                      (312) 408-5100
24
   **NOTE:  Please notify of correct speaker identification.**
25 **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
   **UNINTELLIGIBLE.**

**APPEARANCES:  Continued**

For Defendants Massey        HINSHAW & CULBERTSON LLP
and Roselli:                 222 North LaSalle Street
                             Suite 300
                             Chicago, Illinois  60601
                             BY:  MS. KATHERINE GEORGIA SCHNAKE

1      (Proceedings held in open court:)

2          THE CLERK:  17 C 0002, Jain, et al. versus Butler

3  Illinois School District 53, et al., for hearing on ruling on

4  withheld documents.

5          THE COURT:  Good afternoon.  We have someone

6  participating by phone.

7          Please identify yourself.

8          MR. CARO:  Richard Caro, attorney for plaintiffs.

9          THE COURT:  And in the courtroom for the plaintiff?

10         MR. HARBECKE:  Fred Harbecke, local counsel for

11 plaintiff.

12         MS. BEDNAREK:  Lucy Bednarek on behalf of the school

13 district defendants.

14         MS. SCHNAKE:  Kate Schnake on behalf of defendants

15 Roselli and Massey.

16         THE COURT:  All right.  Well, we have the motion

17 concerning the documents withheld on the privilege log, some of

18 which are subject to a challenge.  We also have a more recently

19 filed motion to compel disclosure by the plaintiff.

20         Has the defense seen the motion?

21         MS. BEDNAREK:  The motion to compel, your Honor,

22 to the -- not in -- we didn't file a response, but we complied

23 with plaintiffs's requests.

24         THE COURT:  Do you agree that the issues you raised in

25 your motion have now been addressed, Mr. Caro?

1  MR. CARO:  No, your Honor.  The defendants in amending
2  (unintelligible) were supposed to amend their interrogatory
3  answers.  They were not amended, just a letter was sent with
4  the -- identifying the new documents.  That puts the burden on
5  me to cut and paste the -- you know, the PDF and the new
6  answers in it, and -- and it is more (unintelligible) that I
7  shouldn't have to do.
8      THE COURT:  Well, Mr. Caro, you said that in your
9  motion already.  I don't need to hear it again.
10      MR. CARO:  Yes.  Oh, okay.
11  Then --
12      THE COURT:  So the issue --
13      MR. CARO:  -- with respect --
14      THE COURT:  -- the issue --
15      MR. CARO:  With respect to the resignation documents
16  dealing with Voliva, the only thing they produced was the
17  formal resignation agreement.  There is nothing explaining the
18  reasons why she was -- resigned, which is what we sought
19  because we -- you know, it could make -- her credibility may go
20  or what actions she did in connection with my clients that may
21  have been wrongful.
22      And, finally, with respect to the teacher, a person
23  who covered the 2:00 P.M. class, all they said is, plaintiff
24  child identified the woman by her last name.  But the
25  identification -- and the school district did not confirm that,

1    and they provided no identifying information, her name,

2    address, contact information.

3          MS. BEDNAREK:  I can address all three of those.

4          With regard to the substitute teacher information that

5    plaintiff has requested, on July 28th we sent a letter

6    confirming that the school district and no other school

7    district defendant knows the identity of any substitute for

8    Ms. Owen's class on January 19th, 2016.

9          THE COURT:  May I see the letter?

10         MS. BEDNAREK:  Yes, your Honor.

11         The second page after the email.

12    (Brief interruption.)

13         THE COURT:  All right.  I'm looking at the letter of

14    July 28, 2017, which in the last sentence says, please also be

15    advised that neither the school district nor Lisa Owen knows

16    the identity of any substitute for Ms. Owen's class on January

17    19th, 2016.

18         MR. CARO:  Okay.  I didn't see that letter, your

19    Honor, so --

20         THE COURT:  The July 28, 2017, letter.

21         MS. BEDNAREK:  Your Honor, we --

22         MR. CARO:  Let me double check to make sure I received

23    it.

24         MS. BEDNAREK:  Your Honor, we sent it to -- emailed it

25    to him again yesterday, which is the first document on

1  the -- what you're looking at.

2       It was originally emailed July 28th.

3       THE COURT:  All right.  So can we take that off the

4  list, Mr. Caro?

5       MR. CARO:  Yes.

6       THE COURT:  Okay.  Next?

7       MS. BEDNAREK:  With regard to the resignation

8  document, all we have is what we have produced, and those are

9  also attached to the July 28th letter.

