IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| S. JAIN, for herself, and as parent of and for her son "A", a minor, | Case No. 17-cv-00002 |
| Plaintiffs, | Honorable Ronald A. Guzman |
| v. | |
| BUTLER ILLINOIS SCHOOL DISTRICT 53, et al. | |
| Defendants. | |

**SCHOOL DISTRICT DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FIFTH AMENDED COMPLAINT**

The School District Defendants, by and through their attorneys, Darcy L. Proctor and Lucy B. Bednarek, of the law firm of Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, submit the following as their Memorandum in support of their Motion to Dismiss the Fifth Amended Complaint:

### I. The Board of Education is not a proper defendant.

Plaintiffs once again name both Butler School District 53 and the Board of Education as defendants. The Board of Education is not a proper party in this lawsuit – it is the elected governing body of the School District. The School District operates the schools and is the suable entity. 105 ILCS 5/10-1, 10-2. Further, because the Board of Education is the governing body of the School District, plaintiff is not entitled to separate relief against both the Board of Education and the School District. As such, the Board of Education should be dismissed as a defendant.

### II. Plaintiffs' fifth amended complaint is barred by the doctrine of *res judicata*.

The fifth amended complaint is once again based on the School District's investigation into academic dishonesty involving plaintiff and her son "A", and subsequent sanctions barring plaintiff A from participating in extracurricular academic competitions. Plaintiffs' fifth amended complaint is barred by the doctrine of *res judicata*. In May, 2016, plaintiffs filed an

1

administrative lawsuit challenging the investigation and the sanctions, entitled *S. Jain, for herself, and as parent of and for her son "A," a minor, v. Butler Illinois School District 53, et al.*, Case No. 2016 MR 864. (A copy of the complaint is attached as Exhibit A). The administrative lawsuit also claimed the February 8, 2016 email sent by Superintendent Wennstrom to the School District community about the academic dishonesty constituted defamation. (See Administrative Complaint, ¶25). In May, 2017, the District agreed to end the sanctions imposed on plaintiffs and the complaint was dismissed with prejudice. (Copies of the motion to dismiss and the dismissal order are attached as Exhibits B and C).

*Res judicata,* or claim preclusion, prohibits litigants from relitigating claims that were or could have been litigated during an earlier proceeding. *Hayes v. City of Chicago,* 670 F.3d 810, 813 (7th Cir. 2012). Illinois law provides that *res judicata* will bar federal claims where (1) there has been a state court final judgment on the merits; (2) the state court judgment involved the same parties or privies as the current action; and (3) the state court action "constitute[d] the same cause of action as the current claims." *Garcia v. Vill. of Mt. Prospect*, 360 F.3d 630, 635 (7th Cir. 2004); *Pirela v. Village of North Aurora*, 935 F.2d 909, 911 (7th Cir. 1991).

Here, all three requirements are met. A final judgment dismissing the state court administrative review claim with prejudice was entered. See *Flores v. Dugan,* 91 Ill.2d 108, 112 (1982) (A final judgment is "a determination by the court which fixes absolutely and finally the rights of the parties"); *Philips v. Shannon*, 445 F.2d 460, 462 (7th Cir. 1971) (a dismissal with prejudice is a final judgment on the merits). Further, the School District and the individual Board members are defendants in the state court action. Finally, the cause of action (the challenge to academic dishonesty investigation and the sanctions) is the same. The claims "arise from the same group of operative facts." *Garcia*, 360 F.3d at 637. This is true even if the claims assert

different forms of relief. *Arlin-Golf LLC v. Village of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011).

If all three of the above requirements under the *res judicata* analysis are met, then the court reviews a plaintiff's opportunity to fully and fairly litigate his claims. *Garcia,* 360 F.3d at 639. So long as a plaintiff could have joined his federal claims with the administrative appeal, then he had a full and fair opportunity to litigate those claims under Illinois law. *Id.* Illinois permits the joinder of Section 1983 claims with administrative-review actions. As a result, "an administrative-review action forecloses any later Section 1983 action in federal court arising out of the same transaction." *Durgins v. City of East St. Louis,* 272 F.3d 841, 843 (7th Cir. 2001). See *Dookeran v. County of Cook*, 719 F.3d 570, 577 (7th Cir. 2013) ("a federal civil rights claim may be brought in Illinois circuit court along with a related administrative review action, a party's failure to do so will raise the potential for claim preclusion").

