**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| S. JAIN, for herself, and as parent of and for her son "A", a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:17-cv-0002 |
| BUTLER SCHOOL DISTRICT 53; THE BOARD OF EDUCATION OF THE BUTLER ILLINOIS SCHOOL DISTRICT 53; ALAN HANZLIK; LOU PASKALIDES; RAJIV ADVANI; LIZ CHUN; TODD RUSTEBERG; HITESH PATEL; ALAN KUMAR; HEIDI A. WENNSTROM; KELLY VOLIVA; LISA OWEN; LIBBY N. MASSEY; and CAROLINE ROSELLI, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Hon. Ronald A. Guzmán, Judge Presiding, Hon. Sidney I. Schenkier, Magistrate Judge Presiding. |
| Defendants. | ) ) | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO THE DEFENDANTS' RULE 12(b)(6) MOTIONS TO DISMISS COUNTS I-VIII
OF THE PLAINTIFF'S FIFTH AMENDED COMPLAINT AT LAW**

---

Craig M. Sandberg
MUSLIN & SANDBERG
19 S. LaSalle Street, Suite 700
Chicago, Illinois 60603-1491
Tel: (312) 263-7249
Fax: (312) 263-8193
E-Mail: craig@muslin-sandberg.com

*Counsel for S. Jain, for herself, and as parent of and for her son "A", a minor*

## TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………............... i

TABLE OF AUTHORITIES……………………………………………….................. iii

PRELIMINARY STATEMENTS…………………………………………………. 1

PROCEDURAL HISTORY……………………………………………………… 2

CONTROLLING LAW AND ANALYSIS………………………………………… 4

A.  Standard of review………………………………………...................... 4

B.  Boards of education have both standing and capacity to sue and be sued….. 5

C.  None of Plaintiff's claims (Counts 1-8) have been litigated in any other court. 7

D.  The Interrogation Defendants' actions violated constitutional prohibitions related to the seizure of a young student, which was objectively unreasonable. 12

E.  The Interrogation Defendants' actions constituted a conscious-shocking coercive interrogation of the 9-year old that was objectively unreasonable... 17

F.  The Interrogation Defendants do not have qualified immunity…………....... 19

G.  The Defendants are *not* immune from willful and wanton acts and/or omissions……………………………………………………………….... 20

    1.  *The School District Defendants*…………………………………….. 20

    2.  *The Attorney Defendants*…………………………………………… 23

H.  Infliction of emotional distress………………………………………… 29

    1.  *Intentional infliction of emotional distress (IIED)*………………….. 29

    2.  *Reckless infliction of emotional distress (RIED)*…………………… 31

I.  Wennstrom has no immunity from defamatory statements outside official duties…………………………………………………………………... 33

J.  Illinois Anti-Bullying Statute (105 ILCS 5/27-23.7)………………………….. 35

CONCLUSION…………………………………………………………………… 36

EXHIBIT A – TRANSCRIPT OF AUGUST 21, 2017 HEARING

CERTIFICATE OF SERVICE

<u>**TABLE OF AUTHORITIES**</u>

PURSUANT TO "BLUE BOOK" RULE 10.7, THE APPELLANT'S CITATION OF CASES DOES NOT INCLUDE "CERTIORARI DENIED" DISPOSITIONS THAT ARE MORE THAN TWO YEARS OLD.

| <u>**Cases**</u> | <u>**Page(s)**</u> |
|---|---|
| *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) | 5 |
| *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935 (1st Dist. 1997) | 30 |
| *Alper v. Bickel & Brewer*, 257 F.3d 680 (7th Cir. 2001) | 5 |
| *Alvarado v. Litscher*, 267 F.3d 648 (7th Cir. 2001) | 19 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 4-5 |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) | 4-5 |
| *Blair v. Walker*, 349 N.E.2d 385 (1976) | 33 |
| *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685 (7th Cir. 2008) | 23, 32 |
| *Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525 (1st Cir. 1995) | 19 |
| *Buckley v. Valeo*, 424 U.S. 1 (1976) | 8 |
| *Chavez v. Martinez*, 538 U.S. 760 (2003) | 18 |
| *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) | 18 |
| *Courson v. Danville Sch. Dist. No. 118*, 333 Ill. App. 3d 86 (4th Dist. 2002) | 21 |
| *Cronin v. Lindberg*, 360 N.E.2d 360 (Ill. 1976) | 6 |
| *Crown Oil and Wax Co. of Delaware, Inc. v. Glen Const. Co. of Virginia, Inc.*, 578 A.2d 1184 (Md. 1990) | 8 n.5 |
| *Doe v. Calumet City*, 641 N.E.2d 498 (Ill. 1994) | 30 |
| *Dunn v. United States*, 307 F.2d 883 (5th Cir. 1962) | 3 n.3 |
| *Edelman, Combs and Latturner v. Hinshaw and Culbertson*, 788 N.E.2d 740 (1st Dist. 2003) | 23 |
| *Edwardsville Sch. Serv. Pers. Ass'n v. Ill. Educ. Labor Relations Bd.*, 235 Ill. App. 3d 954 (4th Dist. 1992) | 9 |
| *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005) | 4 |
| *Fagocki v. Algonquin Fire Prot. Dist.*, 496 F.3d 623 (7th | 22, 32 |

| | |
|---|---:|
| Cir. 2007) | |
| *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747 (5th Cir. 2010) | 33 |
| *Feltmeier v. Feltmeier*, 798 N.E.2d 75 (Ill. 2003) | 30-31 |
| *Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010) | 17 |
| *Garcia v. Vill of Mt. Prospect*, 360 F.3d 630 (7th Cir. 2004) | 10 |
| *Geick v. Kay*, 603 N.E.2d 121 (2d Dist. 1992) | 34 |
| *Harinek v. 161 North Clark Street Ltd. P'ship*, 692 N.E.2d 1177 (Ill. 1998) | 21 |
| *Hascall v. Williams*, 996 N.E.2d 1168 (4th Dist. 2013) | 36 |
| *Hayes v. City of Chicago*, 670 F.3d 810 (7th Cir. 2012) | 10 |
| *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602 (7th Cir. 2001) | 33 |
| *In the Matter of Richard P. Caro*, 97 A.D.3d 148 (N.Y. App. Div. 2012) | 2 n.2 |
| *Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000) | 19 |
| *Knierim v. Izzo*, 174 N.E.2d 157 (Ill. 1961) | 29 |
| *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992) | 32 |
| *Kubiak v. City of Chi.*, 810 F.3d 476 (7th Cir. 2016) | 36 |
| *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129 (1993) | 34 |
| *Malinkski v. Grayslake Cmty. High Sch. Dist. 127*, 16 N.E.3d 915 (2d Dist. 2014) | 36 |
| *Mapp v. Ohio,* 367 U.S. 643 (1961) | 12 |
| *McConkie v. Nichols*, 392 F. Supp. 2d 1 (D. Me 2005) | 18 |
| *McGrath v. Fahey*, 533 N.E.2d 806 (Ill. 1988) | 30-32 |
| *McLaughlin v. Tilendis*, 253 N.E.2d 85 (1969) | 34 |
| *Michigan v. Chesternut*, 486 U.S. 567 (1988) | 13 |
| *Miller v. Fenton*, 474 U.S. 104, 109 (1985) | 18 |
| *Mulvey v. Carl Sandburg High Sch.*, 66 N.E.3d 507 (1st Dist. 2016) | |
| *Naeem v. McKesson Drug Co.*, 444 F.3d 593 (7th Cir. 2006) | 29 |
| *New Jersey v. TLO*, 469 U.S. 325 (1985) | 16 |

| | |
|---|---|
| *O'Brien & Assoc. v. Tim Thompson*, 274 Ill. App. 3d 472, 481 (2nd Dist. 1995) | 25 |
| *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152 | 25 |
| *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) | 16 |
| *People ex rel. Hartigan v. Ill. Commerce Comm'n*, 131 Ill. App. 3d 376, 378 (4th Dist. 1985) | 9 |
| *Pfister v. Shusta*, 657 N.E.2d 1013 (Ill. 1995) | 22, 32 |
| *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765 (Ill. 1976)) | 29, 31 |
| *Richards v. Mitcheff*, 696 F.3d 635 (7th Cir. 2012) | 4 |
| *Rochin v. California*, 342 U.S. 165 (1952) | 17 |
| *Salvato v. Ill. Dept. of Human Rights*, 155 F.3d 922 (7th Cir. 1998) | 27 |
| *Schneider v. County of Will*, 366 Fed. Appx. 683 (7th Cir. 2010) | 19 |
| *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50 (Ill. 2016) | 29 |
| *Stratman v. Brent*, 683 N.E.2d 951 (2d Dist. 1997) | 21 |
| *Snyder v Curran Twp.*, 657 N.E.2d 988 (Ill. 1995) | 21 |
| *Turcios v. DeBruler Co.*, 12 N.E.3d 167 (2d Dist. 2014) | 30 |
| *United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991) | 5 |
| *United States v. Mendenhall*, 446 U.S. 544 (1980) | 13 |
| *United States v. Tinnie*, 629 F.3d 749 (7th Cir. 2011) | 12-13 |
| *U.S. Dep't of Hous. and Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920 (4th Cir. 1994) | 7 |
| *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273 (Ill. 2003) | 20 |
| *Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010 (7th Cir. 1995) | 16 |
| *West v. Kirkham*, 588 N.E.2d 1104 (Ill. 1992) | 21 |

