**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| S. JAIN, for herself and on behalf of her son, MINOR "A," | ) ) ) |
| Plaintiffs, | ) ) |
| | ) No. 17 C 0002 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| BUTLER SCHOOL DISTRICT 53; BOARD OF EDUCATION OF BUTLER SCHOOL DISTRICT 53; LOU PASKALIDES; RAJIV ADVANI; LIZ CHUN; TODD RUSTEBERG; HITESH PATEL; ALAN HANZLIK; ALAN KUMAR; HEIDI WENNSTROM; KELLY VOLIVA; LISA OWEN; LIBBY MASSEY; and CAROLINE ROSELLI, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

For the reasons explained below, the District Defendants' motion to dismiss plaintiffs' Fifth Amended Complaint is granted in part and denied in part, and the Attorney Defendants' motion to dismiss plaintiff's Fifth Amended Complaint is granted.

## BACKGROUND

Plaintiff S. Jain brought this case against Butler School District 53 (the "District"); the District's Board of Education and its members at the relevant time, Lou Paskalides, Rajiv Advani, Liz Chun, Todd Rusteberg, Hitesh Patel, Alan Hanzlik, and Alan Kumar (collectively, the "Board"); District Superintendent Heidi Wennstrom; Kelly Voliva, the former Principal of the District's Brook Forest Elementary School ("Brook Forest"); and Brook Forest Assistant Principal Lisa Owen (collectively, the "District Defendants"). Plaintiff has also sued Libby Massey and Caroline Roselli,

who are attorneys who performed relevant work for the District (collectively, the "Attorney Defendants").

The Court previously issued an opinion in this case dismissing the Fourth Amended Complaint. (ECF No. 134.) Currently before the Court is the Fifth Amended Complaint. In a nutshell, plaintiff asserts for herself and on behalf of her minor son "A" several claims that arise from the District's investigation and conduct stemming from a report that Jain and other District parents had engaged in unethical and deceptive practices in order to provide A and other students with unfair advantages in academic competitions (the National Geographic Bee (the "GeoBee") and the WordMasters Challenge ("WordMasters")). At the relevant time, A was nine years old and a fifth-grade student at Brook Forest. Plaintiffs' claims are based on (1) an instance in which A was pulled out of his classroom after competing in the GeoBee and questioned by Wennstrom, Voliva, and Owen, who allegedly "coerced a false confession" from A that he had cheated on the GeoBee by receiving and reviewing the questions and answers in advance, (ECF No. 170, 5th Am. Compl. ¶ 87); (2) emails that Wennstrom sent in February 2016 and June 2016 to District parents and employees about certain (unnamed) families' "academic dishonesty" and the District's investigation and findings; (3) the Board's retention of the Attorney Defendants' law firm, Robbins Schwartz, to investigate Jain's subsequent grievance, and the Attorney Defendants' conduct during the investigation; and (4) the sanctions imposed as a result of the investigation, namely, A's prohibition from participating in future academic competitions while a student in the District, and the fact that Jain was "not permitted to serve in any capacity as a parent volunteer" for school-related contests, (*id.* ¶ 121). The Court will set out the detailed allegations as necessary in its discussion of each claim.

The Fifth Amended Complaint contains the following claims: a 42 U.S.C. § 1983 claim for unlawful seizure in violation of the Fourth Amendment, against Wennstrom, Voliva, and Owen (Count I); a 42 U.S.C. § 1983 claim for violation of Fourteenth Amendment due process, against Wennstrom, Voliva, and Owen (Count II); unlawful seizure in violation of the Illinois Constitution, against Wennstrom, Voliva, and Owen (Count III); willful and wanton conduct, against all defendants (Count IV); intentional and reckless infliction of emotional distress, against all defendants (Counts V and VI); defamation per se, against Wennstrom (Count VII); and violation of Illinois's anti-bullying statute, 105 ILCS 5/27-23.7, against Wennstrom, Voliva, Owen, and the District (Count VIII). Counts I, II, III, and VIII are brought on behalf of A alone, and the remaining claims are brought by both plaintiffs.