10      Mr. Caro may think that there is something else out

11 there, but there is not.  So we produced responsive documents,

12 which is the resignation agreement, also a letter from

13 Ms. Voliva.

14      THE COURT:  Okay.  So you say there is no other

15 internal materials, though, no emails, no other written

16 communications concerning that subject?

17      MS. BEDNAREK:  That's correct.  I believe so.

18      But regarding the reasons, she voluntarily resigned.

19      THE COURT:  Well, I'm not asking for your

20 interpretation of what happened.  I'm asking for any documents

21 that may reflect what happened, which may be that she

22 voluntarily resigned, which Mr. Caro suspects may be something

23 else.  I have no idea.

24      My only question is whether what you're saying is that

25 a -- within the records of the school district the only two

documents that pertain to Ms. Voliva's resignation or the reasons for them are the actual resignation agreement, a separate agreement, and her letter of August 8th, 2016.

MS. BEDNAREK:  That's my understanding, yes.

THE COURT:  And there is nothing in the personnel file that discusses anything about reasons for her resignation?

MS. BEDNAREK:  I don't believe so, no.

THE COURT:  You don't believe so or you don't know so?

MS. BEDNAREK:  Regarding the reasons for her resignation, no, there is nothing in her personnel file.

THE COURT:  Anything else regarding her resignation?

MS. BEDNAREK:  I don't believe so.

THE COURT:  You don't believe so or you don't know so?

MS. BEDNAREK:  I --

THE COURT:  It is late in the game.

MS. BEDNAREK:  I understand that, your Honor.

THE COURT:  It is late in the game for us to be saying I think.

MS. BEDNAREK:  There are no other responsive documents relating to her resignation.

THE COURT:  All right.  You have that on the record, Mr. Caro.

MR. CARO:  Yes, your Honor.

THE COURT:  And then the amendment of the interrogatory responses.

1          MS. BEDNAREK:  Yes, your Honor.  We were instructed

2     (unintelligible) your Honor ordered us to supplement by

3     identifying Bates stamp number, which we did.

4          And you would like us to produce something in addition

5     to that.  We can, but it was my understanding all that we

6     needed to do to supplement was identify the interrogatory

7     number and the responsive document by Bates stamp number, which

8     we did.

9          THE COURT:  The order says defendants shall amend

10    their interrogatory responses.

11         MS. BEDNAREK:  That's in --

12         THE COURT:  If you amend a document, how do you amend

13    it?  If you amended your answer, would you just send a letter

14    that says, I'm amending paragraph 5 of my answer or would you

15    serve an amended answer that has in it in that one document the

16    amendment?

17         MS. BEDNAREK:  It was my understanding that that was

18    for -- was all that was required because all he wanted was the

19    identifying Bates stamped number of the responsive documents,

20    which we provided.  If your Honor would like us to --

21         THE COURT:  You know --

22         MS. BEDNAREK:  -- resubmit --

23         THE COURT:  -- counsel -- you know, Ms. Bednarek, this

24    isn't what he wants, this is what I ordered.  Are you telling

25    me that you think that amending a pleading means, I send you a

1    letter?  Is that how you interpret amend a pleading?

2             MS. BEDNAREK:  Well, your Honor --

3             THE COURT:  Is that how you interpret amend the

4    pleading?

5             MS. BEDNAREK:  The pleading, no.

6             THE COURT:  Okay.  So -- and when you serve an

7    interrogatory response, one of the key things about it is it is

8    on oath.

9             MS. BEDNAREK:  That's correct.

10            THE COURT:  Is a letter on oath?

11            MS. BEDNAREK:  The Bates stamped --

12            THE COURT:  Is a letter on oath?

13            MS. BEDNAREK:  No, your Honor.

14            THE COURT:  Okay.  Amend the interrogatory responses

15   so that the actual interrogatory answers has what's in the

16   letter.  I don't quarrel that you supplied the information.

17   But for all of you to be fussing about something that is so

18   obvious, after so long in this case, is rather disheartening.

19            So the motion to compel is denied as moot as to the

20   Voliva -- the Voliva resignation documents and as to the

21   requirement to identify who was the substitute for Ms. Owen.

22            The motion is granted as to the requirement that the

23   actual written interrogatory responses, the -- on their face

24   amended to add the Bates numbers, which have been supplied in

25   another means, but to do that so it is on oath.

1    MS. BEDNAREK:  Okay.  Your Honor, understood.

2    THE COURT:  All right.

3    MS. BEDNAREK:  Can I have -- can I have my -- the

4 documents that I provided to you?