Here, plaintiffs could have raised their constitutional claims in the administrative review complaint as separate counts but chose not to do so. As a result, because plaintiffs had a full and fair opportunity to litigate their claims against the Board and individual Board members relating to the academic dishonesty investigation and sanctions, *res judicata* applies to bar plaintiffs' fifth amended complaint here.

### III. Plaintiffs' Fourth Amendment and Illinois Constitution claims fail.

In the alternative, even if plaintiffs' fifth amended complaint is not barred by *res judicata*, it is baseless and should be dismissed. In an attempt to circumvent this Court's September 5, 2017 ruling that the interview of plaintiff A by the School District officials was not a constitutional violation, plaintiff now attempts to characterize the interview as an unlawful "seizure" under the Fourth Amendment and the Illinois constitution.

3

While the Fourth Amendment applies principally in the context of law enforcement, its protection has been extended to searches and seizures of students at public schools. *New Jersey v. TLO*, 469 U.S. 325, 341-42 (1985). The Seventh Circuit has recognized that because teachers must maintain order and discipline, students surrender some liberty "once inside the schoolhouse gate." *Wallace v. Batavia Sch. Dist.*, 68 F.3d 1010, 1014 (7th Cir. 1995). In determining the reasonableness of a seizure by school officials, courts must take into account the inherent restriction of students' liberty while under the supervision and control of school administrators. *Sabol v. Walter Payton College Prep. High Sch.*, 804 F.Supp.2d 747, 755 (N.D.Ill. 2011), citing *Wallace,* 68 F.3d at 1013-14.

Because the reasonableness of a seizure is based on a "premise of a general constitutionally permissible liberty restriction," school officials are given latitude to employ a "wide range of methods" in maintaining order and discipline. *Id.* "Against that backdrop, a seizure will be deemed a deprivation of a constitutional liberty interest only when 'under the circumstances presented and known the seizure was objectively unreasonable.'" *Id.* at 756, *citing Wallace*, 68 F.3d at 1015.

For example, in *Sabol*, the minor plaintiff was suspended for consuming alcohol on a school sponsored trip to China. 804 F.Supp.2d 747. After fellow students reported that the plaintiff may have violated the rules, the chaperones questioned her about it. *Id.* The Court recognized that "school officials are surely entitled to question any student about such a serious rule violation" and "to hold otherwise would prevent school officials from enforcing the very policies necessary to ensure a safe educational experience." *Id.* at 756. As such, the Court held that how defendants handled the incident was reasonable and did not violate the Fourth Amendment.

4

Similarly, in *Burreson v. Barnevald Sch. Dist.*, 434 F.Supp.2d 588 (W.D.Wis. 2006), the plaintiff was summoned from class by the school principal in order to allow police officers to speak to him and obtain a DNA sample during school hours and on school property. The Court held the student's Fourth Amendment rights were not violated by the principal calling him out of class. *Id.* at 597. The Court recognized that "teachers and other school officials direct the movement of school children and summon them from class for myriad reasons," and the act of summoning a student to the principal's office is an "inherently reasonable one." *Id.* at 596.

Here, plaintiff alleges the minor plaintiff A was unlawfully seized when he was "physically removed from the classroom and then physically forced to enter the principal's office where he endured an interrogation by three adults for almost 1.5 hours." (Compl. ¶134). Even if plaintiff A was questioned for 1.5 hours (which defendants contest), no unreasonable seizure occurred. There is nothing unreasonable about summoning a student out of class and into the principal's office so that school officials could question him about possible academic dishonesty, a serious violation of school rules. Without questioning plaintiff A, the School District would have been unable to conduct a thorough investigation into the cheating allegations. Like in *Wallace*, plaintiffs here have attempted to make a "federal case out of a routine school disciplinary matter." 68 F.3d at 1015. Because no unreasonable seizure occurred, the School District defendants did not violate plaintiff A's rights under the Fourth Amendment or the Illinois constitution. As such, Counts I and III should be dismissed.

### IV. Plaintiffs' Fourteenth Amendment claim also fails.

Like in the fourth amended complaint, plaintiffs again attempt to allege the School District defendants violated their due process rights under the Fourteenth Amendment. (Compl. Count II). This time, plaintiffs allege the interview of plaintiff A by the School District officials constituted a "coercive interrogation technique that shocked the conscience." (Compl. ¶154).