**Constitutional Provisions, Statutes, and Codes Provisions:**

| | |
|---|---|
| U.S. Const., amend. IV | 12, 19 |
| U.S. Const., amend. XIV | 12, 18-19 |
| 28 U.S.C. § 1367 | 4 |
| 42 U.S.C. § 1983 | 12 |

| | |
|---|---|
| ILL. CONST. 1970, art. I, § 6 | 12, 16, 19 |
| 105 ILCS 5/27-23.7 | 35-36 |
| 735 ILCS 5/3-110 | 11 |
| 745 ILCS 10/1-101.1 | 20 |
| 745 ILCS 10/2-107 | 34-35 |
| 745 ILCS 10/2-201 | 20-21, 35 |

**Federal Rules of Civil Procedure:**

| | |
|---|---|
| FED. R. CIV. P. 12 | *passim* |

**Other Authorities:**

| | |
|---|---|
| Illinois Pattern Jury Instruction (Civil) 14.01 | 23 |
| Louis Brandeis, *Other People's Money* 62 (1933) | 8 |
| RESTATEMENT (SECOND) OF TORTS § 46 (Outrageous Conduct Causing Severe Emotional Distress) | 32 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| S. JAIN, for herself, and as parent of and for her son "A", a minor, | ) ) ) | |
| | ) | Case No. 1:17-cv-0002 |
| Plaintiff, | ) | |
| | ) | Hon. Ronald A. Guzmán, |
| vs. | ) | Judge Presiding, |
| | ) | |
| BUTLER SCHOOL DISTRICT 53, *et al.*, | ) | Hon. Sidney I. Schenkier, |
| | ) | Magistrate Judge Presiding. |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO THE DEFENDANTS' RULE 12(b)(6) MOTIONS TO DISMISS COUNTS I-VIII**
**OF THE PLAINTIFF'S FIFTH AMENDED COMPLAINT AT LAW**

S. Jain, for herself, and as parent of and for her son "A", a minor, by her attorneys,

Muslin & Sandberg, through Craig M. Sandberg, hereby submits her Response in Opposition to

Defendants' Rule 12(b)(6) Motions to Dismiss Counts 1-8 of Plaintiff's Fifth Amended

Complaint at Law.[1] (DE 185-87) In support thereof, the plaintiff states as follows:

**I. PRELIMINARY STATEMENTS**

1.      Defendants filed their Rule 12(b)(6) Motions to Dismiss Counts 1-8 of Plaintiff's

Fifth Amended Complaint at Law contending that the plaintiff has failed to allege even a single

viable cause of action.

2.      However, as described in greater detail below, this Court should deny the

defendants' motions to dismiss. Plaintiff has pleaded specific facts that support each of the

causes of action (Counts 1-8) set forth therein and it can reasonably be inferred from those

---

[1] Citations made to the record on appeal/docket will be denoted as "DE ____.

allegations that sufficient facts have been pled in order to defeat the defendants' motions. At this stage, plaintiff has met her pleading burden by alleging facts that, taken together and in the light most favorable to the plaintiff, create the plausible inferences necessary to sustain her claims. Because plaintiff has alleged facts that support her causes of action, the defendants' motions to dismiss must be denied.

## II. PROCEDURAL HISTORY

3.     On January 2, 2017, the plaintiff filed her original complaint at law. (DE 1)

4.     On September 5, 2017, this Court, having found the plaintiff failed to plead any "plausible basis for a constitutional violation" under the First, Fifth, Sixth, Tenth, and Fourteen Amendment relied upon, dismissed the plaintiff's Fourth Amended Complaint at Law. (DE 134 at p15) This Court did not address the merits of any of the plaintiff's state law claims and, in fact, wrote that dismissal of the federal claims left "only her state law claims". (DE 134 at p15) Plaintiff was granted leave to file an amended complaint to "allege a legitimate constitutional violation." (DE 134 at p15) Plaintiff was represented by different counsel (Richard P. Caro[2]) at all times prior to entry of this order—Mr. Caro was dismissed as counsel.

5.     On October 5, 2017, through her undersigned counsel, the plaintiff filed a Fifth Amended Complaint at Law. (DE 170) In her complaint, Plaintiff alleged two federal claims (Count 1 – Fourth Amendment Violation; and Count 2 – Fourteenth Amendment Violation) and six state-law claims (Count 3 – Illinois Constitutional Violation; Count 4 – Willful and Wanton

---

[2] Simultaneous to his representation of the plaintiff before this Court, Mr. Caro was defending himself (*pro se*) before the Hearing Board of Attorney Registration and Disciplinary Commission ("ARDC") for the unlicensed practice of law in the State of Illinois in the matter entitled *In re Richard Peter Caro* (Case No. 2016PR00078), which filed on July 28, 2016. According to *In the Matter of Richard P. Caro*, 97 A.D.3d 148 (N.Y. App. Div. 2012), Mr. Caro's license to practice law was previously suspended from July 2, 2012 to March 28, 2013.

Conduct; Count 5 – Intentional Infliction of Emotional Distress; Count 6 – Reckless Infliction of Emotional Distress; Count 7 – Defamation *Per Se*; and Count 8 – Violation of Illinois Anti-Bullying Statute). Plaintiff did not re-allege any previously-filed Section 1983 claims based on violations of the First, Fifth, Sixth, or Tenth Amendments. Moreover, her Fourteenth Amendment claim is different than that which was alleged (and dismissed) in the Fourth Amended Complaint.

6.      On December 7, 2017, the School District Defendants (Butler School District 53, Lou Paskalides, Rajiv Advani, Liz Chun, Todd Rusteburg, Hitesh Patel, Alan Hanzlik, Alan Kumar, Heidi Wennstrom, Kelly Voliva and Lisa Owen) filed their Rule 12(b)(6) motion to dismiss. (DE 185-86)

7.      The motion (DE 185-86) was not filed on behalf of the Defendant Board of Education of Illinois School District 53 ("the Board"). The apparent reason for this is found in the School District Defendants' memorandum (DE 186) and addressed below.

8.      Also, on December 7, 2017, the Attorney Defendants (Libby Massey and Caroline Roselli) filed their own Rule 12(b)(6) motion to dismiss. (DE 187) Interestingly enough, although the counts directed at these defendants are Counts 4-6 and those are all state law claims, the Attorney Defendants found it necessary to inject themselves into federal claims (Counts 1-3) against Wennstrom, Voliva and Owen ("the Interrogation Defendants") by seeking their dismissal. (DE 187 at pp3-8) Moreover, in an attempt to prejudice the plaintiff before the Court,[3] instead of addressing concerns with the pleadings by raising clear-headed arguments, the Attorney Defendants contend that "[i]nstead of heeding the Court's caution, Plaintiffs continue

---

[3] This is analogous to the idea that "if you throw a skunk into the jury box, you can't instruct the jury not to smell it." *Dunn v. United States*, 307 F.2d 883, 886 (5th Cir. 1962).

their pattern of making patently frivolous allegations in their Fifth Amended Complaint."[4] (DE 187 at p2) All the while, in seeking to distance themselves from overwhelming taint of the constitutional injuries caused by the Interrogation Defendants and injuries caused by the willful and wanton acts of all of the School District Defendants, and despite the fact that the claims against the Attorney Defendants are within the same case or controversy (28 U.S.C. § 1367; *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 558 (2005)), the Attorney Defendants ask this Court to refuse to exercise supplemental jurisdiction against them. (DE 187 at p3) Here, there is no reason for this Court to decline supplemental jurisdiction over any state law claim if there is a single viable federal civil rights claim.

### III. CONTROLLING LAW AND ANALYSIS

A.   **Standard of review**.

9.   "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[4] On December 6, 2017, the School District Defendants' counsel, Darcy L. Proctor, sent a Rule 11 warning letter advising the undersigned of her "intention to seek Rule 11 sanctions against" the undersigned and the plaintiff. However, when the undersigned requested, on December 11th, for the specific conduct she alleged was sanctionable, Ms. Proctor refrained from articulating what arguments she contended were frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose (as opposed to being disputable). Following such a heavy-handed tactic, counsel's silence is deafening.

(quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility requirement, however, "does not impose a probability requirement," and the claims may proceed even if they seem unlikely to success. *Twombly*, 550 U.S. at 556. "A well-pleaded complaint 'may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.'" *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1334 (D.C. Cir. 2015) (citing and quoting *Twombly*, 550 U.S. at 556). Dismissal under 12(b)(6) is proper <u>only</u> if the plaintiff could prove <u>no set of facts</u> in support of her claims that would entitle her to relief. *Alper v. Bickel & Brewer*, 257 F.3d 680, 684 (7th Cir. 2001).

**B.**     <u>**Boards of education have both standing and capacity to sue and be sued**</u>.

10.     The School District Defendants, without any proper citation allege "[t]he Board of Education is not a proper party in this lawsuit" because "it is the elected governing body of the School District." (DE 186 at p1) It is hard to discern, because no argument is developed, whether the School District Defendants intend this argument to reflect either of the following possible arguments: (1) that the plaintiff's allegations against the Board of Education are insufficient to state a claim against that legal entity; or (2) that Boards of Education lack standing/capacity to sue or be sued. To that end, Judge Posner once wrote, "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Equally true is the fact that counsel for the plaintiff (in addition to the Court) cannot be said to be obliged to guess what is meant by an undeveloped (or underdeveloped) argument, or an otherwise waived/forfeited argument.

11.     If the intent of subsection I ("The Board of Education is not a proper defendant") was to argue the plaintiff's allegations against the Board of Education are insufficient, then this subsection is <u>unnecessary</u> given the fact the School District Defendants develop those arguments later in their brief.

12.     So, we turn to a more concerning issue for the School District Defendants to advance in their brief. If the intended argument is that the Board of Education lacked either standing or capacity to sued, then this Court should find that such an argument be deemed frivolous, legally unreasonable, without factual foundation, and/or asserted for an improper purpose (as opposed to being disputable). By alleging "[t]he School District operates the schools and is <u>the</u> suable entity" (DE 186 at p1) (emphasis added), the School District Defendants are implicitly telling this Court the Board of Education is <u>not a</u> suable entity. The law in Illinois, however, make clear that "[b]oards of education…are governmental agencies created by the legislature and subject to its will" that have both standing and the capacity to sue and be sued. *Cronin v. Lindberg*, 360 N.E.2d 360, 363-64 (Ill. 1976). In fact, "Exhibit A" to the School Defendants' "Exhibit B" (DE 186-2 at pp6-8) is their motion to dismiss on behalf of, *inter alios*, the Board of Education in the administrative review proceedings. That motion was filed and argued to the circuit court (through Defendant Roselli and her colleague, Emily Bothfeld) by the School District Defendants.

13.     Also, the School District Defendants allege, without legal support, that a lawsuit cannot exist against both "Butler School District" and the "Board of Education" because a plaintiff cannot obtain "separate relief against both the Board of Education and the School District". Defendants state no authority to demonstrate that a cause of action against the Board of

Education is impermissible or that claims against both the Butler School District and the Board of Education cannot co-exist. For instance, the School District Defendant have not alleged or provided legal support for an argument that the District is not a separate legal entity because it is under management and control of a locally-elected school board which acts as an agent of the State of Illinois and governs the public school in accordance with state law and may not be sued separately from the Board….or vise versa as the School District Defendants seem to imply.

14.     This Court should deny the defendants' motion to dismiss the Board of Education as a defendant.

**C.      None of Plaintiff's claims (Counts 1-8) have been litigated in any other court.**

15.     Subsection II of the School District Defendants' memorandum contends "Plaintiff's fifth amended complaint is barred by the doctrine of *res judicata*." (DE 186 at pp1-3) However, as discussed below, the School District Defendants' argument is so far from accurate as to be intentionally deceptive to this Court, which is disheartening given "a lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy." *U.S. Dep't of Hous. and Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 925 (4th Cir. 1994). Here, there is not even a scintilla of plausibility in this argument. Interestingly, the Attorney Defendants, who did chose to inject themselves into arguing against claims unrelated to them, did not similarly attempt to raise this argument.

16.     As an initial matter, the Complaint for Administrative Review (Case No. 2016MR000864), which was filed in the Circuit Court of the Eighteenth Judicial Circuit (DuPage County, IL), was dismissed on August 21, 2017 by the circuit court because it was "moot". This was, in fact, the identical relief sought by the School District Defendants (including

the Board of Education). Specifically, the School District Defendants' own exhibit attached in support of their motion shows that they asked the Complaint for Administrative Review "be dismissed as moot." (DE 186-2 at p8, ¶ 9)

17.     As Justice Brandeis observed, "Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." Louis Brandeis, *Other People's Money* 62 (1933), quoted in *Buckley v. Valeo,* 424 U.S. 1, 67 (1976). So, in order to "disinfect" the School District Defendants' argument and to put "evidentiary flesh on the skeleton"[5], below are the relevant statements made by the circuit court on August 21, 2017. (*See* attached Transcript of August 21st Hearing, Exhibit "1") Specifically, the circuit court stated the following regarding S. Jain's administrative review case prior to its dismissal, which was based on "mootness" and not upon the "merits":

> "Plaintiffs are asking the Court to determine whether the school is within its authority to do what it did and determine whether it was correct in its decision…The Defendants have brought a motion to dismiss [the case] saying that [it is] moot because the sanctions that they initially imposed have been removed and repealed and that the school files for [ ] the children referencing the sanctions or restrictions have been also removed; so, therefore, they're claiming it's moot…I'm going to grant the motion. If you folks believe you have actions against the school, those are different than what this Court would do as an administrative review…I'm dismissing the case as moot, and it's with prejudice."

(*See* attached Transcript, pp4-6, Exhibit "1") Stated differently, not only did the circuit court say that the singular claim it could address was "moot", but the court, also, mentioned that any other claim S. Jain may have against the defendants would not be addressed by the circuit court on administrative review. The Court's statement was made almost 4 months before the School

---

[5] *See Crown Oil and Wax Co. of Delaware, Inc. v. Glen Const. Co. of Virginia, Inc.*, 578 A.2d 1184, 1191 (Md. 1990).

District Defendants have, now, attempted to raise this clearly untruthful agreement. It is not hard to imagine "Why?" the School District Defendants would willfully omit this information from their submission to the Court. Clearly, doing so undermines the very foundation of their argument rendering it frivolous, legally unreasonable, and without factual foundation.

18.     As the School District Defendants allege and admit, "[i]n May, 2017, the District agreed to end the sanctions imposed on plaintiffs and the complaint was dismissed with prejudice." (DE 186 at p2; *see also* DE 186-2 at p7, ¶¶ 4-5) As the School District Defendants (including the Board of Education) argued to the circuit court (through Defendant Roselli and her colleague), "A claim 'is moot where no actual rights or interests of the parties remain or where events which render it impossible for the reviewing court to grant effectual relief to either party.' *People ex rel. Hartigan v. Ill. Commerce Comm'n*, 131 Ill. App. 3d 376, 378 (4th Dist. 1985). When 'it becomes apparent that an opinion cannot affect the results as to the parties or the controversy before it, the [C]ourt should not resolve the question merely for the sake of setting a precedent or to govern potential future cases.' *Edwardsville Sch. Serv. Pers. Ass'n v. Ill. Educ. Labor Relations Bd.*, 235 Ill. App. 3d 954, 958 (4th Dist. 1992)." (DE 186-2 at pp7-8, ¶¶ 7-8) Notably and interestingly enough, Defendant Roselli, who filed her motion after the School District Defendants, does not dispute or attempt to correct this issue (whether in the initial motion or a supplement thereto).

19.     Therefore, subsection II ("Plaintiffs' fifth amended complaint is barred by the doctrine of *res judicata*) of the School District Defendants' memorandum (DE 186 at p1-3) makes knowingly false representations to this Court about how the Complaint for Administrative Review came to be dismissed and the legal effect, if any, to this case.

20.     To be clear, the plaintiff is not seeking for this court to determine whether (1) the school acted within their authority to impose sanctions against Minor "A" and, then, to determine whether it was correct in its decision. The circuit court already determined there was no longer an issue because the sanctions the Board imposed were removed and repealed, and that the school files were purged of any reference the sanctions or restrictions.

21.     However, because the argument was raised and not yet withdrawn, the plaintiff must address the issue. The School District Defendants cite *Garcia v. Vill of Mt. Prospect*, 360 F.3d 630 (7th Cir. 2004) to discuss under Illinois law, in order for *res judicata* to apply to Plaintiff's current civil-rights claims, the circuit court's previous affirmance of the Board's decision must: (1) have reached a <u>final judgment on the merits</u>; (2) involved the same parties or their privies as the current claims; and (3) constitute the same cause of action as the current claims. *Garcia*, 360 F.3d at 635. (DE 186 at p2) Also, the School District Defendants cite *Hayes v. City of Chicago*, 670 F.3d 810 (7th Cir. 2012) for the proposition that *res judicata* (or claim preclusion) prohibits litigant from relitigating claims that <u>were or could have been litigated</u> in an earlier proceeding." *Hayes*, 670 F.3d at 813. (DE 186 at p2)

22.     Here, because the only basis for the dismissal of the plaintiff's Complaint for Administrative Review was because the issue was moot because "[i]n May, 2017, the District agreed to end the sanctions imposed on plaintiffs", there was no "final judgment on the merits". Next, the only issue on administrative review was the sanctions on Minor "A", none of the federal or state law claims alleged in the Fifth Amended Complaint "were or could have been litigated" in the circuit court.