The District Defendants move to dismiss the Fifth Amended Complaint, and the Attorney Defendants have separately moved to dismiss the claims against them. The motions are brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

**LEGAL STANDARDS**

When evaluating the sufficiency of a complaint on a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts therein, and draws all reasonable inferences in plaintiff's favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted). It "does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

3

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

### A. The Board of Education

The District Defendants first argue that the Board of Education, as the District's "elected governing body," is "not a proper party in this lawsuit" because plaintiffs have also sued the District itself. They cite no authority that supports this proposition, so it is rejected.

### B. Res Judicata

The District Defendants assert that plaintiffs' federal claims are barred by res judicata because they could have been brought in a state-court administrative-review action that plaintiffs filed in June 2016, which was later dismissed with prejudice. In that action, plaintiffs sought reversal of the District's decision to bar A from participating in future academic contests, as well as the removal of references to the incident from A's school record. (ECF No. 186-1, Compl. for Admin. Review.)

One of the elements of res judicata that defendants must demonstrate is that there was a final judgment on the merits in the prior case. *See Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (applying Illinois law).[1] The District Defendants fail to make this showing. Plaintiffs attach to their response a copy of the transcript of the hearing at which the state court explained that it was dismissing the administrative action "as moot" because, since the filing of the action, defendants had provided all the relief that was sought. (ECF No. 192-1.) Therefore, while

---

[1] The Court must apply Illinois's res judicata law to determine the preclusive effect of the state-court proceedings on plaintiffs' § 1983 claims. *See Brown v. City of Chi.*, 599 F.3d 772, 774 (7th Cir. 2010).

4

the trial court deemed the dismissal as one "with prejudice," it was decided on mootness grounds. Although the District Defendants attach to their supporting memorandum copies of their motions to dismiss the administrative-review action, which urged dismissal on the ground of mootness, they omit that fact from their discussion and ignore it in their reply. They simply reiterate that the state court's order reflected a dismissal "with prejudice." But under Illinois law, a mootness finding is not a judgment on the merits, and it does not support the application of res judicata in a subsequent case. *Gassman v. Clerk of the Circuit Court*, 71 N.E.3d 783, 792 (Ill. App. Ct. 2017) (citing *Johnson v. Du Page Airport Auth.*, 644 N.E.2d 802, 808-09 (Ill. App. Ct. 1994) (stating that the dismissal of a moot case "with prejudice" was error, thus rendering erroneous the dismissal of a subsequent case based upon the res judicata effect of the prior case); *La Salle Nat'l Bank v. City of Chi.*, 121 N.E.2d 486, 490 (Ill. 1954)).

C.    **Unlawful Seizure - Fourth Amendment & Illinois Constitution (Counts I and III)**

Counts I and III are A's claims against Wennstrom, Voliva, and Owen (the "Administrators") for violation of the Fourth Amendment and the Illinois Constitution. Plaintiffs allege that the Administrators unreasonably seized A by pulling him out of class and together questioning him for an hour and half about the alleged academic dishonesty. The District Defendants argue that these claims fail because "[t]here is nothing unreasonable about summoning a student out of class and into the principal's office so that school officials could question him about possible academic dishonesty, a serious violation of school rules." (ECF No. 186, Dist. Defs.' Mem. Supp. Mot. at 5.)  The Attorney Defendants argue that A was not "seized."[2]

---

[2]Counts I and III are not asserted against the Attorney Defendants, but they argue that plaintiffs have not sufficiently pleaded any federal claims and that the Court should decline to exercise supplemental jurisdiction over the state-law claims against them.