5    THE COURT:  Oh, of course you can.

6    MS. BEDNAREK:  Thank you.

7    THE COURT:  Now I have got to find out where I put it.

8 I have got a lot of paper up here.

9    Here you go.

10    Can you do that by Friday?

11    MS. BEDNAREK:  It's the -- I believe it is the first

12 week back at school.  I may not be able to get all of

13 the -- the signatures needed by Friday.  So if I could have

14 until the end of next -- seven days, that would be better, your

15 Honor.

16    THE COURT:  Is that all right with you, Mr. Caro?

17    MR. CARO:  That's fine, your Honor.

18    THE COURT:  Okay.  So that would be the 29th.

19    All right.  Now on to the privilege review issue.  We

20 have got actually, I guess, four groups of documents, one, two,

21 three, and then the FOIA documents.

22    I have reviewed, all of the memoranda that you

23 submitted in connection -- excuse me -- with the issue.  I have

24 reviewed the documents that were identified as the sample to be

25 reviewed.

Let me start with Group 1. And I want to talk for a moment about -- kind of the debate about whether Ms. Massey could be the investigator and the lawyer for the board. And I am addressing that issue not from the question or from the vantage point of whether, if so, that creates some conflict of interest. I express no opinion about that. That's an issue that, to the extent people wish to pursue that, that will be before Judge Guzman.

What I am addressing is really kind of an antecedent question as to whether the role of investigator somehow means that Ms. Massey could not have an attorney-client relationship with the board. That means incapable of forming one. But that's kind of the argument that, it seems to me, Mr. Caro makes.

A lead case that everybody debates on this point is the Sandra T.E. case, 600 F.3d. 612, a Seventh Circuit decision from 2009. In that case the district engaged a law firm to conduct an internal investigation into allegations of abuse. And the trial court had said that because the mission was investigative and not the provision of legal advice, the notes by the attorneys were not privileged and had to be produced.

The Seventh Circuit reversed finding that while investigative work was done, the notes, nonetheless, would be privileged if they related to their rendition of legal services. And in that case the Court explained that the

investigation into the underlying facts of alleged abuse was,

and I quote, an integral part of the package of legal services

for which the firm was hired and a necessary prerequisite for

the provision of legal advice.  That's at 620.

Now the plaintiffs argue that this case -- and this is

in the reply memorandum -- is inapplicable here because, unlike

the case here, the attorneys who were selected.  And Sandra

T.E. had no prior relationship with the Berwyn School District.

By contrast, the plaintiffs say the defendants had an

ongoing relationship with the law firm that employed

Ms. Massey, and that she really was not an investigator but was

used to, and, I quote, whitewash and ignore the wrongdoing that

plaintiffs had complained about.  That's quoting from the reply

at 4.

Put another way, the -- as I read that, plaintiffs say

that Sandra T.E. does not apply because in plaintiffs's view

there was a conflict of interest because -- with Massey serving

in her role.

But as I have suggested to you already, I think that

that argument puts the cart before the horse.  Plaintiffs

argue, in a portion of this that I will address later, that

there is a conflict here that's sufficient to invoke the crime

fraud exception to the privilege.  But there is no occasion to

consider the exceptions of the privilege unless there is first

a privilege.

1    Now the plaintiffs's argument provides no basis for me

2 to conclude that Massey was not investigating as part of the

3 legal services she was providing, in particular the

4 recommendations to the board as part of the EGP (phonetic)

5 process.

6    So I do not pass at all as to whether the role of

7 investigator and the role of lawyer with respect to that

8 process created some conflict of interest or whether her

9 affiliation with the same firm as Ms. Roselli, who was counsel

10 for the board, creates any conflict of interest. But what I do

11 reject is the argument that Ms. Massey's communications could

12 not be subject to the attorney-client privilege.

13    So with that backdrop, let me go through the documents

14 that are called out in Group 1.

15    The first one is -- and I'm going to illuminate the

16 letter prefixes since they are all the same.

17    7204 these -- this is a series or, I should say, a set

18 of notes. The log does not say who prepared the notes or to

19 whom the notes were sent or the date that they were created.

20    Is it the defense view that you have no idea about any

21 of that?

22    MS. BEDNAREK: I'm sorry, which document are you

23 referring to, the --

24    THE COURT: RS 007204.

25    MS. BEDNAREK: If I -- if it is the document I'm

thinking of, it would have been Lisa Owen's notes.  And I
thought I had had that in there.

Oh, that?  That I had -- I do not know.  That's not
the document I was thinking of.

THE COURT:  Well, it talks about -- and I'm not giving
away anything here -- my investigation.  It talks about an
attachment that is a document from Jain's attorney.  It talks
about something that occurred on April 5th.