5

This Court already ruled the allegations in plaintiffs' prior complaint did not rise to the level of due process violations. [Doc. 134, pages 11-15]. Significantly, plaintiffs' prior complaint included the same allegation that the interview of minor A violated his due process rights. Merely describing the interview as "a coercive interrogation technique" does not change the facts surrounding it alleged in the complaint. While plaintiff A does have the right to be free from conduct that "shocks the conscience," clearly the interview of plaintiff A by school officials does not rise to that level.

A substantive due process claim, which it appears plaintiffs are alleging here, can address harmful, arbitrary acts by public officials. *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012). However, "such claims must meet a high standard, even when the alleged conduct was abhorrent, to avoid constitutionalizing every tort committed by a public employee." *Id.*

For example, in *Burreson*, the Court held the minor plaintiff's substantive due process rights were not violated when the principal called him out of class so that police officers could speak to him and obtain a DNA sample from him. 434 F.Supp.2d at 595. The court recognized that no "reasonable jury could conclude that [the principal] violated plaintiff's substantive due process rights by calling plaintiff out of class, an act performed daily and routinely by principals throughout the country." *Id.* at 595. The court went on to explain that not only did calling plaintiff out of class not shock the conscience, it was inherently reasonable. *Id.*

Here, plaintiffs' fifth amended complaint includes no facts suggesting the interview of plaintiff A was a deprivation that "shocks the conscience" in the sense required in due process cases. Rather, calling plaintiff A out of class to question him about possible misconduct is an act performed routinely by principals and other school officials throughout the country. The Fourteenth Amendment does not afford plaintiff A any greater protection than the Fourth Amendment. See *Wallace,* 68 F.3d at 1015 (Fourteenth Amendment and Fourth Amendment

6

interests can be treated together because under both standards the court must engage in the same balance of interests). As such, plaintiffs' Fourteenth Amendment claim fails and Count II should be dismissed.

### V. The individual School District defendants are entitled to qualified immunity.

Counts I and II should also be dismissed because defendants Wennstrom, Voliva and Owen are entitled to qualified immunity. Qualified immunity applies to governmental employees performing discretionary functions and shields them from "liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 475 U.S. 800, 818 (1982); *see also Filarsky v. Delia,* 566 U.S. 377 (2012).

When qualified immunity is raised, a two-part inquiry is triggered. The first inquiry addresses whether a plaintiff's complaint states a constitutional violation. The second examines whether the constitutional right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). The sequence of those two inquiries is left to a court's "sound discretion." *Id.* If the answer to either inquiry is in the negative, the defendant is entitled to qualified immunity. *Zorzi v. County of Putnam*, 30 F.3d 885, 892 (7th Cir. 1994).

Neither prong has been satisfied in this case. As explained above, the fifth amended complaint does not state a constitutional violation. Additionally, plaintiffs have not established that their constitutional rights were clearly established at the time. For example, the minor plaintiff had no right to have a parent present during his interview, there was nothing preventing the School District from conducting an investigation into the academic dishonesty, the plaintiffs had no right to participate in extracurricular activities, etc.

Obviously, the School District defendants (Superintendent, Principal and Assistant Principal) would not have believed that taking plaintiff A out of class and questioning him about

7

cheating on tests violated plaintiff A's clearly established constitutional rights. The Illinois School Code confers upon educators *in loco parentis* status, which extends to non-disciplinary and disciplinary matters. 105 ILCS 5/24-24. Illinois courts have recognized that:

> A school official must have leeway to question students regarding activities that constitute either a violation of the law or a violation of school rules. This latitude is necessary to maintain discipline, to determine whether a student should be excluded from school and to decide whether further protection is needed for the student being questioned or for others.

*People v. Pankurst*, 365 ILl.App.3d 248, 255 (2d Dist. 2006). Because no constitutional violation occurred, and the School District defendants would not have believed taking plaintiff out of class and questioning him violated clearly established law, the individual School District defendants are entitled to qualified immunity.

### VI. The School District defendants are entitled to immunity under Section 2-201 of the Tort Immunity Act for any alleged willful and wanton conduct.

In Count IV, plaintiffs allege the School District defendants engaged in willful and wanton conduct by failing to properly investigate the allegations of academic dishonesty, emailing School District families about the academic dishonesty, singling out plaintiff A, and employing the law firm of Robbin Schwartz to conduct its investigation. (Compl. Count IV, ¶176). The School District defendants are immune from any state claim arising out of these decisions.

Decisions about how the investigation was conducted, the discipline that followed, and how Superintendent Wennstrom notified the School District community about the investigation are discretionary decisions falling within the absolute immunity of Section 2-201 of the Tort Immunity Act. 745 ILCS 10/2-201. Section 2-201 of the Tort Immunity Act provides absolute immunity for discretionary decisions made by the School District, the Board members, and school officials. *Johnson v. Mers*, 279 Ill.App.3d 372 (2d Dist. 1996).