23.     Plaintiff's Complaint for Administrative Review (filed on June 27, 2016) requested the "Board's decisions should be set aside and all findings, penalties, sanctions, and defamatory letters issued and documents placed in Plaintiff's son school record reversed and removed". (DE 186-1 at p20) That was the only claim permitted to be filed as part of the administrative review process. Since the School District Defendants ended the sanctions against Minor "A" and removed the materials from his school record, there was no longer a ripe issue before the court…it was moot.

24.     Moreover, judicial review of a final administrative decision is limited by section 3-110 of the Administrative Review Law (735 ILCS 5/3-110), which provides as follows:

> "Every action to review any final administrative decision shall be heard and determined by the court with all convenient speed. The hearing and determination shall extend to all questions of law and fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct."

735 ILCS 5/3-110. Section 3-110 makes clear that the circuit court, in the context of the administrative law complaint, would have never been able to hear and decide the plaintiff's federal and Illinois constitutional claims, nor the state-law injury claims. The scope of judicial review was limited solely to the Board's decision regarding sanctions.

25.     This Court should deny the defendants' motion to dismiss premised on *res judicata* (or claim preclusion).

**D.      The Interrogation Defendants' actions violated constitutional prohibitions related to the seizure of a young student, which was objectively unreasonable.**

26.      Both the School District Defendants and the Attorney Defendants contend that the plaintiff has failed to properly plead sufficient facts in support of her claims for relief related to the alleged constitutional violations. (DE 186 at pp3-7; DE 187 at pp3-8) Implicit in their argument is the suggestion that the complaint is void of factual content that allows the court to draw the <u>reasonable</u> inference that the defendant is liability for the misconduct alleged. As discussed in greater detail below, at this pleading stage, the defendants' argument must fail and their motions denied.

27.      As to these constitutional claims, none of the defendants dispute that Wennstrom, Voliva, and Owen ("the Interrogation Defendants") may be subject to claims arising under 42 U.S.C. § 1983, U.S. CONST., amends. IV and XIV, and/or Article I, Section 6 of Illinois Constitution of 1970. The School District Defendants briefly mention qualified immunity (DE 186 at pp7-8) in the event of an absence of a constitutional violation.

28.      The School District Defendants do not dispute that the Interrogation Defendants are <u>not</u> immune from claims (with sufficient factual support) that a student might be "seized" in violation of applicable constitutional law. *See* U.S. CONST., amend. IV; ILL. CONST., art. I, sec. 6. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST., amend. IV. The protections of the Fourth Amendment are enforceable against state actors through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 655 (1961). In *United States v. Tinnie,* 629 F.3d 749 (7th Cir. 2011), Judge Hamilton observed the following:

> "The erosion of Fourth Amendment liberties comes not in dramatic leaps but in small steps, in decisions that seem 'fact-bound, case-specific, and almost routine at first blush. Taken together, though, these steps can have broader implications for the constitutional rights of law-abiding citizens."

*Tinnie*, 629 F.3d at 754 (Hamilton, J., dissenting). Judge Hamilton's comments seem to presage the circumstances that Minor "A" found himself in with the Interrogation Defendants. In *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), the United States Supreme Court held that a person is seized within the meaning of the Fourth Amendment when a <u>reasonable</u> person (in this case…a 9-year old) would not feel free to leave under the circumstances surrounding the incident. "For Fourth Amendment purposes, a person can be 'seized' before he is actually restrained by physical force, at the moment when, given all the circumstances, a reasonable person would believe he is not free to leave." *Tinnie*, 629 F.3d at 759 (7th Cir. 2011) (Hamilton, J., dissenting) (citing *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)).

29.     Plaintiff's complaint pleads the following salient, and non-exhaustive, facts related to the "seizure" of then 9-year old Minor "A":

- The Interrogation Defendants agreed to surprise Minor "A" by letting him participate in the morning session of the GeoBee that he had been studying for almost a year, removing him from his homeroom (without any advanced warning and without ever contacting his parents or providing him an advocate/guardian) later that afternoon, march him down the school's hallway into the front office and (further/deeper) into the principal's office, sit him down at a table and surround that room/table with adults, interrogate him for 1.5 hours, challenge his responses by exercising their superior authority over him in order elicit a confession to match their pre-ordained narrative that Minor "A" knowingly engaged in academic dishonesty by having and using 2016 GeoBee questions/answers. (DE 170 at ¶ 52)
- On January 19, 2016, while in his homeroom with a substitute teacher, Owen entered the class room and told Minor "A" he need to get up from his desk and immediately leave the classroom with her to go with her to Voliva's office—thus, Owen physically removed Minor "A" from his classroom. (DE 170 at ¶ 53)
- Owen marched Minor "A" down the hallway(s) of the school, through the front office, and back into Voliva's office. When they got to Voliva's office, Wennstrom and Voliva

were already present. (DE 170 at ¶ 54)

- While in the principal's office, Minor "A" felt surrounded and intimidated. (DE 170 at ¶ 56)
- Thereafter, while in the confines of Voliva's office and the custody/control of the Interrogation Defendants, Minor "A", then, was subjected to what amounted to a "custodial interrogation". (DE 170 at ¶ 57)
- None of the adults in the room (Wennstrom, Voliva, or Owen) where there to protect or act as an advocate or guardian of Minor "A". (DE 170 at ¶ 58)
- Initially, Wennstrom asked Minor "A", "Do you now why you're here?" to which he replied, "I have no idea." (DE 170 at ¶ 59)
- Minor "A" believed the tone of voice of the Interrogation Defendants was harsh and accusatory. (DE 170 at ¶ 60)
- Minor "A" was under the impression that the interrogation was being videotaped. (DE 170 at ¶ 61)
- Owen asked Minor "A" about the Fountas & Pinnell Benchmark Assessment System and showed him box of books from Owen's classroom. (DE 170 at ¶ 62)
- Owen was writing everything down. (DE 170 at ¶ 63)
- Wennstrom asked Minor "A" about the WordMasters Challenge, noting that straight-A student Minor "A" had scored a 20/20 on the challenge. (DE 170 at ¶ 64)
- Wennstrom, then, asked Minor "A" about the GeoBee questions and how did he study—Minor "A" described some, but not all, of the various aids he used to study for the GeoBee. (DE 170 at ¶ 65)
- Minor "A" tried to explain how he studied, but was told to answers only "Yes" or "No" as if in a "court of law". (DE 170 at ¶ 66)
- Wennstrom asked Minor "A" how he did on that morning's GeoBee and Minor "A" said "Fine" but missed a question on Devil's Tower. (DE 170 at ¶ 67)
- Then, Wennstom showed Minor "A" questions from the morning rounds and asked Minor "A" if S. Jain had shown him any of those questions. (DE 170 at ¶ 68)
- Wennstrom told Minor "A", "Do not lie. I know the truth. (DE 170 at ¶ 69)
- Owen threatened Minor "A" by telling him, "Don't cry. You can't cry." (DE 170 at ¶ 70)
- Prior to January 2016, Minor "A" had never been to the principal's office. (DE 170 at ¶ 71)
- Minor "A" believed that Voliva, instead of interceding, joined in and ganged upon on him, along with Wennstrom and Owen, during the interrogation. (DE 170 at ¶ 72)
- During the interrogation Minor "A" was scared and shaking. (DE 170 at ¶ 73)
- Wennstrom, Voliva, and Owen began telling Minor "A" that he did certain things that he did not do in a very mean voice and he felt scared and was very nervous—he began to shake and sweat. (DE 170 at ¶ 74)
- Wennstrom, Voliva, and Owen were raising their voices and glaring at the 9-year old. (DE 170 at ¶ 75)
- The interrogation involved Wennstrom, Voliva, and Owen asking Minor "A" "dozens and dozens of questions"—they made him sit at a computer screen and review GeoBee questions, repeatedly humiliating and belittling him—they never checked if questions were repeats of old tests or from any atlases or study guides as he told them. Wennstrom,

Voliva, and Owen told Minor "A" things that did not make sense to him, he was confused as to "Why" he was there, and he was nervous. (DE 170 at ¶ 77)