5

"[P]ublic school students are in a unique constitutional position enjoying less than the full constitutional liberty protection afforded those persons not in school"; nonetheless, "students do not completely surrender their constitutional rights at the schoolhouse gate." *Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1013 (7th Cir. 1995) (holding that summary judgment in favor of defendants was appropriate on the ground that a reasonable jury could not find that teacher's "brief seizure" of a student by grabbing her elbow and wrist in order to prevent a fight and restore order was disproportionate to the interference with the educational process that the situation presented). "'[T]he nature of those rights is what is appropriate for children in school.'" *Id.* (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995)). As the Court explained in *Wallace*, because the deprivation of students' liberty is inherent in the educational process, there is an "awkward fit" between the Fourth Amendment and actions taken by school officials, particularly when there is a seizure of a person, as opposed to a search and/or seizure of property. *Id.* at 1014. The Court described the applicable standard as follows: "[I]n the context of a public school, a teacher or administrator who seizes a student does so in violation of the Fourth Amendment only when the restriction of liberty is unreasonable under the circumstances then existing and apparent." *Id.*

Significantly, the Court in *Wallace* characterized a teacher's grabbing of the plaintiff's wrist as a seizure and did not set forth a modified approach to the foundational issue of when a student is "seized" within the meaning of the Fourth Amendment. The traditional approach asks "whether the person believed he was free to leave. This standard is an objective one and is made on the basis of the totality of the circumstances surrounding the encounter." *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010) (internal quotation marks and citation omitted). The Third Circuit has also applied this traditional standard in the public-school context. *Shuman ex rel. Shertzer v. Penn*

6

*Manor Sch. Dist.*, 422 F.3d 141, 147 (3d Cir. 2005) (holding that a high school student was "seized" when the assistant principal told him to remain in a conference room for several hours and he was not free to leave).

In the Court's view, plaintiffs have alleged sufficient facts to state a claim that the Administrators violated A's Fourth Amendment right to be free from unreasonable seizures. Specifically, plaintiffs allege the following: Wennstrom received information from a parent in the District that A's parent had that year's GeoBee questions and was using them to prepare A for the competition. A few days later, on January 19, 2016, A participated in the first day of the GeoBee, but Assistant Principal Owen entered A's classroom later that day and told him that he needed to get up from his desk and come with her to Principal Voliva's office. A had never before been to the principal's office. When they arrived at Voliva's office, Voliva and Superintendent Wennstrom were there. All three administrators proceeded to ask A a series of questions, beginning with, "Do you know why you're here?" A replied that he did not. Wennstrom asked A about WordMasters and noted that he had had a perfect score in that competition. Then she asked him about how he had studied for the GeoBee; when he described various study aids that he had used and tried to explain how he had studied, he was told to answer only "yes" or "no" to the administrators' questions "as if in a 'court of law.'"[3] Wennstrom asked A how he had done on that morning's session of the GeoBee, and A said, "fine," but that he had missed a question. Wennstrom then showed A questions from the morning rounds, asked him if his mother had shown him any of those questions, and said "Do not lie. I know the truth." Owen added, "Don't cry. You can't cry." A was nervous, scared,

---

[3]It is unclear whether plaintiffs are alleging that the specific directive "as if in a court of law" was given to A, or if that is merely counsel's description of the "yes" or "no" directive, but the Court notes that the phrase is enclosed in quotation marks in the complaint. (5th Am. Compl. ¶ 66.)

7

and shaking. None of the administrators acted as A's advocate or tried to protect him. They used "mean" and "raised" voices to suggest that A had done "certain things that he did not do." They asked him "dozens and dozens of questions," made him sit at a computer screen and review GeoBee questions, and repeatedly humiliated and belittled him. They did not offer A the opportunity to speak with one of his parents, nor were his parents informed of the meeting ahead of time. The Administrators "intimidated [A] until he falsely made admissions." The questioning lasted approximately 1.5 hours. "Effectively, [A] was presented the false choice of telling the truth and not being permitted to end the interrogation, or tell them what they wanted to hear (even when it was not true) in order to get out of their custody." (5th Am. Compl. ¶¶ 47, 52-88.)