So from that, isn't it pretty clear that it is after
April 5th?  Isn't it pretty clear that it was somebody who was
investigating?  Is this Ms. Massey?

MS. BEDNAREK:  It would be Ms. Massey if it was after
April 5th.

THE COURT:  Yeah.  Then why isn't this -- why didn't
you say that on the log?

The document that's referenced -- and do you have this
in front of you?

MS. BEDNAREK:  I printed this out.  And as I got
halfway to here, I realized I left it on my printer.  So I
don't have it in front of me.

MS. SCHNAKE:  Your Honor, I didn't bring it either.  I
didn't realize that we were going to go through them one
by one.

THE COURT:  Okay.

MS. BEDNAREK:  I reviewed these documents a lot

1    though, so I --

2              THE COURT:  Well, you know which one --

3              MS. BEDNAREK:  -- should be able to pick up --

4              THE COURT:  -- I'm talking about now.  And it refers

5    to a document from Mr. (unintelligible).

6              MS. BEDNAREK:  He was the attorney for --

7              THE COURT:  The Jains.

8              MS. BEDNAREK:  -- plaintiff.

9              THE COURT:  Well, you know which one I'm talking about

10   now.

11             MS. BEDNAREK:  Yes.

12             THE COURT:  Right.  So that attachment that's referred

13   to, has that been produced?

14             MS. BEDNAREK:  Yes.

15             THE COURT:  Okay.  The rest of the document is work

16   product.  It creates -- it includes Ms. Massey's mental

17   impressions.  To the extent it is not mental impressions, it is

18   simply stating what's in that response, which has already been

19   produced.  So I will sustain the assertion of work product.

20             The next one is 21456.  This is an email from

21   Ms. Wennstrom to Ms. Roselli with a copy to Ms. Voliva dated

22   January 23rd, 2016, and it references an underlying document.

23             You are familiar with this exhibit?

24             MS. BEDNAREK:  It references an underlying document.

25             THE COURT:  I can tell you what -- do you mind if I

```
1   say what it references?
2           MS. BEDNAREK:  No.
3           THE COURT:  Dr. Jain's interview questions and
4   statements that were prepared.
5           MS. BEDNAREK:  Okay.
6           THE COURT:  Okay?  Have those particular statements
7   and questions been produced?
8           MS. BEDNAREK:  No.  The draft questions to ask
9   Dr. Jain during her interview would have been marked work
10  product.
11          THE COURT:  Okay.  And those were prepared after the
12  interview of Plaintiff A?
13          MS. BEDNAREK:  Right, the original January 19th
14  interview.
15          THE COURT:  Right.
16          MS. BEDNAREK:  Yes.
17          THE COURT:  Okay.  This particular document is
18  withheld on the basis of attorney-client privilege.  I sustain
19  that because it is an email from Wennstrom to Ms. Roselli
20  seeking legal advice.
21          The next document is 21457.  This is an email chain.
22  Most of the emails in the chain are between various people
23  from -- on the board, defendants to Plaintiff A's parents or
24  one of them or both of them.
25          The lead email is one from Ms. Wennstrom to
```

1    Ms. Roselli dated January 23rd, 2016.

2            So the email chain which has the emails between

3    members of the board -- the board, the district defendants, I

4    should say, and Plaintiff A's, parents one or both of them.

5    Have those all been produced?

6            MS. BEDNAREK:  Yes.

7            THE COURT:  All right.

8            MS. BEDNAREK:  Any correspondence with the Jain --

9            THE COURT:  All right.  Well, this is a particular

10   communication with counsel regarding that.  So I will sustain

11   the assertion of attorney-client privilege.

12           The next is an email from Ms. Wennstrom to

13   Ms. Roselli.  It is 21571.  That forwards certain notes dated

14   January 19th, 2016.

15           So that particular document -- or I should say the

16   notes that are reflected -- they have been produced, right?

17           MS. BEDNAREK:  Yes, they have.

18           THE COURT:  In fact they're Exhibit 2 to the

19   complaint.

20           MS. BEDNAREK:  Yes.

21           THE COURT:  Okay.  The top portion, the email from

22   Ms. Wennstrom to Ms. Roselli concerns those notes, and so --

23   the purpose of legal advice.  So I will sustain the assertion

24   of attorney-client privilege.

25           The next document is 21574.  This is an email -- it is

1    an email chain.  I'm sorry.

2            The first one is from Ms. Roselli to Margaret Fisher,

3    who is a legal assistant at Robbin Schwartz.  It forwards an

4    email from Ms. Wennstrom to Ms. Roselli, dated January 19th,

5    2016, which attaches a document and then discusses the

6    document.