Discretionary immunity applies to decisions like an investigation into academic dishonesty, the resulting discipline, and how to notify the school community – all of which require a balancing of competing interests and a judgment call as to what solution would best serve each of those interests. *Harinek v. 161 N. Clark St.,* 181 Ill.2d 335 (1998). See *Albers v. Breen*, 346 Ill.App.3d 799 (4th Dist. 2004) (holding that a principal's decision about how to discipline students fell within the protection of Section 2-201). As such, the School District defendants are immune under Section 2-201 from any willful and wanton claim based on how the investigation was conducted, the discipline imposed and how the School District community was notified.

### VII. Plaintiffs do not state a claim for intentional or reckless infliction of emotional distress.

In Counts V and VI, plaintiffs allege claims for intentional infliction and reckless infliction of emotional distress. Plaintiffs have not alleged any conduct by the School District defendants that would rise to the level of extreme and outrageous conduct required to prove either an intentional or reckless infliction of emotional distress claim. The same analysis applies for both IIED and reckless infliction of emotional distress claims. *Johnson v. Wal-Mart Stores, Inc.*, 587 F.Supp.2d 1027, 1034 (C.D.Ill. 2008).

In order to state a cause of action for IIED or reckless infliction, a plaintiff must show that (1) defendants' conduct was extreme and outrageous, (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so, and (3) the defendants' conduct actually caused severe emotional distress. *Lifton v. Bd. of Ed. of City of Chicago,* 416 F.3d 571, 579 (7th Cir. 2005).

The standard for an IIED claim is "so stringent that it is met only if the distress inflicted is so severe that no reasonable person could be expected to endure it." *Giraldi v. LamsonI,* 205 Ill.App.3d 1025, 1028 (1st Dist. 1990). In addition, the conduct "must go beyond all bounds of

9

decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).

In *Sabol*, 804 F.Supp.2d at 758, the Court held the questioning of a student by chaperones about a possible violation of the no alcohol rule and the subsequent suspension did not state a claim for IIED. In so holding, the Court recognized that "no sensible person could characterize the conduct of defendants in questioning and suspending the [minor plaintiff] along the lines" of conduct so extreme as to go beyond all possible bounds of decency and intolerable in a civilized community. *Id.* at 759.

Similarly, the conduct alleged here – investigating the allegations of academic dishonesty, questioning plaintiff A, disciplining him, and notifying the School District community of the investigation – does not rise to the level of extreme and outrageous conduct. In other words, such alleged conduct does not go beyond all bounds of decency.

Further, the fifth amended complaint does not contain enough facts to establish this alleged conduct caused severe emotional distress. Plaintiffs allege that they suffer "nervousness, headaches, irritability, and restless sleep" as a result of defendants' conduct. (Compl. ¶192). These emotional responses are not actionable. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 89-90 (1977). As a result, emotional responses like anxiety, humiliation, restless sleep, fear, horror, grief, shame, humiliation, worry, etc. are not enough. *Id.; Welsh v. Commonwealth Edison Co.*, 306 Ill.App.3d 148, 155 (1st Dist. 1999). See *Khan v. American Airlines*, 266 Ill.App.3d 726 (1st Dist. 1994), overruled on other grounds, (recurring nightmares and problems with sleeping and fear of being re-arrested was not severe distress).

Here, plaintiffs' allegations do not state a claim for either IIED or reckless infliction of emotional distress claims, and Counts V and VI should be dismissed.

**VIII. Superintendent Wennstrom has immunity from plaintiffs' defamation claim.**

In Count VII, plaintiffs allege Superintendent Wennstrom defamed them by sending emails on February 8, 2016 and June 15, 2016 to all parents and employees of the School District that "revealed certain families had engaged in academic dishonesty" and that the findings were affirmed by the Board. (Compl. ¶¶91, 124). Plaintiffs admit in the fifth amended complaint that the emails did not mention or identify plaintiff or her son specifically by name. (Compl. ¶¶92, 128). Because plaintiff's complaint admits the emails did not name plaintiff or her son, the defamation claim fails on that basis alone.[1]

Further, Superintendent Wennstrom is immune from liability for defamation under the common law privilege. *Geick v. Kay*, 236 Ill.App.3d 868, 875 (2d Dist. 1992). Illinois has long recognized that a governmental official cannot be held liable for statements made within the scope of his or her official duties. *Id.* This absolute privilege applies whenever the statement made was "reasonably related to [the public official's] duties." *Id.* at 876-77. The immunity cannot be overcome by the showing of malice, improper motivation or the knowledge of falsity. *Id.* at 875-76; *Blair v. Walker*, 64 Ill.2d 1 (1976).