- Wennstrom, Voliva, and Owen never offered an opportunity to Minor "A" to speak with one of his parents. (DE 170 at ¶ 78)
- Neither Minor "A" nor his parents were informed of this meeting (or any accusations) ahead of time. (DE 170 at ¶ 79)
- While undergoing the aforementioned custodial interrogation by Wennstrom, Voliva, and Owen, then Minor "A" felt intimidated as he was accused of cheating. (DE 170 at ¶ 80)
- At no time during the above described custodial interrogation did any of the Interrogation Defendants act as Minor "A"'s advocate or otherwise in his interests. (DE 170 at ¶ 81)
- Rather, throughout this session, one and/or more of them, acting in concert with each other through implicit or explicit agreement, interrogated Minor "A" in such a manner and with the specific intent to cause Minor "A" extreme and excessive psychological distress and fear and/or to coerce him to speak and/or do as they said and/or to punish Minor "A" for the alleged misconduct, including but not limited to falsely threatening, needlessly and without justification, that they had information that Minor "A" cheated. (DE 170 at ¶ 82)
- The extreme, intolerable, and excessive fear and psychological distress suffered by Minor "A" needlessly and without justification, including but not limited to the fear of social embarrassment, humiliation and shame, was objectively obvious and apparent to the Interrogation Defendants. (DE 170 at ¶ 83)
- Wennstrom, Owen, and Voliva intimidated Minor "A" until he falsely made admissions. (DE 170 at ¶ 84)
- The aggressive interrogation of Minor "A" last approximately 1.5 hours, but felt like 5 hours to him). (DE 170 at ¶ 85)
- Owen destroyed her notes from the interrogation, but a type-written document states that the total time for the interrogation was from 2:00 – 2:15 p.m., which is emblematic of the reckless manner in which these defendants sought to treat Minor "A" and S. Jain. (DE 170 at ¶ 86)
- During the approximately 1.5 hour interrogation, unwilling to accept the boy's denial about whether he had previously seen actual contest questions for the current test, these District employees coerced a false confession from him that he participated in the GeoBee contest after studying the actual contest questions. (DE 170 at ¶ 87)
- Effectively, the boy was presented the false choice of telling the truth and not being permitted to end the interrogation, or tell them what they wanted to hear (even when it was not true) in order to get out of their custody. (DE 170 at ¶ 88)

(DE 170 at pp13-17) Most (if not all) of these facts (*i.e.*, the factual foundation for the claim) were elicited and/or further developed by counsel for the defendants while taking the deposition of Minor "A" on August 14, 2017.

30.     Nevertheless, while the School District Defendants call the Fifth Amended Complaint "baseless" (DE 186 at p3), they concede the Fourth Amendment does apply to students at public schools (DE 186 at p4, citing *New Jersey v. TLO*, 469 U.S. 325, 341-42 (1985)). Instead, they contend this Court must find, as a matter of law, that all aspects of the secretive 1.25-1.5 hour seizure of the 9-year old without a parent or guardian present was objectively reasonable. Not true. Rule 12(b)(6) motions test <u>only</u> the sufficiency, not the merits of the complaint. Here, Plaintiff has pled sufficient facts in support of Count I. Count I alleges, *inter alia*, that under the facts and circumstances alleged therein and related only to Minor "A" and the Interrogation Defendants, both the seizure and the interrogation were unreasonable within the meaning of the Fourth Amendment. (DE 170 at ¶¶ 132-147)

31.     "[T]he touchstone of the Fourth Amendment is reasonableness." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). The reasonableness of the Interrogation Defendants' actions must be "examined in light of the special relationship between teacher [and administrators] and students." and is from an "objective perspective." *Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1012, 1015 (7th Cir. 1995) (involving a 16-year old who was escorted out of the classroom and held by elbow/wrist briefly) So, while "students do not completely surrender their constitutional rights at the schoolhouse gate" (*id*. at 1013), a seizure will be deemed a deprivation of a constitutional liberty interest when "under the circumstance presented and known the seizure was objectively unreasonable" (*id*. at 1015).

32.     In the circumstances of this case, the Interrogation Defendants' handling of the incident was both unreasonable and violative of the Fourth Amendment, as well as Article I, Section 6 of Illinois Constitution of 1970. The Interrogation Defendants turned what should have

begun as a routine, basic inquiry of a parent or brief questioning (detention) in a school hallway of the child into what has, now, developed into this federal case. For this Court to hold otherwise would embolden these defendants (and others) to take further unreasonable steps like extending the duration beyond 1.5 hours and/or detaining and interrogating still younger children in still more secretive manners. To find the plaintiff has pled sufficient facts that the Interrogation Defendants' conduct was unreasonable does not prevent school officials from enforcing the policies necessary to ensure a safe and enriching educational experience.

33.     This Court should deny the defendants' motions to dismiss Counts I and III of the Fifth Amended Complaint at Law.

**E.     The Interrogation Defendants' actions constituted a conscious-shocking coercive interrogation of the 9-year old that was objectively unreasonable.**

34.     Again, both the School District Defendants and the Attorney Defendants contend that the plaintiff has failed to plead a claim for relief related to the alleged constitutional violation (Fourteenth Amendment). In fact, in this case, the defendants dispute that the Interrogation Defendants engaged in a conscious-shocking interrogation of then 9-year old Minor "A" on January 19, 2016.

35.     The Seventh Circuit has held that "conscious shocking" interrogation techniques are sufficient to support a Fourteenth Amendment Due Process claim under § 1983. *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010); *see also Rochin v. California*, 342 U.S. 165, 172 (1952). Under the facts pled, the malice, sadism, and very low behavior demonstrated by the Interrogation Defendants' abuse of power literally shocks the conscious.

36.    The School District Defendants do not dispute that the Interrogation Defendants are <u>not</u> immune from claims that a student may be subjected to a conscious shocking interrogation. *See* U.S. CONST., amend. XIV.

37.    The Supreme Court of the United States has observed that "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteen Amendment. *Miller v. Fenton*, 474 U.S. 104, 109 (1985). The Court more explicitly identified the liberty interest here at issue in *Chavez v. Martinez*, 538 U.S. 760, 780 (2003), confirming that, under some circumstances, coercive interrogation alone may violate a suspect's right to substantive due processes, even when no self-incriminating statement is used against the person interrogated. Such a violation will be recognized, however, where the specific conduct alleged rises to the level of coercive interrogation that "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "'Conscious shocking' is, as the phrase implies, a very high standard, reserved for very low behavior." *McConkie v. Nichols*, 392 F. Supp. 2d 1, 10 (D. Me 2005).

38.    Under the facts pled, a reasonable fact-finder could find the Interrogation Defendants engaged in conscience-shocking interrogation in that three adults (veteran state actors (District 53 educators and administrators)), bent on abusing or misusing their exercise of authority, interrogated a 9-year old, in the inherently coercive environment of the principal's office for an extended duration (approximately 1.25-1.5 hours), without either a parent or advocate/guardian present during the seizure, and they kept the interrogation a secret from the minor's parents. The First Circuit held that even words or verbal harassment may constitute

"conscious shocking" behavior in violation of substantive due process rights, but acknowledged "the threshold for alleging such claims is high." *Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525, 532 (1st Cir. 1995). Here, the plaintiff's allegations meets and exceeds that pleading threshold.

39.     This Court should deny the defendants' motions to dismiss Count II of the Fifth Amended Complaint at Law.

**F.     The Interrogation Defendants do not have qualified immunity.**

40.     The School District Defendants contend that the Interrogation Defendants (Wennstrom, Voliva, and Own) are entitled to qualified immunity because their interrogation of their 9-year old student did not violate the clearly established constitutionals rights set forth in U.S. CONST., amends. IV and XIV, and/or Article I, Section 6 of Illinois Constitution of 1970. (DE 186 at pp7-8) As discussed in Sections D and E above, the plaintiff disputes the defendants assertion and as shown the error in their taking that position.

41.     "[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). "Rule 12(b)(6) a mismatch for immunity and almost always a bad ground for dismissal." *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, C.J., concurring). "[T]he notice pleading requirements of Rule 8 do not require that a plaintiff anticipate the assertion of qualified immunity by the defendant and plead allegations that will defeat that immunity." *Jacobs*, 215 F.3d at 765 n.3. Accordingly, the Seventh Circuit has stated that "most claims for qualified immunity are too fact-intensive to be decided on a motion to dismiss." *Schneider v. County of Will*, 366 Fed. Appx. 683, 684 (7th Cir. 2010).

42.     The facts as pleaded are sufficient to withstand a qualified immunity challenge at this stage of the litigation. As explained above, the rights alleged to have been violated in Counts 1-3 are "clearly established". Those claims do not seek to extend, modify, or reverse existing law, or try to establish new law.

43.     This Court should deny the defendants' motions to dismiss to dismiss any counts of the Fifth Amended Complaint at Law based upon qualified immunity.