Defendants dispute that A was questioned for 1.5 hours, but on a motion to dismiss, plaintiffs' allegations are taken as true. Defendants lose sight of that standard. The issue is whether the allegations are sufficient to indicate that A's seizure, *under the circumstances presented*, was objectively unreasonable—or, as stated in *Wallace*, whether it reasonably could be found that the Administrators' actions were "disproportionate to the interference with the educational process that the situation presented," 68 F.3d at 1015. Here, a nine-year-old student was allegedly pulled from class and aggressively questioned for an hour and a half about academic dishonesty that was allegedly initiated by his parent, and this questioning was conducted simultaneously by *three* high-ranking administrators, including the District Superintendent. Those administrators allegedly intimidated and belittled A; told him he could only answer "yes" or "no"; and told him that he could not cry. That alleged conduct is viewed in light of the situation, which did not involve disruptive behavior or the need to restore order among students (such as an imminent fight between students, as in *Wallace*) or other exigent circumstances (such as the need to administer breath tests to students for blood alcohol concentration prior to entering a school function, as in *Ziegler v. Martin County*

8

*School District*, 831 F.3d 1309 (11th Cir. 2016)). The District Defendants assert that "[w]ithout questioning plaintiff A, the School District would have been unable to conduct a thorough investigation into the cheating allegations." (Dist. Defs.' Mem. Supp. Mot. at 5.) That conclusion is not evident from the alleged facts, and, more importantly, the argument misses the point: it is the *manner* in which A was allegedly seized and questioned, in the absence of exigent circumstances, that gives rise to plaintiffs' claim.[4] The Fifth Amended Complaint contains sufficient facts to support A's claim that the Administrators violated his Fourth Amendment rights. *See also Jaythan E. v. Bd. of Educ. of Sykuta Elem. Sch.*, 219 F. Supp. 3d 840, 845 (N.D. Ill. 2016) (denying motion of elementary-school principal and librarian to dismiss eight-year-old student's Fourth Amendment claim and explaining that the reasonableness of a student's seizure requires "close scrutiny of the factual circumstances under which the seizure allegedly took place").

**D.     Due Process - Fourteenth Amendment (Count II)**

In Count II, it is alleged that the Administrators violated A's Fourteenth Amendment substantive due process right "to be free from coercive interrogation techniques that shock the conscience." (5th Am. Compl. ¶ 154.)

Only "the most egregious official conduct" suffices to establish conscience-shocking behavior. *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654-55 (7th Cir. 2011). "There

---

[4]The Administrators' argument that they are entitled to qualified immunity because they "would not have believed taking plaintiff out of class and questioning him violated clearly established law," (Dist. Defs.' Mem. Supp. Mot. at 7-8), fails for the same reason. The allegations depict a situation that goes beyond mere "questioning." It is clearly established that students have a limited right to be free from unreasonable restrictions of liberty, and A has stated a claim for violation of that right. "[M]ost claims for qualified immunity are too fact-intensive to be decided on a motion to dismiss." *Schneider v. Cty. of Will*, 366 F. App'x 683, 686 (7th Cir. 2010). A's claim falls into that category. *See also Tamayo v. Blagojevich*, 526 F.3d 1074, 1090-91 (7th Cir. 2008).

9

is no clear-cut analysis to determine what constitutes 'conscience-shocking' conduct; the question is whether the conduct is 'too close to the rack and the screw.' For example, on the one hand, forcing an emetic down a person's throat to forcibly extract evidence from a suspect's stomach shocks the conscience, but on the other hand, lying to, threatening, or insulting a suspect does not." *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010) (citations omitted). A's alleged questioning by the Administrators, while unpalatable, does not meet the "conscience-shocking" threshold.

As the Court noted in its previous opinion in which it concluded that plaintiffs failed to state a claim for violation of substantive due process, the Supreme Court has observed in relation to the scope of students' due process rights that "'[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion.'" *Jain v. Butler Ill. Sch. Dist. 53*, No. 17 C 0002, 2017 WL 3872474, at *8 (N.D. Ill. Sept. 5, 2017) (quoting *Wood v. Strickland*, 420 U.S. 308, 326 (1975)); *see also Tun v. Whitticker*, 398 F.3d 899, 903-04 (7th Cir. 2005) (noting that "[c]ases abound in which the government action—though thoroughly disapproved of—was found not to shock the conscience," and holding that, while school officials "exercised questionable judgment" by "overreacti[ng]" to a locker-room situation, they did not violate the student-plaintiff's substantive due process rights).