7            Are you familiar with this email?

8            MS. BEDNAREK:  Yes, your Honor.

9            THE COURT:  Do you know what the attachments we're

10    talking about?

11           MS. BEDNAREK:  I believe it was the same document

12    referenced before, the Lisa Owen's notes.

13           THE COURT:  Yes.  It references the Geo Bee documents.

14           MS. BEDNAREK:  Okay.

15           THE COURT:  Two words.  Geo Bee.

16           Okay.  And then it has discussion or relating -- let

17    me say, this providing information from Ms. Wennstrom to

18    Ms. Roselli for the purpose of seeking legal advice.  So the

19    emails themselves I have no doubt are privileged.

20           My question is whether the attached documents have

21    been produced.

22           MS. BEDNAREK:  I'm sorry.  I believe in response to

23    the FOIA, which we also produced in this case, there were -- I

24    don't know how many documents, maybe 15 documents, that were

25    Geo Bee documents.  And I would need to confirm it, but my best

1  guess is that's what they're referring to.

2  THE COURT:  Well, here's what I am going to say, you

3  know, this references Geo Bee documents.  Certainly the

4  communications that Ms. Wennstrom had with Ms. Roselli about

5  the documents, about their significance, asking advice about

6  it, that's privileged.

7  The underlying documents are not privileged.  And

8  attaching them to an email to counsel does not make them

9  privileged.  Okay?  We can agree on that.

10  MS. BEDNAREK:  Yes.

11  THE COURT:  So you need to go back and confirm whether

12  the attachments that are identified as Geo Bee documents have

13  been produced.  If they have already been produced, and there

14  is not a need to produce them again.  But if they haven't been

15  produced, in their entirety, whatever was attached, then they

16  need to be produced.

17  So I sustain the privilege as to the emails, but not

18  as to any attachment that was itself a freestanding document.

19  Are we clear on that?

20  MS. BEDNAREK:  Yes.

21  THE COURT:  Okay.  The next document is 33900.  These

22  are communications between Ms. Wennstrom and Ms. Roselli, all

23  on January 24th, 2016, which certainly the communication of

24  factual information concerning the request for legal advice, I

25  will sustain the assertion of attorney-client privilege.

1    The next document is 34963.  This is a long email
2    chain for which there is an assertion of work product.  The
3    email -- I should say the last email in that chain is April
4    10th, 2016, from Ms. Massey to Ms. Roselli.  There are then
5    emails that precede that between Ms. Roselli and Ms. Massey.  I
6    agree that those were work product.
7        The last email in the chain is actually a duplicate of
8    the email that is 21571, which has already been produced, you
9    have told me.  At least I think you have told me.
10       MS. BEDNAREK:  21571.
11       THE COURT:  Yeah, that's the one that's Exhibit 2 to
12   the complaint.
13       MS. BEDNAREK:  Okay.  This was it.
14       THE COURT:  Right.
15       MS. BEDNAREK:  Notes.
16       THE COURT:  So -- yeah.  So that's already been
17   produced.  So I'll sustain the assertion of work product here.
18   They don't need to be produced again.
19       The next document is 35659.  Actually we'll take
20   together the next one, 35659.  The '58 one is an email from
21   Zurich Udeh, who is an attorney at Robbin Schwartz, to
22   Ms. Massey.  The subject being investigation notes.  And the
23   next document '69 -- I'm sorry -- '59 is a set of notes.
24       These are asserted to be work product.  I agree with
25   the work product assertion, so I will sustain that as to both.

1        37236 is an email chain.  The last -- or the last one

2   in the chain is an email from Ms. Wennstrom to Ms. Massey dated

3   April 4th, 2016.  There are preceding emails that are between

4   them.  The assertion here is attorney-client privilege.  I

5   agree that it is privileged, so I will sustain that assertion.

6        That covers everything in Group 1.  So if my notes are

7   correct, I have sustained the privilege except insofar as it

8   pertains to the notes that were forwarded with 21571, which has

9   already been produced.  It is an exhibit to the complaint so

10  there is no need to produce it again.  And that also showed up

11  in a later document that I discussed.

12       And with respect to the Geo Bee documents that are

13  attached to 21574, so to the extent those Geo Bee documents

14  have not been produced, they should be produced.

15       Now moving to Group 2, these are FOIA documents.  The

16  first one is 19917.  Let me ask a question before I go through

17  each one.  These are all in some form listing of witnesses, of

18  potential witnesses.  Right?