As a public official, a superintendent is protected by this common law privilege. *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37,* 260 F.3d 602, 618 (7th Cir. 2001). In *Horwitz*, the plaintiff teacher alleged the school district superintendent and school principal made defamatory remarks when they were discussing with parents the plaintiff's absence from school. *Id.* at 617. The court held the superintendent and principal were immune from liability for defamation because they were "acting within the scope of their official duties and authority when they corresponded or spoke with various parents about [plaintiff's] absence." *Id.* See also *Cameli v.*

---

[1] The February 8, 2016 email is part of the administrative record in Case No. 2016 MR 864 and this Court previously took judicial notice of it. [Doc. 134, fn. 2]. The February 8, 2016 email is also included in Exhibit A here, as an exhibit to the administrative complaint. The June 15, 2016 email was previously attached as an exhibit to plaintiff's motion for partial summary judgment [Doc. 75-2] and is attached again here as Exhibit D.

*O'Neal*, 1995 WL 398893 (N.D.Ill. 1995) (principal was immune from defamation for discussing the basketball coach's termination).

Here, even if plaintiffs stated a defamation claim against Superintendent Wennstrom, the allegations show she is immune under the common law privilege. The February and June emails about the finding of academic dishonesty were clearly within the scope of her official duties. Under Section 10-21.4 of the Illinois School Code, a superintendent is responsible for the administration of the schools, as well making recommendations to the Board of Education regarding instructional material and courses of study. Obviously, the investigation into and the finding that academic dishonesty occurred, fall within her job responsibilities as Superintendent.

Superintendent Wennstrom also has statutory immunity from defamation under Section 2-210 of the Tort Immunity Act, which provides that a public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information. 745 ILCS 10/2-210; *King v. City of Chicago*, 324 Ill.App.3d 856, 860 (1st Dist. 2001). The allegations against Superintendent Wennstrom fall squarely within either the common law or statutory immunity, and plaintiffs' defamation claim should be dismissed.

### IX. No cause of action exists under the Anti-Bullying Statute.

Finally, Count VIII alleges a claim against the School District defendants under the Illinois Anti-Bullying Statute, 105 ILCS 5/27-23.7. The Bullying Statute does not provide for a private cause of action. Rather, it prohibits bullying and requires schools to create anti-bullying policy and educate students, parents and staff about what behaviors constitute bullying. *Id.* In other words, the statute merely requires schools to take action to address and prevent bullying, and includes no penalties for violating it. The statute also provides that "this section shall not be interpreted to prevent a victim from seeking redress under any other available civil or criminal

12

law." *Id.* Because the Bullying Statute does not create a private cause of action for violation of the Statute, Count VIII should be dismissed.

WHEREFORE, the School District Defendants respectfully request that this Court dismiss the fifth amended complaint with prejudice, and for all other relief that this Court finds just and proper.

/s/ Lucy B. Bednarek
LUCY B. BEDNAREK

Lucy B. Bednarek /ARDC # 6269389
lbednarek@ancelglink.com
Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C.
Attorney for School District Defendants
140 South Dearborn Street, Sixth Floor
Chicago, Illinois  60603
(312) 604-9123 (direct)

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys of record herein, hereby certifies that on December 7, 2017, the foregoing **SCHOOL DISTRICT DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System, which will send notification of such filing to the following:

Craig M. Sandberg
Muslin & Sandberg
19 S. LaSalle Street, Suite 700
Chicago, IL 60603
(312) 263-7249
craig@muslin-sandberg.com

Matthew R. Henderson
Katherine Georgia Schnake
HINSHAW & CULBERTSON
222 North LaSalle Street / Suite 300
Chicago, IL 60601-1081
mhenderson@hinshawlaw.com
kschnake@hinshawlaw.com

/s/ Lucy B. Bednarek
LUCY B. BEDNAREK / ARDC# 6269389
One of the attorneys for the School District Defendants

ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
Telephone: (312) 782-7606
Direct: (312) 604-9123
Facsimile: (312) 782-0943
E-Mail: lbednarek@ancelglink.com

4821-0983-2279, v. 1