**G.     The Defendants are _not_ immune from willful and wanton acts and/or omissions.**

**1.     _The School District Defendants._**

44.     The School District Defendants contend they are immune from the alleged willful and wanton conduct. (DE 186 at pp8-9) Specifically, they contend that Section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101, _et seq._) ("Tort Immunity Act") immunizes them. The stated purpose of the Tort Immunity Act "is to protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101.1. "Because the immunities afforded to governmental entities operate as an affirmative defense, those entities bear the burden of properly raising and proving their immunity under the Act. It is only when the governmental entities have met this burden that a plaintiff's right to recovery is barred." _Van Meter v. Darien Park Dist._, 799 N.E.2d 273, 280 (Ill. 2003). As described below, for purposes of their motion, the School District Defendants have not only failed to meet their burden, but, also, have failed to present any evidence in support of their defense.

45.     Again, the specific section relied upon by the School District Defendants is 745 ILCS 10/2-201. Section 2-201 provides as follows:

-20-

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is **not liable for an injury resulting from his act or omission _in determining policy_** when acting in the exercise of such discretion even though abused."

745 ILCS 10/2-201 (emphasis added). The Tort Immunity Act immunizes public employees from liability where the injury claimed is the result of a "discretionary policy determination." *Courson v. Danville Sch. Dist. No. 118*, 333 Ill. App. 3d 86, 88 (4th Dist. 2002). In order for the Act's immunity to apply, "[t]he discretionary act [must be] made in furtherance of a governmental policy." *Stratman v. Brent*, 683 N.E.2d 951, 956 (2d Dist. 1997) (emphasis added). Because the Act does not define the terms "policy" and "discretion", courts have employed common-law definitions in interpreting section 2-201 of the Act. *Snyder v Curran Twp.*, 657 N.E.2d 988, 992 (Ill. 1995). A determination of policy is one that requires (1) balancing of competing interests and (2) making judgments as to what solution will best serve those interests. *West v. Kirkham*, 588 N.E.2d 1104, 1109 (Ill. 1992).

46.      The Illinois Supreme Court holds that the Tort Immunity Act sets up a two-part test to determine which employees may be granted immunity under section 2–201. *Harinek v. 161 North Clark Street Ltd. P'ship*, 692 N.E.2d 1177 (Ill. 1998). First, an employee may qualify for immunity "if he holds *either* a position involving the determination of policy *or* a position involving the exercise of discretion." *Harinek*, 692 N.E.2d at 1181 (1998) (emphasis in original). Second, an employee who satisfies the first prong of the test must also have engaged in both the determination of policy *and* the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted. *Harinek,* 692 N.E.2d at 1181. Plaintiff admits some of the defendants hold positions involving the determination of policy or the exercise of discretion.

-21-

Thus, this Court must focus on the second prong of the test, namely, whether the alleged offending conduct, which the defendants seek to have immunized, was both discretionary **and** involve ***a policy choice***.

47.     The plaintiff has not alleged in her complaint any "policy choice" made by the defendants and the defendants have not answered the complaint. Therefore, at this pleading stage, there is neither a pleading nor evidence in support of any policy choice made whatsoever. Again, this is the defendants' burden to demonstrate to this Court, which they have not done.

48.     The School District Defendants allege that "[d]ecisions about how the investigation was conducted, the discipline that followed, and how Superintendent Wennstrom notified the School District community about the investigation are discretionary decisions falling within the absolute immunity of Section 2-201 of the Tort Immunity Act." (DE 186 at p8) The defendants do not, however, allege that those discretionary decisions involved "a policy choice." In fact, nowhere in their argument to they use the term "policy" or describe a "policy choice". Given the aforementioned, Plaintiff is unable to find any non-frivolous, legally reasonable, or otherwise with proper factual foundation for their argument under Section 2-201 of the Tort Immunity Act.

49.     Further, the plaintiff has alleged that the defendants' actions were willful and wanton and, thus, no subject to any specified immunity contained in the Tort Immunity Act. The Illinois Supreme Court defines "willful and wanton" as exhibiting "an utter indifference to or conscious disregard for" safety. *Fagocki v. Algonquin Fire Prot. Dist.*, 496 F.3d 623, 628 (7th Cir. 2007) (citing and quoting *Pfister v. Shusta*, 657 N.E.2d 1013, 1016 (Ill. 1995)). Moreover,

the Illinois Pattern Jury Instruction (Civil) (I.P.I.) 14.01 provides the definition of "willful and wanton conduct", which states as follows:

> "When I use the expression 'willful and wanton conduct' I mean a course of action which [shows actual or deliberate intention to harm] [or which, if not intentional,] [shows an utter indifference to or conscious disregard for (a person's own safety) (and) (the safety of others)]."

I.P.I. 14.01.

50.      "[E]quivalent to recklessness is wantonness, which has been defined as the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result." *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685, 693 (7th Cir. 2008) (internal quotes omitted). A reasonable finder-of-fact could find that the defendants' actions constituted willful and wanton, or reckless, acts or omissions.

51.      This Court should deny the School District Defendants' motion to dismiss Count IV of the Fifth Amended Complaint at Law for the reasons alleged.

**2.      *The Attorney Defendants*.**

52.      The Attorney Defendants contend that the plaintiff's claims are, also, "baseless" (DE 187 at p8) against them and they owe absolutely no duty whatsoever to the plaintiff.

53.      In their motion related to the Fourth Amended Complaint, the Attorney Defendants argued, inferentially, that they (Massey and Roselli) were acting as attorneys for the Board (who, according to the School District Defendants, is not a proper (or legal) entity), "[l]awyers are agents of their clients" (DE 48 at p12 (citing *Edelman, Combs and Latturner v. Hinshaw and Culbertson*, 788 N.E.2d 740, 752 (1st Dist. 2003)), and the "[a]cts of an agent are considered acts of its principal" (DE 48 at p4 (citing *Id.*, 788 N.E.2d at 752). According to the

Attorney Defendants, Massey (and by extension, Roselli) was "retained by the District to investigate the allegations of academic dishonesty". (DE 187 at p10). However, Massey's March 2nd letter to the plaintiff says she was appointed by the Board to investigate the plaintiff's grievance/complaint "involving allegations and claims against District Administrators". DE 42-2 at p2) Those are quite different investigative purposes and not synonymous with each other.

54. The school board (and their agents), as the corporate entity charged by law with governing a school district, each sits in trust for its entire community, which would include the plaintiff (providing another duty owed). The attorneys, as agents of the Board (their principal), owe the same duty of care to the plaintiff (as members of the community). Hence, the Attorney Defendants owe the plaintiff a duty of care.

55. The Attorney Defendants, in an attempt to misdirect this Court, suggest that the "gravamen" of the plaintiff's claim against the Attorney Defendants is an improper appointment under the District's UGP. (DE 187 at p9) That is wholly inaccurate. While the plaintiff believes it was an improper appointment, that improper appointment is not the basis or the sole basis for the claim against them.

56. The complaint includes the following relevant factual allegations (in addition to earlier fact pled) against the Attorney Defendants:

- On February 16, 2016, S. Jain, along with her husband, filed a uniform grievance complaint against, *inter alios*, Brook Forest Elementary School. (DE 170 at ¶ 93)
- The filing of the grievance complaint triggered the Uniform Grievance Procedure Policy 1400 ("UGP"). (DE 170 at ¶ 94)
- The UGP is intended to permit students, parents/guardians, employees, or community members to file a complaint if they believe that the School Board, its employees, or agents have violated their rights guaranteed by the State or federal Constitution, State or federal statute, or Board policy, or have complaint regarding any of the thirteen (13) specifically enumerated statutes identified in the policy. (DE 170 at ¶ 95; DE 42-3 at pp4-5)

-24-

- Robbins Schwartz has served as legal counsel for District 53 since 1980—it was a standing client, but the Board characterized its attorneys as an independent third party that is in no way connected to the District. (DE 170 at ¶ 96)
- Massey and Roselli worked for Robbins Schwartz. (DE 170 at ¶ 97)
- Hanzlik appointed Massey to serve as the Complaint Investigator. (DE 170 at ¶ 98)
- Massey told S. Jain that she would be independent in her investigation. (DE 170 at ¶ 99)
- Massey told S. Jain that Massey's colleague at Robbins Schwartz (Roselli) was going to serve as a resolution facilitator. (DE 170 at ¶ 100)
- Plaintiff's understood Roselli was to be a neutral mediator. (DE 170 at ¶ 101)
- However, unbeknownst to the plaintiffs at that time, Roselli had played a key role in Superintendent Wennstrom's initial investigation and in deciding the sanctions issued against the plaintiffs. (DE 170 at ¶ 102)

(DE 170 at ¶¶ 93-102)

57.     As Massey stated in her March 2, 2016 letter, the process was to provide "a fair and impartial complaint investigation process", and with respect to the appointment of her colleague as the resolution facilitator was "to assure an equitable and impartial process." (DE 42-3 at p2) Plaintiff contends that the Attorney Defendants acted willfully and wantonly in their interactions with the plaintiff, in their representations to the plaintiff, and in their failing to comply with the Uniform Grievance Procedure ("UGP").