The Court therefore dismisses Count II. The dismissal is with prejudice because A previously attempted, and failed, to state a substantive due process claim, and again fails to do so; moreover, it appears that further attempts would be futile. *See Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012) (leave to amend need not be granted when a party has had multiple opportunities to state a claim); *Bogie v. Rosenberg*, 705 F.3d 603, 608, 616 (7th Cir. 2013) (dismissal with prejudice is appropriate when amendment would be futile).

### E. Willful and Wanton Conduct (Count IV)

Plaintiffs allege in Count IV that all defendants "willfully and wantonly" did the following: failed to properly investigate the allegations of academic dishonesty; "targeted the overwhelming weight of their authority on a 9-year-old boy"; disclosed their "unfounded allegations and unwarranted punishment" to District families and staff; employed Roselli, Massey, and their law firm to conduct an "inherently biased and flawed investigation"; and "continue to single out" A "for different treatment than his peers." (5th Am. Compl. ¶ 176.)

Willful and wanton misconduct is considered an aggravated form of negligence. *Sparks v. Starks*, 856 N.E.2d 575, 577 (Ill. App. Ct. 2006).[5] "Under Illinois law, a plaintiff pleading willful and wanton misconduct must establish the same basic elements of a negligence claim, which are the existence of a duty, breach of that duty, and an injury proximately resulting from the breach," as well as a "conscious disregard for the welfare of the plaintiff." *Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2010).

#### 1. The District Defendants

The District Defendants maintain that they are immune from liability on Count IV under Illinois's Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-201, which provides that "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." For this immunity to attach, the employee's act or omission that allegedly caused the injury at issue must constitute "both a determination of policy and an exercise

---

[5] In their arguments on plaintiffs' state-law claims, all parties rely on Illinois law, so that is what the Court will apply. *See Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000).

of discretion." *Harrison v. Hardin Cty. Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848, 852 (Ill. 2001). Policy determinations are those that require the governmental employee "to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Id.* With respect to the exercise of discretion, courts have distinguished between "discretionary duties, the negligent performance of which does not subject a municipality to tort liability, and ministerial duties, the negligent performance of which can subject a municipality to tort liability." *Id.*

Statutory immunity is an affirmative defense, and the distinction between "discretionary acts," to which the statute applies, and "ministerial functions," to which it does not, "resists precise formulation, and . . . must be made on a case-by-case basis." *Snyder v. Curran Twp.*, 657 N.E.2d 988, 992-93 (Ill. 1995); *see also Hogan v. Smith*, Civ. No. 11-961-GPM, 2012 WL 1435402, at *3 (S.D. Ill. Apr. 25, 2012) ("Immunity, of course, is a defense, and thus the issue before the Court is whether [plaintiff's] complaint itself establishes as a matter of law that statutory immunity bars her negligen[ce] claim."). The Court could dismiss Count IV only if plaintiffs' factual allegations "unambiguously establish all the elements of the defense." *Lenz v. Robert W. Baird & Co.*, 697 F. App'x 456, 457 (7th Cir. 2017). In their opening brief, the District Defendants fail to fully develop their argument that statutory immunity applies, and the Court is unable to say as a matter of law from its review of the Fifth Amended Complaint that such immunity applies to all instances of the District Defendants' alleged misconduct. The District Defendants' motion is denied as to Count IV.

### 2. The Attorney Defendants

Plaintiffs allege that although the Robbins Schwartz firm had served as the District's legal counsel for thirty years, "the Board characterized its attorneys as an independent third party that is in no way connected to the District." (5th Am. Compl. ¶ 96.) Hanzlik appointed Massey to serve

12

as Complaint Investigator, and Massey told Jain that she would be "independent in her investigation" and that Roselli was going to serve as a "resolution facilitator." (*Id.* ¶¶ 98-100.) Unbeknown to the plaintiffs, Roselli had "played a key role" in Wennstrom's initial investigation and in deciding the sanctions against plaintiffs. (*Id.* ¶ 102.) Massey later issued a report to the Board concluding that A had "cheated" on the GeoBee. (*Id.* ¶ 109.) The report was incomplete, incorrect, and "sought to support" Wennstrom's misconduct. (*Id.* ¶ 112, 114.) The Board voted to affirm Massey's findings as well as the sanctions that were previously issued by Wennstrom. (*Id.* ¶ 120.)