19       MS. BEDNAREK:  Okay.  Yes.

20       THE COURT:  You know what I am talking about.

21       MS. BEDNAREK:  Yes, I do.

22       THE COURT:  In the hearing was there a witness list?

23       MS. BEDNAREK:  I'm not actually sure there was an

24  actual hearing.

25       THE COURT:  Okay.  So in the report there is a

1    summary, as I recall, of people who are interviewed.

2            MS. BEDNAREK:  Right.

3            THE COURT:  There is nothing that says, I thought

4    about interviewing this person but I didn't.

5            MS. BEDNAREK:  No.

6            THE COURT:  Okay.  And there is no process there, as

7    there is, for instance, in the lawsuit, in a lawsuit in federal

8    court, that is part of 26(a)(1) disclosures you identify people

9    who may have (unintelligible).

10           MS. BEDNAREK:  Correct.  There is no process.

11           THE COURT:  That you may use.  And in this case was

12   there an interrogatory that asked for an identification from

13   the plaintiffs's side -- let me ask Mr. Caro.

14           Did you serve any interrogatories that asked them to

15   identify people who the defense believed may have knowledge

16   relevant to any of the claims?

17           MR. CARO:  I believe so, your Honor.

18           THE COURT:  And do you know so or are you just

19   believing so because you think it may be helpful?

20           MR. CARO:  I'd have to look at the interrogatories to

21   give a (unintelligible) a firm answer.

22           THE COURT:  What I am asking is whether any of the

23   information here about witnesses or potential witnesses who can

24   disclose whether it is in the UGB process or in the lawsuit.

25           MS. BEDNAREK:  No, and there wasn't an interrogatory

1  to that effect because I would have just listed the names --

2         THE COURT:  Uh-huh.

3         MS. BEDNAREK:  -- had they been in there.

4         MS. SCHNAKE:  And other than the Rule 26 disclosures.

5         THE COURT:  Right.

6         MS. BEDNAREK:  Right.  Actually I may have listed

7  those in the Rule 26 disclosures now that I say that.

8         THE COURT:  All --

9         MS. BEDNAREK:  I need to pull that.

10        THE COURT:  All of these people, all of these people

11  or some of them?

12        MS. BEDNAREK:  I need to look at it.

13        THE COURT:  Okay.  Well, I certainly never had a

14  motion to compel, have I, Mr. Caro, that says, I asked them to

15  identify people with knowledge, and they didn't give it to me.

16        Mr. Caro?

17        MR. CARO:  Yes, your Honor.  I believe the

18  interrogatory asked for specific information, all documents

19  pertaining to X, Y, and Z, and I -- the discrete subject

20  matter.

21        What I don't know, without going through the

22  interrogatories, is whether they asked for the identification

23  of persons with knowledge of those facts.  I'd have to double

24  check.

25        THE COURT:  Uh-huh.  Okay.  Well, let me say this.

The first email came 19917.  You know, it lists potential witnesses but then has the commentary and exchange between attorneys concerning them.  That is properly protected as work product.

19954 has a commentary, but also simply has a list of names.  And those are discrete, and they are not identified or called out in any way, apart from the text.

And so my question is, you know, are these just a list of names (unintelligible) that work product as opposed to a discussion of why they may be important or not important?

MS. BEDNAREK:  I think it would still be work product because it was a list that, I believe, Ms. Massey had drafted.  So it would reflect her impressions on who she may or may not want to interview for the investigation.

THE COURT:  Well, you would be able to lay it side by side to see who on the list wasn't interviewed, if anybody, right?

MS. BEDNAREK:  Right.

THE COURT:  But if you just gave a list of names, it doesn't tell you in this document what anybody thinks about the names if you redact the narrative, right?

MS. BEDNAREK:  Right.

THE COURT:  Okay.

MS. BEDNAREK:  Right.

THE COURT:  And so my question is, if he had served an

1    interrogatory that said, show me the list of people who may

2    have knowledge, wouldn't -- wouldn't you have listed these

3    people?

4         MS. BEDNAREK:  I'm not sure if the reason she didn't

5    interview them was because they didn't have knowledge.

6         THE COURT:  Uh-huh.

7         MS. BEDNAREK:  So I'm sure some of them would be

8    excluded because if they did have knowledge, she would have

9    interviewed them.

10         THE COURT:  Uh-huh, uh-huh.  Okay.

11         All right.  Is there anything further?

12         Mr. Caro?

13         MR. CARO:  No, your Honor.

14         THE COURT:  All right.  Well, here's -- let me

15    go -- jump ahead.  36485 and 36488 are really of the same

16    stripe as 19917 in the sense that it has list of names, but

17    also woven in commentary that it becomes difficult to really

18    tease out.  And those to me are clearly work product.