58.     First, the current allegations against the Attorney Defendants do not allege a cause of action for legal malpractice. Moreover, contrary to the Attorney Defendants' assertion, the plaintiff does not suggest that the Attorney Defendants made a "mere error of judgment". (DE 187 at p10 (citing *O'Brien & Assoc. v. Tim Thompson*, 274 Ill.App.3d 472, 481 (2nd Dist. 1995)) Moreover, the plaintiff's allegations against the Attorney Defendants are not related to their pleadings in court. (DE 187 at p10 (citing *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152))

59.     The UGP adopted by Butler School District 53, which was in effect at all relevant times, provided that "[s]tudents, parents/guardians, employees, or community members should notify any District Complaint Manager if they belief that the School Board, its employees, or

agents have violated their rights guaranteed by the State or federal Constitution, State or federal statute, or Board policy, or have a complaint regarding" thirteen (13) specifically enumerated statutes identified in the policy. (DE 42-3 at pp4-5)

60.     The UGP provides that the equities (*i.e.*, the complaint is to be addressed promptly and equitably) remain paramount to the process. According to the controlling UGP (revised 3/14/16), the Superintendent provided the names of the following Nondiscrimination Coordinator (Amy Read) and Complaint Managers (Alan Hanzlik (defendant) and Heidi Wennstrom (defendant)). The UGP provides, "The Complaint Manager will investigate the complaint or appoint a qualified person to undertake the investigation on his or her behalf. The Complaint Manager shall ensure both parties have an equal opportunity to present evidence during an investigation. If the Complainant is a student under 18 years of age, the Complaint Manager will notify his or her parent(s)/guardian(s) that they may attend any investigatory meetings in which required by law".

61.     As the complaint alleges, and the Attorney Defendants do not dispute, "1) Minor "A" and his parents were not allowed to be present during the questioning of witnesses; 2) Minor "A" and his parents were not provided the documents produced to Massey during the investigation, other than those they obtained through a FOIA request; 3) Minor "A" and his parents were not provided a copy of the report prepared by Massey and 4) Minor "A" and his parents were not allowed to review the testimony and evidence presented by witnesses to Massey." (DE 186 at pp9-10 (citing (Ex. A, ¶108(a)-(d))). A fact-finder may find these actions demonstrate willful and wanton acts and/or omissions, or a reckless deprivation of rights under the UGP, and a violation of the Attorney Defendants' duty owed under the UGP to the plaintiff

(Complainant) and as agent of the Board sitting in trust for the entire community. The Attorney Defendants suggest, without citation, that documents reviewed and relied upon by them may have been privileged and/or the plaintiff were not entitled to see any of those documents. However, that is not a pleading issue.

62.     Defendant Hanzlik appointed, ostensibly to investigate the complaint, Massey (who is legal counsel from law firm that has worked for District 53 since 1980) to investigate claims against, *inter alios*, his co-Complaint Manager (and Superintendent of the District). (DE 170 at ¶ 98) Plaintiff did not plead that Massey was hired to be an attorney for purposes of the UGP complaint; however, the Attorney Defendants admit that in their own pleadings. Massey, then, appointed her colleague at Robbins Schwartz (Roselli) to serve as a resolution facilitator who the plaintiff was lead to belief would be a neutral mediator. (DE 170 at ¶¶ 100-101) Plaintiff did not plead that Roselli was hired to be an attorney for purposes of the UGP complaint; however, the Attorney Defendants admit that in their own pleadings. A fact-finder could easily conclude that the Attorney Defendants acts/omissions are actionable and, moreover, may conclude that such collusion caused damage to the plaintiff.

63.     "The Roman scholar Juvenal once asked '*quis custodiet ipsos custodes*' –roughly translated, 'who will guard the guardians'?" *Salvato v. Ill. Dept. of Human Rights*, 155 F.3d 922 (7th Cir. 1998). Essentially, the Board's and District's "in-house" counsel was hired to investigate whether its retaining sponsors (the District's Superintendent, school principal, and teacher) violated the plaintiff's rights. As the plaintiff pled, she was led to believe Roselli was to be a neutral mediator/facilitator (DE 170 at ¶ 101) and had not been advised that prior to that appointment Roselli had already been providing "legal advice" to the District during the initial

investigation conducted by Wennstrom (DE 170 at ¶ 25). Roselli, who was the resolution facilitator of the UGP complaint (serving at the request of Massey), later, defended (as their advocate) the actions of the defendants in the Complaint for Administrative Review (Case No. 2016MR000864). If these facts seem underhanded and aimed at clearing the District Administrators and discrediting the plaintiff, that would be understandable and a reasonable fact-finder would see how (taken in their totality and not in isolation) these acts and/or omissions constitution willful and wanton conduct.

64.     The Attorney Defendants do not dispute these facts or any deception surrounding their willfully omitted masters they actually serve (both the District and the Board). Their motion, without support, alleges, "[t]hey were retained by they School district to provide legal advice." (DE 187 at p9) In their motion related to the Fourth Amended Complaint, the Attorney Defendants wrote that "complaint managers and resolution facilitators are not required to be [either] 'independent' or 'impartial'" (DE 48 at p4) Again, this was never told to the plaintiff that the District-retained investigating the claims against Wennstrom, Voliva, and Owen were, actually, the School Districts attorneys…and would not be conducting an neutral investigation. As we know from recent $20M settlement of the code-of-silence lawsuit involving Joseph Frugoli, entities investigating alleged malfeasance of their own agents by a non-independent person or group does not result in transparency and truth.

65.     This Court should deny the Attorney Defendants' motion to dismiss Count IV of the Fifth Amended Complaint at Law for the reasons alleged.

**H.** **Infliction of emotional distress.**

66.     The School District Defendants contend the plaintiff has failed to state any claim for infliction of emotional. (DE 186 at pp9-10) Here, the plaintiff alleged claims for infliction of emotional distress (DE 170 at pp31-32) and reckless infliction of emotional distress (DE 170 at pp32-33).

67.     The Illinois Supreme Court recognizes three different causes of action for infliction of emotional distress: (1) intentional ("IIED") (*Knierim v. Izzo*, 174 N.E.2d 157 (Ill. 1961)); (2) reckless ("RIED")  (*Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765 (Ill. 1976)); and (3) negligent ("NIED")  (*Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50 (Ill. 2016)). The Illinois Supreme Court defines the non-intentional "willful and wanton" as showing "an utter indifference to or conscious disregard for" the safety of others. *Pfister v. Shusta*, 657 N.E.2d 1013, 1016 (Ill. 1995).

**1.**     *Intentional infliction of emotional distress (IIED).*

68.     In *Knierim v. Izzo*, 174 N.E.2d 157 (Ill. 1961), the Illinois Supreme Court recognized the <u>intentional</u> infliction of emotional distress as a separate and distinct tort. "Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if she establishes that: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604-05 (7th Cir. 2006) (internal quotes omitted).

69.     "To prove a cause of action for intentional infliction of emotional distress, the plaintiff must establish three elements: (1) extreme and outrageous conduct; (2) intent or knowledge by the actor that there is at least a high probability that his or her conduct would inflict severe emotional distress and reckless disregard of that probability; and (3) severe emotional distress." *Turcios v. DeBruler Co.*, 12 N.E.3d 167, 176 (2d Dist. 2014) (citing and quoting *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 941 (1st Dist. 1997).

70.     The Illinois Supreme Court has defined conduct considered "extreme and outrageous":

> "Conduct is of an extreme and outrageous character where recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' Such conduct must be differentiated from the mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities that are part of the costs of complex society from which the law provides no protection. Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case."

*Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (internal citations and quotes omitted).

71.     In *Feltmeier v. Feltmeier*, 798 N.E.2d 75 (Ill. 2003), the Illinois Supreme Court explained the elements to sustain a cause of action for intentional infliction of emotional distress. "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause *severe* emotional distress." *Feltmeier*, 798 N.E.2d at 80 (*citing Public Finance Corp. v. Davis*, 360 N.E.2d 765 (Ill. 1976); *McGrath v. Fahey*, 533 N.E.2d 806 (Ill. 1988)).

72.     The Court in *Feltmeier* went on to explain that:

> "It is thus clear...that the degree of power or authority which a defendant has over a plaintiff can impact upon whether that defendant's conduct is outrageous. The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment. Threats, for example, are much more likely to be a part of outrageous conduct when made by someone with the ability to carry them out than when made by someone in a comparatively weak position."

*Feltmeier*, 798 N.E.2d at 82 (citing and quoting *McGrath*, 533 N.E.2d at 809). Indeed, Illinois cases in which the tort of intentional infliction of emotional distress has been sufficiently alleged have very frequently involved a defendant who stood in a position of power or authority relative to the plaintiff." *Feltmeier*, 798 N.E.2d at 82.