The Attorney Defendants contend that they did not owe plaintiffs any duty that they could have breached. The Board hired the Attorney Defendants. Plaintiffs were not their clients, and there are no facts alleged from which the Court can infer that these defendants owed plaintiffs any duty or that they had any special relationship with plaintiffs that gave rise to a duty. Plaintiffs argue that because the Board "sits in trust for the entire community," which includes plaintiffs, the Attorney Defendants, "as agents of the Board," owe plaintiffs the same duty of care that the Board owes them. (ECF No. 192, Pls.' Resp. Defs.' Mots. at 24.) Plaintiffs cite no authority whatsoever for this proposition, so it is rejected. Count IV is dismissed without prejudice as to the Attorney Defendants.

## F. Intentional and Reckless Infliction of Emotional Distress (Counts V and VI)

In Counts V and VI, plaintiffs allege claims against all defendants for intentional and reckless infliction of emotional distress. Under Illinois law, such claims have three elements: "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress." *Cairel v. Alderden*, 821 F.3d 823, 835 (7th Cir. 2016).

13

Defendants contend that plaintiffs have failed to allege conduct that is so outrageous and extreme as to warrant this kind of tort liability. The Court agrees. For conduct to be "extreme and outrageous," it must "go beyond all bounds of decency and be considered intolerable in a civilized community." *Id.* at 835. While some of the conduct alleged in the Fifth Amended Complaint could be described as unreasonable and possibly unconstitutional, it cannot be said to go beyond all bounds of decency as necessary for an infliction of emotional distress claim. Furthermore, the plaintiffs fail to set forth sufficient factual allegations of resulting *severe* emotional or psychiatric distress. Illinois law "intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Plaintiffs allege that they "had emotional responses such as fear, anger, grief, and shock" in addition to "nervousness, headaches, irritability, and restless sleep," (5th Am. Compl. ¶¶ 186, 192), which is inadequate to permit a reasonable inference that they experienced the level of emotional distress necessary to support their claims. Therefore, Counts V and VI are dismissed without prejudice as to all defendants.

### G.  Defamation Per Se (Count VII)

In Count VII, plaintiffs allege that Wennstrom defamed them by sending emails to District parents and staff on February 8, 2016 and June 15, 2016 that described the District's investigation and stated that "certain families had engaged in academic dishonesty" with respect to the GeoBee and WordMasters. (5th Am. Compl. ¶¶ 91, 124, 195-96.) The elements of a defamation claim under Illinois law are (1) the defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) the publication caused damages. *Goral v. Kulys*, 21 N.E.3d 64, 76 (Ill. App. Ct. 2014) (citing *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009)). "A statement is defamatory per se if its harm is obvious and apparent on its

14

face." *Green*, 917 N.E.2d at 459. If a defendant's statements constitute defamation per se, the plaintiff need not prove actual damages. *Id.* at 461.

Wennstrom first contends that plaintiffs' defamation claim fails because plaintiffs admit in the complaint that neither email "mentioned either S. Jain or Minor 'A' by name," (5th Am. Compl. ¶¶ 92, 128). Where a plaintiff is not named in the allegedly defamatory statement, it is not actionable under Illinois law unless persons other than the plaintiff and the defendant could have reasonably understood that the statement was about the plaintiff and that the allegedly libelous expression related to her. *Bryson v. News Am. Pubs., Inc.*, 672 N.E.2d 1207, 1218 (Ill. 1996). Wennstrom disregards this exception and fails to acknowledge the allegations in the remainder of paragraphs 92 and 128. Plaintiffs allege that the pool of competitors was very small and that A's absence from the competition was noticeable, so they have sufficiently pleaded that persons other than plaintiffs and defendants could have reasonably understood that the emails were about plaintiffs.

Wennstrom also contends that, as a public official, she has absolute immunity from liability for defamation under Illinois common law. Illinois courts have "long held" that executive branch officials of state and local governments cannot be civilly liable for statements, even defamatory ones, made within the scope of their official duties. *Novoselsky v. Brown*, 822 F.3d 342, 349 (7th Cir. 2016) (citing *Geick v. Kay*, 603 N.E.2d 121, 127 (Ill. App. Ct. 1992)). This broad privilege applies to public-school superintendents like Wennstrom. *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 617-18 (7th Cir. 2001). The sole consideration is whether the statements at issue were reasonably related to her duties. *See Novoselsky*, 822 F.3d at 350.