19         You know, I'm having a little more difficulty with

20    simply a list of names at potential interviewees.  You

21    interview them; you don't interview them.

22         I guess I'm inclined to require you to produce 19954

23    insofar as it just has a list of the names, but you can redact

24    the introductory commentary.

25         MS. SCHNAKE:  Your Honor, I apologize.  I have a

1   conference call at 2:30, which I can reschedule.

2              THE COURT:  Okay.

3              MS. SCHNAKE:  I just need to email my clients.

4              THE COURT:  Okay.

5              MS. SCHNAKE:  While -- I can do that while we're still

6    proceeding if you don't mind.

7              THE COURT:  Is that okay?

8              MS. BEDNAREK:  That's fine.

9              THE COURT:  All right.  That takes care of category or

10   Group 2.

11             Moving to Group 3, and on that one, as I really read

12   the plaintiffs's argument, it is kind of -- you called out

13   specific documents.  But the real argument is that none of them

14   should be protectable because any privilege is waived by the

15   crime fraud or subject to the crime fraud exception.

16             Is that a fair understanding, Mr. Caro?

17             MR. CARO:  Yes, your Honor.

18             THE COURT:  All right.  So let me give you my thoughts

19   about the crime fraud analysis.  In order to get through the

20   attorney-client privilege, a party who invokes the crime fraud

21   exception must provide prima facie evidence that -- and I'm

22   quoting -- gives color to the charge by showing some foundation

23   in fact.

24             And I quote US versus BDO Seidman, LLT, 492 F.3d, 806

25   at 818, a Seventh Circuit decision from 2007.

Only if that prima facie basis is established will a Court take the next step, which to require the respondent to provide an explanation to counter the prima facie evidence. A party who seeks to invoke the crime fraud exception need not make out a prima facie case that shows each and every element of a particular crime or fraud. But the name of the exception, I think, does give you some idea as to the parameters of its sweep.

It would be too easy to invade the privilege if the exception could be invoked every time an adversary took an action that the party claiming the exception generally asserted was wrongdoing or a violation of his or her rights.

In their request the plaintiffs cite to 15 asserted facts which they claim warrant application of the exception. Plaintiffs say, if I can kind of categorize and summarize then, that these asserted facts show that Ms. Massey and Mr. Roselli conspired with school officials to violate their rights by arranging the UGB (phonetic) process to be conducted in a way that was not fair, impartial, and independent, primarily by allowing Ms. Massey to be the investigator, which they say was a conflict of interest that was designed merely to rubber stamp the initial decision by Ms. Wennstrom by withholding information from the response to the FOIA request by asserting improperly the attorney-client privilege and by ignoring portions of the administrative record and instead limiting

consideration to what Ms. Massey and Roselli wanted to
consider.  In other words, by cherry picking.

Now these assertions may speak to whether the process
was a fair process.  But in my judgment the assertions do not
rise to the level of a prima facie case that is sufficient to
invoke the crime fraud exception.

It is at least to me clear that the principal
assertions that the plaintiffs offer to invoke the exception
are not matters that were withheld from them by the defendants.
Plaintiffs know the information that they claim constitutes the
conflict of interest.

Dr. Jain raised that during the UGB process.  The fact
that plaintiffs and the defendants disagree about whether
Ms. Massey's involvement was a conflict of interest is not a
basis to invade the privilege.

If the plaintiffs were correct about this view --
well, I'm going to put it this way.  If the plaintiffs are
correct, as I have said, that this all created an unfair
process that was a rubber stamp and that there was a conflict
of interest, that may advance their claims in the lawsuit.
And, again, I'm not expressing any views on that.

But if the defendants are proven incorrect in their
position, the price of asserting the privilege, and someone
then rules it doesn't apply, isn't that you waive all
privilege.  The price of asserting that there is not a conflict

of interest is not to waive the privilege in all documents that may pertain to that subject.

So I, with respect, will reject the assertion here of the crime fraud exception to the privilege.

I will give you my views about the particular documents that have been identified for review.

You know, my review 17352, 17411, 17409, 17415, 17417, those are all properly protected under the work product or attorney-client privilege as asserted.

19595 is an email chain between Ms. Massey and Ms. Roselli. The first few documents are. The last one of those chains -- in the chain is March 17, 2016.

But then there are in the chain that follow various emails between Dr. Jain and various school district or board members. Those have all been produced?

MS. BEDNAREK: Yeah.

THE COURT: Okay. And that's true if I ask for any of these?

MS. BEDNAREK: Yeah.