73.    There is perhaps no clearer exercise of power or authority over a 9-year old in a comparatively weak position than the conduct of three adults (veteran state actors (District 53 educators and administrators)) interrogating inside an interior office of the principal for 1.5 hours. Then, the subsequent actions of the remaining defendants use that event as a springboard to both reinforce that initial infliction of emotional distress and introduce new incidences of the it.

74.    This Court should deny the defendants' motions to dismiss Count V of the Fifth Amended Complaint at Law.

## 2.    *Reckless infliction of emotional distress (RIED).*

75.    The Illinois Supreme Court approved a cause of action for reckless infliction of emotional distress. *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 766-67 (Ill. 1976). To prove a cause of action for reckless infliction of emotional distress, the plaintiff must establish three

elements: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *see also McGrath v. Fahey*, 533 N.E.2d 806 (Ill. 1988).

76.     The Illinois Supreme Court defines "willful and wanton" as exhibiting "an utter indifference to or conscious disregard for" safety. *Fagocki v. Algonquin Fire Prot. Dist.*, 496 F.3d 623, 628 (7th Cir. 2007) (citing and quoting *Pfister v. Shusta*, 657 N.E.2d 1013, 1016 (Ill. 1995)). "[E]quivalent to recklessness is "wantonness, which has been defined as the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result." *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685, 693 (7th Cir. 2008) (internal quotes omitted).

77.     It is important to clarify that RESTATEMENT (SECOND) OF TORTS § 46 (Outrageous Conduct Causing Severe Emotional Distress) divides the cause of action for outrageous conduct into direct, first-party claims and indirect, bystander claims. Section 46 provides as follows:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or (b) to any other person who is present at the time, if such distress results in bodily harm.

RESTATEMENT (SECOND) OF TORTS § 46. A direct action under subsection 46(1) allows a plaintiff to mount a *prima facie* claim by satisfying with respect to himself or herself the standard elements of: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional harm.

78.     Again, the factual allegations levied against the defendants are such that a reasonable fact-finder may find the defendants caused injuries to the plaintiff by their reckless inflection of emotional distress. The factual allegations must be taken in their totality and not in isolation.

79.     This Court should deny the defendants' motions to dismiss Count VI of the Fifth Amended Complaint at Law.

## I.     <u>Wennstrom has no immunity from defamatory statements outside official duties.</u>

80.     The School District Defendants suggest that Wennstom can defame anyone, at any time, as long as she does so on official letterhead or from her District-issued email. They allege that Wennstrom is permitted to make the alleged defamatory *per se* statements by both Illinois common law and the Tort Immunity Act. (DE 186 at pp11-12)

81.     Admittedly, *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602 (7th Cir. 2001) held that government officials must be free to exercise their duties unencumbered by the treat of defamatory lawsuits. *See also Blair v. Walker*, 349 N.E.2d 385 (1976). However, Wennstrom "has a legitimate interest, if not a state-law duty to protect student and teacher privacy and to avoid naming or shaming as potential frustration of its conduct of business." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 760 (5th Cir. 2010). Here, Wennstrom was naming and shaming the plaintiff in her published defamatory statements.

82.     As an initial matter, the plaintiff alleged that the defamatory statements made by Wennstrom were not reasonably related to her official duties and, thus, not immune. Based upon the plaintiff's allegation, while Wennstrom's libelous statements were made in the course of her employment by the district as Superintendent, the plaintiff does not concede that the "scope" of her "official duties" did not include issuing the defamatory statements.

83.     In Illinois, there is a "common law" absolute privilege regarding a government official making libelous statement concerns only "communications made within the scope of official duties" *Geick v. Kay*, 603 N.E.2d 121, 127 (2d Dist. 1992).; *McLaughlin v. Tilendis*, 253 N.E.2d 85 (1969) (superintendant of schools libelous statements made to the school board concerning the lack of teaching ability and poor conduct of certain teachers were absolutely privileged, *i.e.*, statements between public officials in the conduct of public business). As such, there is no privilege if the communications are not necessarily related to Wennstrom's official duties. Moreover, Wennstrom's libelous statements to the public were not protected by the conditional privilege either. *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129 (1993).

84.     As an aside, the School District Defendants do not allege Wennstom is immune from the only section in the Tort Immunity Act related to libel/slander. Section 2-107 of the Tort Immunity Act states as follows:

> "A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material."

745 ILCS 10/2-107. Thus, they have waived that argument in relation to the Fifth Amended Complaint. However, similar to "common law", the alleged libelous statement must arise out of the "scope of [her] employment" to be immunized.

85.     Next, the School District Defendants allege Wennstom is immune Section 2-210 of the Tort Immunity Act, which states as follows:

> "A public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material."

745 ILCS 10/2-210. Once again, Section 2-210 does not apply unless this Court finds, as a matter of law, Wennstrom's alleged defamatory statements were made in the "scope of her employment". If a reasonable fact-finder might disagree under the circumstances of this case, then this Court should deny the motion to dismiss at this pleading stage.

86.     This Court should deny the defendants' motions to dismiss Count VII of the Fifth Amended Complaint at Law.

**J.      Illinois Anti-Bullying Statute (105 ILCS 5/27-23.7).**

87.     The School District Defendants allege that the Illinois Anti-Bullying Statute does not give rise to a cause of action when there is a violation, *i.e.*, it is a toothless tiger. (DE 186 at pp12-13) However, irrespective of whether the Illinois Anti-Bullying Statute provides an independent cause of action, the factual allegations related to conduct in violation of the Illinois Anti-Bullying Statute by Wennstrom, Voliva, and Owen would constitute another theory of recovery under state-law willful and wanton acts.

88.     Only three different Illinois appellate districts have found that the immunities found in 2-201 of the Tort Immunity Act apply to bar claims brought regarding failure of school

officials to discipline school bullies. *Hascall v. Williams*, 996 N.E.2d 1168 (4th Dist. 2013); *Malinkski v. Grayslake Cmty. High Sch. Dist. 127*, 16 N.E.3d 915 (2d Dist. 2014); *Mulvey v. Carl Sandburg High Sch.*, 66 N.E.3d 507 (1st Dist. 2016).[6] Unlike in this case, none of those cases (*Hascall*, *Malinkski*, or *Mulvey*) address the issue of when the bullying is coming from administrators and teachers. None of those cases (*Hascall*, *Malinkski*, or *Mulvey*) hold that no cause of action may exist under a theory of violation of the Illinois Anti-Bullying Statute.

89.    Section 27-23.7(e) states that [t]his Section shall not be interpreted to prevent a victim from seeking redress under any other available civil or criminal law." 105 ILCS 5/27-23.7. There exists a good faith basis to read into Illinois Anti-Bullying Statute the existence of both a potential theory of recovery and/or cause of action, as well as explicating stating that it does not preclude other avenues of remedy.

90.    This Court should deny the defendants' motions to dismiss Count VIII of the Fifth Amended Complaint at Law.

### III. CONCLUSION

91.    Based upon the foregoing analysis, this Court should deny the defendants' motions to dismiss all counts of the Fifth Amended Complaint at Law. The defendants disregard the well-settled principle that on a motion to dismiss, the plaintiffs' well-pleaded factual allegations are accepted as true and all reasonable inferences drawn in plaintiffs' favor. *See Kubiak v. City of Chi.*, 810 F.3d 476, 480-81 (7th Cir. 2016). Plaintiff has pleaded specific facts that support each of the causes of action (Counts 1-8) pled. Moreover, it can reasonably be inferred from plaintiff's allegations that sufficient facts have been pled in order to defeat the

---

[6] Counsel for the Attorney Defendants was involved in the *Mulvey* appeal.

defendants' motions. Ultimately, the plaintiff will have to prove her causes of action. However, at this stage, plaintiff has met her pleading burden by alleging fact that, taken together and in the light most favorable to plaintiff, create the plausible inference that, *inter alia*, the actions under both federal and state law. Because plaintiff has alleged facts that support her causes of action, the defendants' motions to dismiss must be denied.

Date: January 2, 2018        Respectfully submitted,

                          MUSLIN & SANDBERG

                          By:    /s/Craig M. Sandberg
                                  CRAIG M. SANDBERG
                                  19 S. LaSalle Street, Suite 700
                                  Chicago, Illinois 60603
                                  Tel: (312) 263-7249
                                  Fax: (312) 263-8193
                                  E-Mail: craig@muslin-sandberg.com

                                  *Counsel for S. Jain, for herself, and as parent of and for her son "A", a minor*

-37-

CERTIFICATE OF SERVICE

The undersigned hereby certifies that in accordance with FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following documents:

**1. Plaintiff's Response in Opposition to Defendants' Rule 12(b)(6) Motions to Dismiss Counts I-VIII of the Plaintiff's Fifth Amended Complaint at Law.**

were served pursuant to the district court's ECF system as to ECF filers.


By:     /s/Craig M. Sandberg
        CRAIG M. SANDBERG