Plaintiffs assert that they should be allowed to proceed on their defamation claim because they allege that Wennstrom's emails did not fall within the scope of her official duties. (5th Am.

15

Compl. ¶ 204.) But they do not attempt to explain how Wennstrom's communications to District families and employees about instances of academic dishonesty would not be reasonably related to her duties as superintendent, and the complaint does not contain any facts that support such an inference. Accordingly, Count VII is dismissed without prejudice. *See Horwitz*, 260 F.3d at 617-18 (school superintendent was acting within the scope of his official authority when he communicated with various parents about the absence of plaintiff, who was a teacher in the district); *Cox v. Calumet Pub. Sch. Dist. 132*, 180 F. Supp. 3d 556, 564 (N.D. Ill. 2016) (dismissing defamation claim against school superintendent where complaint contained no facts supporting an inference that defendant was acting outside her official authority when she communicated to third parties that plaintiff, a former school district employee, had been discharged for cause).

### H.     Bullying-Prevention Statute (Count VIII)

Plaintiffs allege in Count VIII that the conduct of Wennstrom, Voliva, Owen, and the District with regard to A violated 105 ILCS 5/27-23.7, a provision of the School Code titled "Bullying Prevention." The introductory policy statement of the statute provides that "[n]o student shall be subjected to bullying" while in school, on school property, or during school-related activities. 105 ILCS 5/27-23.7(a). The statute requires Illinois school districts to create, implement, and communicate anti-bullying policies. 105 ILCS 5/27-23.7(b), (d).

Defendants argue that the Court should dismiss Count VIII because the statute does not create a private right of action. It is true that the statute does not contain an express right of action, but, as plaintiffs point out, an implied right of action may exist. The parties did not cite, and the Court's own research did not yield, any Illinois state-court decisions that address this issue. Therefore, the Court believes that it is prudent to adopt the approach set out in *Eilenfeldt v. United C.U.S.D. #304 Board of Education*, No. 4:12-CV-04029-SLD-JAG, 2013 WL 12248080, at *7 (C.D.

Ill. Mar. 25, 2013), in which the court was confronted with the same issue and declined to exercise its supplemental jurisdiction over the claim. Under 28 U.S.C. § 1367(c)(1), a district court may decline to exercise supplemental jurisdiction over a claim if it raises a novel issue of state law. Because Illinois law on claims under the bullying-prevention statute is undeveloped, a ruling from this Court on whether the statute implies a private right of action "would require significant policy determinations as to the legislative intent behind the statute and the inherent role of the statute in remedying bullying in schools." *Eilenfeldt*, 2013 WL 12248080, at *7. The Court agrees with the *Eilenfeldt* court that "such determinations are better left to the discretion of the state courts." *Id.* Count VIII is accordingly dismissed without prejudice.

## CONCLUSION

The District Defendants' motion to dismiss plaintiffs' Fifth Amended Complaint [185] is granted in part and denied in part. The motion is denied as to Counts I and III, plaintiff A's claim against defendants Wennstrom, Voliva, and Owen for unconstitutional seizure, and as to Count IV as asserted against the District Defendants. (Count IV as asserted against the Attorney Defendants, however, is dismissed without prejudice.) The motion is granted as to the remaining counts. Count II is dismissed with prejudice, and Counts V, VI, VII, and VIII are dismissed without prejudice. Defendants Libby Massey and Caroline Roselli's motion to dismiss plaintiff's Fifth Amended Complaint [187] is granted, and those defendants are terminated from this case. A status hearing is set for March 29, 2018 at 9:30 a.m. The Clerk of Court is directed to update the docket to reflect the correct spelling of the last names of defendants Lou Paskalides and Todd Rusteberg.

**DATE**:  March 22, 2018

_____
**Ronald A. Guzmán**
**United States District Judge**