THE COURT: Well, those they have been produced. They would not be privileged. But then the communications between Ms. Massey and Mrs. Roselli (unintelligible) them is protected as work product.

The same is true for 19698, 19743, 19746, 19762, 19777, 19920, 19929, 19937, 35364, 35607, 37236, 37341, and

37700.  Some of these are duplicates of other documents that were in list one or so.  Those are all properly protected as attorney-client or work product as asserted on the log, with the exception of various forwarded emails within them that are not privileged but it is represented have been produced independently.

Then turning to the FOIA documents, Group 4.  Exhibit 1 is properly whatever was redacted or is properly protected as attorney-client.

Exhibit 2, withheld information is properly attorney client.

Exhibit 4 there are four emails.  The first one is -- is it to -- from Ms. Trush (phonetic)?

MS. BEDNAREK:  Trout?

THE COURT:  Trout, yes.

MS. BEDNAREK:  Trout, yes.

THE COURT:  Trout.  Which appears to predate the test. It is an email to students.

MS. SCHNAKE:  And that's been produced regarding the --

THE COURT:  And then an email after that from Ms. Wennstrom thanking Ms. Trout for providing it.  And then two follow-on emails from Ms. Wennstrom to Ms. Roselli.

The latter two emails are privileged.  The first two emails are not.

1        If they have not been produced, they are to be

2   produced.  Exhibit 8, 12, 14, 20, 22, 23, 24, and 25 are all

3   properly privileged and may be protected to the extent that

4   they have been redacted or withheld.

5        So that's my ruling on the samples.  In those

6   instances where I have said something needs to be produced if

7   it has not already been produced, I will require the defense to

8   do that promptly.

9        How long would it take?

10       MS. BEDNAREK:  Probably by me doing it, I could do it

11  by the end of the week.

12       THE COURT:  Okay.  So by this Friday?

13       Is that all right with you, Mr. Caro?

14       MR. CARO:  Yes, your Honor.

15       THE COURT:  So that would be August 25th.  Now this

16  was with a selected sample.

17       Mr. Caro, do what you want them to do any further

18  review of the documents that were outside of the sample?

19       MR. CARO:  No, your Honor.

20       THE COURT:  Okay.

21       MR. CARO:  No.

22       THE COURT:  All right.  So since we are all here

23  together, you can fill me in on where you're at in discovery.

24  I know that you had two depositions set last week.  I know the

25  deposition of Plaintiff A went forward.

1          Did Dr. Jain's go forward?

2          MS. BEDNAREK:  Yes, it did, your Honor.

3          THE COURT:  Okay.  And both were completed?

4          MS. BEDNAREK:  Yes.

5          THE COURT:  And then that leaves Mr. Gale's (phonetic)

6 deposition.

7          MS. BEDNAREK:  Yes.

8          THE COURT:  And that's set for next week.  Is it the

9 30th?

10          MS. BEDNAREK:  The 30th, your Honor, yes.

11          THE COURT:  All right.  Is that the last deposition

12 that's set?

13          MS. SCHNAKE:  Yes.

14          MS. BEDNAREK:  For defendants, yes.

15          THE COURT:  All right.  And the defense wasn't going

16 to be taking any further depositions?

17          MS. BEDNAREK:  No.

18          THE COURT:  All right.  And you're done with discovery

19 August 31st.

20          All right.  We have a status that's set August 31st at

21 9:00 o'clock.  Why don't we keep that day.  Okay?

22          Is there anything that I should know about?

23          MS. BEDNAREK:  No, your Honor.

24          MR. CARO:  I don't think so, your Honor.

25          THE COURT:  All right.  And then as I said, the

1    interrogatory revisions they will be due a week from today,

2    which will be the 29th.  Okay?

3            Anything else?

4            MR. CARO:  Thank you very much, your Honor.

5            THE COURT:  All right.  Thank you.

6            MS. BEDNAREK:  Thank you, your Honor.

7            THE COURT:  Mr. Caro, do you need to be by phone next?

8            If he needs to be by phone next time, that's fine.

9            MS. BEDNAREK:  Okay.

10           MR. HARBECKE:  Thank you, your Honor.

11           THE COURT:  All right.  Thank you.

12       (Which concluded the proceedings.)

13                           CERTIFICATE

14           I certify that the foregoing is a correct transcript

15   from the digital recording of proceedings in the above-entitled

16   matter to the best of my ability, given the limitation of using

17   a digital-recording system.

18

19

20   */s/Pamela S. Warren*                    August 25, 2017
     Official Court Reporter                      Date
21   United States District Court
     Northern District of Illinois
22   Eastern Division

23

24

25