**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| S. JAIN, for herself, and as parent of and for her son "A", a minor, | |
| Plaintiff, | |
| v. | Case No. 17-cv-00002 |
| BUTLER ILLINOIS SCHOOL DISTRICT 53, et al., | Honorable Ronald A. Guzman |
| Defendants. | |

**DEFENDANTS' MOTIONS IN LIMINE**

NOW COME the Defendants, BUTLER SCHOOL DISTRICT 53 et al., by and through their attorneys, WIEDNER & McAULIFFE, LTD., and for their Motions in Limine, state as follows:

**1.     Bar Witnesses from the Courtroom Except When they Give Testimony**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring non-party witnesses from the courtroom except when they give testimony. In support of their Motion, Defendants state the following:

1.     Rule 615 of the Federal Rules of Evidence provides that at a party's request the court must exclude non-party witnesses and witnesses not authorized by statute to be present from the courtroom so that they cannot hear other witnesses' testimony. Fed. R. Evid. 615.

2.     Defendants move this Honorable Court, *in limine*, for the entry of an order barring Plaintiffs' witnesses, and any and all non-party witnesses, from the courtroom except when they are giving their own individual testimony. Fed. R. Evid. 615.

1

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs' witnesses, and any and all non-party witnesses, from the courtroom except when they are giving their own individual testimony.

**2.  If this Court prohibits punitive damages from being requested, Bar Plaintiffs' Counsel and His Witnesses from Referring to the Wealth, Poverty or Pecuniary Circumstances of Any Party**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs' counsel and their witnesses from referring to the wealth, poverty or pecuniary circumstances of any party. In support of their Motion, Defendants state the following:

1.  Defendants move this Honorable Court, *in limine*, for an order barring Plaintiffs, as well as their counsel and witnesses, from referring to the wealth, poverty or the pecuniary circumstances of any party. *Adams Laboratories, Inc. v. Jacobs Engineering Co.*, 761 F.2d 1218, 1226 (7th Cir. 1985) (appealing to the sympathy of jurors through references to the relative wealth of the defendants is improper and may be cause for reversal).

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs' counsel and their witnesses from referring to the wealth, poverty or pecuniary circumstances of any party.

**3.  Bar All Undisclosed Documentary Evidence, Witnesses and Opinions.**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring the use of undisclosed documentary evidence at trial and all witnesses and opinions not previously disclosed. In support of their Motion, Defendants state the following:

1.      Rule 26(a) requires a party to disclose the name, address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims, as well as the identity and opinions of experts the disclosing party may use at trial. FRCP R. 26(a)(1)(A)(i), R. 26(a)(2)(A).

2.      Moreover, Rule 26(a) requires a party to provide a copy, or a description by category and location, of all documents, electronically store information and tangible things the disclosing party has in its possession and may use to support its claims or defenses. FRCP R. 26(a)(1)(A)(ii).

3.      Parties are under a continuing obligation to supplement their Rule 26(a) disclosures. FRCP R. 26(e).

4.      Rule 37(c) of the Federal Rules of Civil Procedure provides that, "If a party fails to provide information or identity of a witness as required by Rule 26(a) or (e), the party is not allowed to use that information to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. FRCP R. 37(c). Accordingly, documentary evidence, witnesses and/or opinions undisclosed in a party's Rule 26 disclosures should be barred at trial. *Id*.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order that that bars the use of undisclosed documentary evidence at trial and all witnesses and opinions not previously disclosed.

**4.      Bar Reference to Insurance**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring reference to insurance. In support of their Motion, Defendants state the following:

1.      Defendants move this Honorable Court, *in limine*, for the entry of an order barring counsel for Plaintiffs, or any of their witnesses, from presenting evidence or making any argument or comment regarding the fact that Defendant may be covered by a policy of insurance or otherwise making reference to insurance, including in *voir dire*. Fed. R. Evid. 411.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring reference to insurance.

**5.      Bar Plaintiffs' Counsel From Vouching for the Honesty, Character or Credibility of Any Party or Witness**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs' counsel from vouching for the honesty, character or credibility of Plaintiff or Defendants or any of their witnesses. In support of their Motion, Defendants state the following:

1.      Defendants move this Honorable Court, *in limine*, for an order barring counsel for Plaintiffs from asking any question or making any remark, statement, suggestion or inference that personally attests to or vouches for the honesty, character, or credibility of the Plaintiffs or Defendants or of any of their witnesses. *Canada Dry Corp. v. Nehi Beverage Co.*, 723 F.2d 512, 526-527 (7th Cir. 1983) (remarks by counsel vouching for the honesty and credibility of a witness based on personal friendship with counsel and counsel's own beliefs as to correctness of case were "clearly improper").

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs' counsel from vouching for the honesty, character or credibility of Plaintiffs or Defendants or any of their witnesses.

**6.      Bar Plaintiffs' Counsel from Asking Jurors to Place Themselves in Plaintiffs' Position.**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs' counsel from asking jurors to place themselves in Plaintiffs' position. In support of their Motion, Defendants state the following:

1.      Defendants move this Honorable Court, *in limine*, for an entry of an order barring counsel for Plaintiffs from asking the jurors to place themselves in the position or in the "shoes" of Plaintiffs. *Joan W. v. Chicago*, 771 F.2d 1020, 1022 (7th Cir. 1985)("[a]n appeal to the jury to imagine itself in the plaintiff's position is impermissible because it encourages the jury to depart from it neutral role"). The so-called "Golden Rule" argument has been universally condemned by the courts. *Id.*

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs' counsel from asking jurors to place themselves in Plaintiffs' position.

**7.      Bar Comparison of Injuries, Including Prior Jury Verdicts and Other Lawsuits**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs, their attorneys, witnesses, agents and anyone else from making any statements during jury selection, opening statements, closing argument, or any other time in the presence of the jury comparing the alleged injuries sustained by Plaintiffs in this case to injuries sustained by other persons in other cases, including reference to prior jury verdicts and other lawsuits. In support of their Motion, Defendants state the following:

1.      It is highly prejudicial for an attorney to express his own personal belief on an ultimate issue through a comparison of the injuries actually before the jury with injuries in other cases not in evidence. *See Canada Dry Corp. v. Nehi Beverage Co.*, 723 F.2d 512, 526-527 (7th Cir. 1983).

2.    Additionally, statements by attorneys or witnesses comparing the present case to injuries in other cases are irrelevant. Evidence is only relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Evidence must be relevant to be admissible. *Id*. Because the injuries sustained in other cases are not at issue in this case, they are not relevant and, therefore, statements regarding such other cases should not be allowed.

3.    For the reasons stated above, Plaintiffs' attorney, as well as any witness called on behalf of Plaintiffs, should not be allowed to directly or indirectly compare the injuries allegedly sustained in this case to injuries sustained in other cases. For the same reasons, no attorney or witness should be allowed to directly or indirectly compare this case to prior jury verdicts or other lawsuits.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs, their attorneys, witnesses, agents and anyone else from making any statements during jury selection, opening statements, closing argument, or any other time in the presence of the jury comparing the injuries sustained by the decedent and Plaintiffs in this case to injuries sustained by other persons in other cases, including reference to prior jury verdicts and other lawsuits.

**8.    Bar Opposing Counsel or Plaintiffs from testifying or introducing evidence of other lawsuits against the Defendants**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs, their attorneys, and witnesses from making any statements during jury selection, opening statements, closing argument, or any other time in the presence of the jury regarding any other lawsuit that has been filed against the Defendants. In support of their Motion, Defendants state the following:

6

1.      Plaintiffs have filed other lawsuits against the Defendants arising out of the same alleged occurrence, which they have discussed during their depositions. Other third-parties have also filed lawsuits against the Defendants arising out of the same occurrence.

2.      These other lawsuits have no relevance to the elements of the claims Plaintiffs must prove to prevail in this lawsuit, and therefore, are not admissible. Fed. R. Evid. 401. Moreover, the introduction or mention of these other lawsuits would be more prejudicial than probative, as such testimony or evidence would surely be used as an attempt to bolster the credibility of Plaintiffs and the merit of this lawsuit. Fed. R. Evid. 403; *see Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1031 (N.D. Ill. 2011).

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs, their attorneys, and witnesses from making any statements during jury selection, opening statements, closing argument, or any other time in the presence of the jury regarding any other lawsuit that has been filed against the Defendants.

**9.      Bar Opposing Counsel from Requesting That Jurors "Send A Message"**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs, their attorneys, witnesses, agents and anyone else from making any statements during jury selection, opening statements, closing argument, or any other time in the presence of the jury that the jury should "send a message" with its verdict or other similar language. In support of their Motion, Defendants state the following:

1.      It is improper to request jurors to "send a message" with their verdict where punitive damages are not available. *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1033 (N.D. Ill. 2011). Asking jurors to "send a message" or similar words, invites jurors to measure the

damage award based on its deterrent effect, rather than based on the plaintiff's injuries. Thus, it acts as a request to award punitive damages. *See id*. Punitive damages are not available in this case as argued herein and Plaintiffs' counsel should not be permitted to invite the jury to award such damages.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs, their attorneys, witnesses, agents and anyone else from making any statements during jury selection, opening statements, closing argument, or any other time in the presence of the jury that the jury should "send a message" with its verdict or other similar language.

## 10. Bar Plaintiffs' Counsel from Suggesting or Commenting that Defendants Failed to Call a Non-Party Witness to Testify

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., moves this Honorable Court to enter an Order barring Plaintiffs' counsel from suggesting or commenting that Defendants failed to call a non-party witness to testify. In support of their Motion, Defendants state the following:

1. Defendants move for an order barring counsel for Plaintiff from suggesting or commenting that Defendants failed to call a non-party witness, including but not limited to former employees, to testify on its behalf, without a showing that the person is under Defendants' direction and control and is not equally available to both parties. *Chi. College of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1352-4 (7th Cir. 1983).

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs' counsel from suggesting or commenting that Defendants failed to call a non-party witness to testify.

## 11. Bar References to Whether a Representative of Defendant Is Present

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring references to whether representatives of each Defendant is present. In support of their Motion, Defendants state the following:

1.     Defendants move this Honorable Court, *in limine*, for an order barring Plaintiffs, as well as their counsel and witnesses, from making any references, statements, comments or inferences during all or part of the trial, including *voir dire*, as to whether or not representatives of each Defendant are present. Such comments are not evidence and have no probative value as they do not make any fact in controversy more or less probable. Fed. R. Evid. 401. Accordingly, such references are irrelevant and should be excluded.

2.     Further, such comments must be excluded because any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403. Evidence is unfairly prejudicial where it will induce the jury to decide the case on an improper basis rather than on the evidence presented. *U.S. v. Pulido*, 69 F.3d 192, 201 (7th Cir. 1995).

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring references to whether a representative of each Defendant is present at trial.

**12.     Bar Arguments that the Burden of Proof in this Civil Action is Less than the Burden of Proof in a Criminal Matter or Comparing Civil and Criminal Burdens of Proof.**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring arguments or instructions that the burden of proof in this civil action is less than the burden of proof in a criminal matter or comparing civil and criminal burdens of proof in any way. In support of their Motion, Defendants state the following:

1.     Defendants move this Honorable Court, *in limine*, for an order barring Plaintiffs and their counsel from arguing or presenting instructions to the jury that the burden of proof in

this civil action is less than the burden of proof in a criminal matter or comparing civil and criminal burdens of proof in any way. *See* Fed. R. Evid. 403 (court may exclude evidence where the danger of confusing the issues or misleading the jury substantially outweighs the probative value of relevant evidence).

3.      Therefore, any argument or instruction by Plaintiffs or their counsel that the burden of proof is less in this case than in a criminal matter will confuse the jury and should not be given.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring arguments or instructions that the burden of proof in this civil action is less than the burden of proof in a criminal matter or comparing civil and criminal burdens of proof in any way.

**13.     Bar Comments Implying That Defendants Delayed Before Trial or Caused a Longer Trial By Requiring That Plaintiffs Prove Every Element of Their Claims**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs, their attorneys, witnesses, agents, and anyone else from suggesting, commenting, insinuating or arguing in any manner during trial or in the presence of the jury any notion that Defendants or their attorneys delayed the trial in this case or somehow are responsible for causing a longer trial. In support of their Motion, Defendants states the following:

1.      Plaintiffs should be barred from implying or commenting that Defendants or their attorneys or employees delayed the trial in this case in any manner, including but not limited to the insinuation that Defendants are at fault for the length of the trial because Plaintiffs were required to prove each and every element of their claims. Such statements are irrelevant for the purpose of proving Plaintiffs' cause of action and it would impose substantial prejudice on

Defendants. Fed. R. Evid. 401, 403.

2.      The trial court may exclude evidence or argument where the probative value of evidence is slight and is substantially outweighed by its tendency to prejudice, mislead or confuse the jury. Fed. R. Evid. 403. Any argument or comment to the jury that implies that Defendants delayed the trial or that the length of the trial is somehow the fault of Defendants would be grossly unfair and prejudicial to Defendants. Such statements would have no purpose other than to inflame the prejudices of the jury against Defendants. This specifically includes any insinuation, comment or argument that Defendants required Plaintiffs to prove each and every element of their case, which resulted in a longer trial.

3.      The Court should similarly bar Plaintiffs, their attorneys and any witnesses called by them from testifying, arguing, implying or referencing in any way the length of time it took for this lawsuit to come to trial or that Defendants and/or their attorneys are responsible for such delay. Such comment or argument is irrelevant. Fed. R. Evid. 401. Moreover, any probative value of such argument or evidence is substantially outweighed by the likelihood that it would mislead and confuse the jury and would inflame juror prejudice. Fed. R. Evid. 403.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs, their attorneys, witnesses, agents, and anyone else from suggesting, commenting, insinuating or arguing in any manner during trial or in the presence of the jury any notion that Defendants or their attorneys delayed the trial in this case or somehow are responsible for causing a longer trial for any reason, including but not limited to, that Defendants required Plaintiffs to prove each and every element of their claim.

## 14.    Bar All Speaking and Argumentative Objections from Being Made Within the Presence of the Jury

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring all speaking and argumentative objections from being made within the presence of the jury. In support of their Motion, Defendants state the following:

1. Defendants move this Honorable Court, *in limine*, for the entry of an order barring all speaking or argumentative objections from being made in the presence of the jury. Speaking and/or argumentative objections made for the purpose of prejudicing the jury by disclosing facts and innuendo are improper. Fed. R. Evid. 403; *see Ryan v. Monson*, 33 Ill. App. 2d 406, 417 (1st Dist. 1961). Moreover, statements following objections are prejudicial, highly inflammatory, and not cured by the trial Court's ruling. *Ryan*, 33 Ill. App. 2d at 417.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring all speaking and argumentative objections from being made within the presence of the jury.

## 15. Bar Lay Witness Testimony or Opinions as to Nature and Extent of Plaintiffs' Injuries

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs' counsel and their witnesses, from testifying or opining as to the nature and extent of the Plaintiffs' injuries. In support of their Motion, Defendants state the following:

1. Defendants move this Honorable Court, *in limine*, for an order barring Plaintiffs, as well as their counsel and witnesses, from concluding, speculating, implying or otherwise presenting any testimony or evidence as lay witnesses as to the nature and extent of the Plaintiffs' and their family's post-occurrence injuries, disabilities, physical condition, diagnoses, prognoses or otherwise concerning the Plaintiffs' and their family's physical, cognitive and

12

mental capacities.

2.      Plaintiffs withdrew the medical/mental health provider witnesses they previously disclosed and have not disclosed any witness competent to testify as to Plaintiff Jain's, Plaintiff A's, or the Plaintiff Family's diagnoses, disabilities, cognitive functioning, feelings and symptoms. Any testimony as to these issues is not a proper subject of lay witness testimony under Federal Rule of Evidence 602 or 701, and further constitutes inadmissible hearsay. *Jordon v. Morrissey*, 130 Ill. App. 2d 418 (1st Dist. 1970); *Vujovich v. Chi. Transit Auth.*, 6 Ill. App. 2d 115 (1st Dist. 1955).

3.      Thus, while Plaintiffs themselves may be able to testify as to their own individual feelings and abilities, Plaintiff or witness should not be permitted to testify regarding any diagnoses they were informed of by medical or mental health providers, the alleged cause of their medical or mental health conditions, future treatment, prognosis, or as to anything that is not within their personal knowledge. Fed. R. Evid. 602, 701, 802; *Larsen v. Barrientes*, No. 1:09-cv-55, 2010 U.S. Dist. LEXIS 69419, **9-11 (N.D. Ind. July 12, 2010) (while plaintiff may testify as to his own perception of his physical and mental health before and after an accident, a plaintiff may not testify that an occurrence proximately caused his injuries or offer a medical diagnosis).

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs from testifying or opining as to the causation of their injuries, diagnoses, or prognosis.

**16.      Bar Plaintiff from Any Reference, Statement or Argument Regarding Defendants' Motions *In Limine***

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs, as well as their attorneys and witnesses,

from any reference, statement or argument that these motions *in limine* have been filed, or to any ruling by the Court in response to this motion, suggesting or implying to the jury that Defendants have moved to prohibit proof or that the Court has excluded proof of any particular matters. In support of their Motion, Defendants state the following:

1.      It has been reiterated many times that "it is utterly improper for counsel in arguing to the jury to refer to the ruling of the trial court rejecting evidence, and this is true whether the ruling of the trial court was or was not in error." *Anderson v. Universal Delta*, 90 Ill. App. 2d 105, 111 (1st Dist. 1968).

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs, as well as their attorneys and witnesses, from any reference, statement or argument that these motions *in limine* have been filed, or to any ruling by the Court in response to this motion, suggesting or implying to the jury that Defendants moved to prohibit proof or that the Court has excluded proof of any particular matters.

**17.    Bar Plaintiffs' Counsel from Eliciting a Pledge from Jurors in *Voir Dire* Regarding "Millions of Dollars"**

Defendants, through their attorneys, Wiedner & McAuliffe, move this Honorable Court to enter an Order barring Plaintiffs, or their counsel or other witnesses, from conditioning or eliciting a pledge from jurors in *voir dire* regarding "millions of dollars." In support of their Motion, Defendants state the following:

1.      This Court has discretion to control *voir dire* which becomes an attempt to indoctrinate or pre-educate jurors regarding the facts of the case or to obtain a pledge to render a verdict in a particular way or award excessive damages. *Gasiorowski v. Homer*, 47 Ill. App. 3d 989, 992 (1st Dist. 1997).

2.      Comments regarding the facts of the case and questions asking the jury whether they are willing to award millions of dollars in damages pre-condition the jury even before opening statements to accept Plaintiffs' argument that their case is worth millions of dollars. Such questions are particularly prejudicial because during closing argument, plaintiff attorneys often use the answers to the questions to argue to the jury that they pledged to award millions of dollars to the injured plaintiff. Through these arguments, undue pressures are placed on jurors to award excessive damages. Any questioning of the prospective jurors on the issue of damages should be limited to asking jurors whether they could fairly and reasonably compensate Plaintiffs under the evidence.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs, or their counsel or other witnesses, from eliciting a pledge from jurors in voir dire regarding "millions of dollars."

## 18.      Bar Statements Regarding the Defendant School District's Revenue and Budget

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order to bar statements or evidence regarding the School District's revenue and budget. In support of their Motion, Defendants state the following:

1.      Defendants move this Honorable Court, *in limine*, for the entry of an order barring any testimony, evidence, statement or argument regarding the Defendant School District's revenue or budget as such evidence is irrelevant to the issues in this case and unfairly prejudicial. Fed. R. Evid. 401, 402, 403.

2.      The only reason to present evidence of the revenue or budget would be to impermissibly admit evidence of the School District's wealth. *Adams Laboratories, Inc. v.*

*Jacobs Engineering Co.*, 761 F.2d 1218, 1226 (7th Cir. 1985). Accordingly, such evidence should be barred at trial.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order to bar statements or evidence regarding the School District's revenue and budget.

**19.     Bar Plaintiffs from seeking punitive damages in Counts III and IV**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs, their attorneys, and witnesses from making any statements in the presence of the jury regarding or requesting punitive damages or including punitive damages on the jury verdict form for their claims asserted in Counts III and IV. In support of their Motion, Defendants state the following:

1.     In Count III, Plaintiffs request punitive damages as an aspect of their damages in this case; these claims are asserted against Dr. Wennstrom, Ms. Voliva, and Ms. Owen and allege a violation of Article 1 Section 6 of the Illinois Constitution. In Count IV, Plaintiffs allege a willful and wanton conduct claim against all Defendants, which include the School District, the Board of Education, individual Board members, Dr. Wennstrom, Ms. Voliva, and Ms. Owen but Plaintiffs do not seek punitive damages as part of their willful and wanton count.

2.     Plaintiffs should be barred from seeking punitive damages in this case because Article 1 Section 6 of the Illinois Constitution does not provide Plaintiffs with a private right of action. Second, Plaintiffs do not request punitive damages in their willful and wanton count.

3.     No private right of action exists under Article 1 Section 6 of the Illinois Constitution. *Lee v. Vill. of Glen Ellyn*, No. 16-cv-7170, 2017 U.S. Dist. LEXIS 73321, **10-11 (N.D. Ill. May 15, 2017); *Wagner v. Evans*, No. 15-cv-6165, 2016 U.S. Dist. LEXIS 11964, *5 (N.D. Ill. Feb. 2, 2016); *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 862 (N.D. Ill.

16

2010) (declining to find an independent cause of action for unreasonable search and seizure and invasion of privacy under the Illinois Constitution); *Richard v. Lukensmeyer*, No. 98 C 6409, 1999 U.S. Dist. LEXIS 6132, *4 (N.D. Ill. Apr. 8, 1999). Thus, this claim should be dismissed and punitive damages should not be assessed against Defendants on Count III as Plaintiffs' claim arising under Article 1 Section 6 is not viable.

4.     In Plaintiffs' remaining Count for willful and wanton conduct against all Defendants, Plaintiffs do not request punitive damages, and therefore, Plaintiffs and their counsel should be precluded from mentioning punitive damages in front of prospective or actual jurors and from arguing that the jury should award punitive damages for this claim. (Exhibit A, Plaintiffs' Fifth Amended Complaint at Count IV, prayer for relief).

5.     To the extent Plaintiffs may attempt to claim punitive damages are warranted under Count IV, punitive damages are likewise not permitted. The School District, School Board, Dr. Wennstrom, Ms. Voliva, Ms. Owen, and the individual Board Members are immune from punitive damages under the Illinois Tort Immunity Act. 745 ILCS 10/2-102 (a local public entity is not liable to pay punitive damages in any action brought directly or indirectly against it); 745 ILCS 10/2-201 (public employees serving in a position involving the determination of policy or exercise of discretion also have immunity); 745 ILCS 10/2-213 (a public employee is not liable to pay punitive damages in actions brought against her); *Perspectives Charter Sch.*, 685 F. Supp. 2d at n. 5 (noting that the Illinois Tort Immunity Act clearly bars plaintiff from recovering punitive damages from the school district and school board); *Kozlowski*, 2001 U.S. Dist. LEXIS 990, at *33 (striking plaintiff's prayer of relief for punitive damages because municipalities are immune from punitive damages under Section 1983); *Smith v. Northeast I. R. C. R. Corp.*, 210 Ill. App. 3d 223, 228 (1st Dist. 1991) (striking punitive damages claim against a local public

entity under the Illinois Tort Immunity Act). The Board and individual Board Members hold positions involving the determination of policy and involving the exercise of discretion. *See e.g.,* 105 ILCS 5/10-16.7 ("school board shall direct, through policy, the superintendent in his or her charge of the administration of the school district"); 105 ILCS 5/10-20.5; 105 ILCS 5/10-12; *Narducci v. Vill. of Bellwood*, 444 F. Supp. 2d 924, 926, 937, 940 (N.D. Ill. 2006) *aff'd by* 572 F.3d 313 (7th Cir. 2009) (finding board members to be "employees"); *Breuder v. Bd. of Trs. Of Cmty. Coll. Dist. No. 501*, 238 F. Supp. 3d 1054, 1065 (N.D. Ill. 2017) (finding Board members' discussion and voting to be discretionary); *Castillo v. Bd. of Educ. of City of Chicago*, 2018 IL App (1st) 171053, ¶ 15 (citing *Mulvey v. Carl Sandburg High Sch.*, 2016 IL App (1st) 151615, ¶¶ 47-48) (finding school officials' conduct discretionary); *Albert v. Bd. of Educ. of the City of Chicago*, 2014 IL App (1st) 123544, ¶ 68 (same). Additionally, Illinois courts have held that lower-level employees, such as principals, teachers and coaches, make many every day decisions determining policy for the purposes of Section 2-201. *See Harrison v. Hardin County Cmty. Unit Sch. Dist. No. 1*, 197 Ill. 2d 466, 472-74 (2001) (finding principal's actions in refusing student's request to leave school early was both a policy decision and discretionary in nature); *Courson v. Danville Sch. Dist. No. 118*, 333 Ill. App. 3d 86, 90 (4th Dist. 2002) (finding that a shop teacher's operation of a table saw without a safety guard constituted a "discretionary policy determination"); *Johnson v. Decatur Park Dist.*, 301 Ill. App. 3d 798, 808-10 (4th Dist. 1998) (finding coach's actions immunized under Section 2-201).

6. Further, while the Board Members were sued in an individual capacity, the conduct alleged against them does not rise to the level required for the imposition or consideration of punitive damages. Willful and wanton conduct has been defined as a course of action that shows actual or deliberate intent to harm or which, shows an utter indifference to or

conscious disregard for a person's safety. *Pikovsky v. 8440 N. Skokie Blvd.*, 2011 Ill. App. (1st) 103742, ¶15 (1st Dist. 2012). To establish willful and wanton conduct, Plaintiffs must first establish that the individual Board Members behaved intentionally, or under circumstances exhibiting a reckless disregard for the safety of others. *Pendowski v. Patent Scaffolding*, 89 Ill. App. 3d 484, 487-88 (1st Dist. 1980). Failure, after knowing that there is impending danger, to exercise ordinary care to prevent it, constitutes willful and wanton conduct. *Id*. Under Illinois, *the degree of culpability required to impose punitive damages on a willful and wanton count must be similar to that of a crime. Loitz v. Remington Arms Co*., 138 Ill. 2d 404, 415 (1990) (emphasis added).

7. Here, the factual allegations about the Board Members' alleged conduct are sparse and fall well short of the required standard of conduct for imposing liability under Illinois law.

8. Specifically, Plaintiffs allege that the Board voted to affirm the findings and discipline issued by Dr. Wennstrom after receiving the report from Libby Massey, the attorney the Board hired to conduct a thorough and complete investigation into the academic dishonesty allegations. (Ex. A, Complaint, ¶120). They further allege, without any supporting factual allegations, that the Board did so "without a fair and balanced discussion" and "recklessly." (Ex. A, Complaint, ¶120).

9. This is the only allegation specific to the Board Defendants, other than the allegations as to their identities. (Ex. A, Complaint, ¶¶16-24). The only Count against the Board Defendants is the willful and wanton conduct Count, which does not contain any factual allegations as to how the Board Members participated in any of the allegedly wrongful conduct. (Ex. A, Complaint, Count IV). At bottom, the claim against the Board Members is that they voted to affirm Dr. Wennstrom's recommended discipline against Plaintiffs after receiving a

thirty-page single spaced report from their attorney, who interviewed all relevant parties and set forth the facts of this allegation in minute detail. (See generally, Exhibit B, Libby Massey's Investigatory Report). The Board exists to do exactly what was done here—handle allegations of misconduct. There is not a single fact alleged that would, if true, establish that the Board Members, in their individual capacity, acted intentionally or with reckless disregard for the safety of Plaintiffs.

10.     Furthermore, aside from interrogatories, Plaintiffs failed to conduct any discovery regarding their claims against the individual Board Members. (See Exhibit C, Defendant Hanzlik's Amended Answers to Plaintiffs' Interrogatories and Exhibit D, Defendants Paskalides, Advani, Rusteberg, Patel and Kumar's Amended Answers to Plaintiffs' Interrogatories). Not a single deposition was taken. Thus, Plaintiffs have utterly failed to prosecute their case against the individual Board Members and failed to develop any evidence to support their minimal and baseless allegations against the individual Board Members.

11.     This Court should not permit any request for punitive damages against the individual Board Members to be made where the Plaintiffs failed to plead any request for punitive damages against the Board Members in an individual capacity, failed to allege any facts supporting their bare assertion that the Board Members acted "recklessly," and failed to conduct any discovery as to their claims against the individual Board Members. Moreover, there is no evidence in this case that the individual Board Members did anything other than discuss this case in closed session and vote to affirm the discipline recommended by their Superintendent, Dr. Wennstrom, and their outside counsel, Libby Massey. It is axiomatic that an allegation that these individuals performed their required job duties does not amount to willful and wanton conduct.

12.     In summary, Plaintiffs' claim under Article 1 Section 6 of the Illinois Constitution does not create a private right of action, and punitive damages are therefore not permitted under this Count.  Further, Plaintiffs do not request punitive damages in their willful and wanton conduct claim, but in the event they attempt to request punitive damages under this count, it should be barred because the District, School Board, Dr. Wennstrom, Ms. Voliva, and Ms. Owen are immune under the Illinois Tort Immunity Act. Last, the allegations against the individual Board Members do not rise to the level of reprehensible conduct necessary to impose punitive damages.

WHEREFORE the Defendants respectfully request this Court enter an order barring Plaintiffs and their Counsel from mentioning, suggesting, or arguing that punitive damages are proper or should be awarded against any Defendant in Counts III and IV.

**20.     Bar Plaintiffs and Plaintiffs' Counsel from Implying that Defendant Withheld or Spoliated Evidence or improperly recorded conversations.**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs, Plaintiffs' counsel, and any witness presented by Plaintiffs from stating or arguing that Defendants improperly recorded conversations and subsequently destroyed or withheld evidence of the recordings.  In support of their Motion, Defendants state the following:

1.     Defendants move this Honorable Court, *in limine*, for the entry of an order barring Plaintiffs, Plaintiffs' counsel, and any witnesses presented by Plaintiffs, from stating or arguing that Defendants improperly recorded conversations and subsequently destroyed or withheld evidence of the recordings, as there is nothing to support such a claim. Fed. R. Evid. 403; *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 388 (7th Cir. 2011)(comments by counsel suggesting e-mail was fabricated without any support held improper).

21

2.      Plaintiffs allege that Plaintiff A was "under the impression" that the interview was videotaped. (Ex. A, Complaint, ¶61). Plaintiffs requested the video in discovery and Defendants denied its existence. If asked during trial, Defendants will testify that no recording of the interview was made.[1] Thus, there is no evidence to suggest that a video or audio recording exists, and Plaintiffs have never pursued a claim based on the existence of this alleged recording, such as spoliation of evidence. Thus, the existence or lack thereof is not relevant to any element Plaintiffs must prove in their case in chief, and to allow Plaintiffs, Plaintiffs' counsel, and any witnesses presented by Plaintiffs to state, suggest, or argue that such a recording exists would be highly prejudicial to Defendants without some evidence that a recording was made. Fed. R. Evid. 401, 403. Moreover, Plaintiffs now request this Court instruct the jury on spoliation of evidence and provide an adverse inference regarding the Defendants' failure to produce a recording that never existed.

3.      Prior to instructing a jury on spoliation of evidence and giving an adverse inference, the plaintiff has the burden of establishing a spoliation of evidence claim _and_ must show that the evidence was destroyed in bad faith. _Bracey v. Grondin_, 712 F. 3d 1012, 1019-20 (7th Cir. 2013) (upholding district court's refusal to give adverse inference instruction on destruction of evidence where plaintiff had no evidence of bad faith) (emphasis added); _see also Rummery v. Ill. Bell Tel. Co_., 250 F.3d 553, 558 (7th Cir. 2001) (finding that a party's speculation as to motive for destruction of evidence is insufficient). The party requesting the instruction must make _a showing_ that the evidence was in the defendant's possession and that the defendant intentionally destroyed the evidence in bad faith. _Spesco, Inc. v. Gen. Elec. Co._, 719 F.2d 233, 239 (7th Cir. 1983) (emphasis added).

---

[1] In fact, Defendants submit to this Court that if a recording of the interview of Plaintiff A was made, it would establish that none of the representations by Plaintiffs about the duration or nature of the interview have any merit whatsoever.

4.      Here, Plaintiffs have not and cannot meet their burden for establishing that the video recording ever existed, much less that Defendants destroyed it in bad faith. All Plaintiffs allege is their "impression" that Plaintiff A's interview with Dr. Wennstrom, Ms. Voliva, and Ms. Owen was recorded, which falls well-short of the requirement that they 1) prove the evidence existed; 2) prove Defendants had possession of it; and 3) destroyed it in bad faith. *Bracey*, 712 F. 3d at 1019-20 (citing *Rummery*, 250 F.3d at 558). Therefore, Plaintiffs, their counsel, and their attorneys should be barred from referencing or arguing that the recording existed and was destroyed in bad faith. Furthermore, Plaintiffs' proposed jury instruction should be rejected because they cannot meet their burden, rendering the instruction argumentative and prejudicial to Defendants. *Spesco,* 719 F.2d at 239.

5.      Additionally, Dr. Vandana Badlani, who initially informed Defendant Dr. Wennstrom of the alleged wrongdoing, brought a recording of a telephone conversation between herself and another parent to the attention of Defendant Dr. Wennstrom. (Exhibit E, Affidavit of Heidi Wennstrom, ¶24). Dr. Badlani asked Dr. Wennstrom to listen to the recording, and it corroborated her report of academic dishonesty against the other parent (identified in Dr. Wennstrom's affidavit as the "parent with questions") (Ex. E, Wennstrom Affidavit, ¶¶24-26). Dr. Wennstrom listened to a portion of the recording. (Ex. E, Wennstrom Affidavit, ¶¶24-26). There are no allegations in this case that Dr. Wennstrom created the recording or ever had possession of it. (See generally, Ex. A, Complaint). Despite this, Plaintiff Jain has continually insinuated that Dr. Wennstrom created or had possession of the recording. (Exhibit F, Deposition of Plaintiff Jain, pp. 71-72, 151, 156-57.). There is no evidence to suggest that Plaintiff Jain's insinuation has any merit. *Rummery*, 250 F.3d at 558 (plaintiff's unsupported speculation is not

sufficient to raise an inference that evidence was destroyed in bad faith). At trial, Dr. Wennstrom will testify she was not involved in creating the recording and never had possession of it.

6.  This Court should bar Plaintiffs, Plaintiffs' counsel, and any witness presented by Plaintiffs from suggesting or arguing that Dr. Wennstrom had any involvement with the creation of this recording or ever had possession of the recording of the telephone conversation. There is no evidence to support the veracity of this claim, and to allow Plaintiffs, their counsel, or any of their witnesses to suggest otherwise would be extremely prejudicial to Dr. Wennstrom and the Defendants. Additionally, because of the absolute lack of evidence to support Plaintiff Jain's assertions, allowing her, her counsel, or witnesses at trial to continue to make such unsupported assertions would also mislead and confuse the jury. Fed. R. Evid. 403.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order to bar Plaintiffs, Plaintiffs' counsel, and any witness presented by Plaintiffs from stating or arguing that Defendants improperly recorded conversations and subsequently destroyed or withheld evidence of the recordings.

## 21. Bar S. Jain and Plaintiff A's father from providing expert testimony on any medical or mental health injuries or damages allegedly sustained in this case.

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring S. Jain or Plaintiff A's father from providing testimony or evidence of Plaintiffs' mental health or medical treatment and diagnoses because S. Jain or Plaintiff A's father are not qualified to provide expert testimony on these topics and were not disclosed as experts in this case. In support of their Motion, Defendants state the following:

1.  Plaintiffs initially disclosed mental health providers in this matter but subsequently withdrew them as witnesses in open court and did not list them as trial witnesses.

Thereafter, Defendants dropped their request for complete records from these mental health providers. These witnesses were likewise not deposed in this case.

2.     Plaintiff Jain and her husband, Plaintiff A's father, are medical doctors and are both board certified in radiology. In deposition, both testified regarding Plaintiff A's alleged mental health and medical diagnoses that they believe were caused by this occurrence, and it is therefore reasonable to conclude that they will attempt to provide this testimony at trial. (Ex. F, Deposition of Plaintiff Jain, pp. 143-46, 151-53; Exhibit G, Deposition of Plaintiff A's father, pp. 73-81).

3.     This Court should bar S. Jain and Plaintiff A's father from providing expert testimony because neither was disclosed as an expert under Federal Rule of Civil Procedure 26(a)(2)(A), (B), or Federal Rule of Evidence 702, and the time for disclosing expert testimony has long passed. Fed. R. Civ. P. 26(a)(2)(D); *Musser v. Gentiva Health Srvsv.*, 356 F. 3d 751, 756-60 (7th Cir. 2004).

4.     The Seventh Circuit has held that formal disclosure of experts is required, and the failure to notify the opposing side of an intent to use a witness as an expert merits barring the witness from testifying as an expert. *Musser*, 356 F. 3d at 757-60. For example, a defendant should not have to assume that any witness disclosed may also testify as an expert; further, a party who fails to disclose the fact that a witness will provide expert testimony deprives the defendant of an opportunity to explore opinions during deposition, challenge the qualifications of the expert via a *Daubert* motion, or retain its own expert. *Id*. at 758-60. Indeed, in *Musser v. Gentiva Health Services*, the Seventh Circuit upheld the district court's exclusion of expert testimony from treating physicians because they were not disclosed as experts and the

25

notification to the defendant of the intent to use the witnesses as experts was not made until close to trial. *Id.*

5.     Plaintiffs should not be permitted to use S. Jain or Plaintiff A's father as an expert because it would be unfairly prejudicial to Defendants, who have not had the opportunity to depose them in an expert capacity, explore their opinions, obtain full records of mental health or medical treatment in this case, challenge the qualifications of these witnesses to render an expert opinion on the relevant subject matter, or obtain a rebuttal expert. *Musser*, 356 F. 3d at 757-58; Fed. R. Evid. 702 (requiring the expert to have specialized knowledge and skill). While Plaintiffs may be medical doctors, neither of them are board certified in psychology or psychiatry, and it is unknown what their exact qualifications would be to render opinions in this case. Further, the fact that Plaintiffs are medical doctors does not automatically qualify them to testify as to a mental health diagnosis of their son. Neither of them claims that their son is their patient. Second, they are both interested and biased parties in this litigation who should not be permitted to render self-serving opinions regarding their own or their son's alleged mental health or medical condition. These are just some of the issues that would have been explored in deposition had S. Jain or Plaintiff A's father been disclosed as an expert.

6.     Furthermore, any information S. Jain or Plaintiff A's father were provided regarding their son's medical or mental health condition by third parties is inadmissible hearsay and lacks a proper foundation. *Larsen v. Barrientes*, No. 1:09-cv-55, 2010 U.S. Dist. LEXIS 69419, **9-11 (N.D. Ind. July 12, 2010) (while plaintiff may testify as to his own perception of his physical and mental health before and after an accident, a plaintiff may not testify that an occurrence proximately caused his injuries or offer a medical diagnosis); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Evid. 701(c), 702, 802.

7.      This Court should bar S. Jain or Plaintiff A's father from testifying regarding Plaintiff A's alleged mental health treatment; Plaintiff A's medical or mental health diagnoses, prognosis, or the cause of any medical or mental health conditions; and the reasonableness of any invoices from any provider.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order to bar S. Jain and Plaintiff A's father from providing any testimony regarding Plaintiff A's alleged mental health treatment; Plaintiff A's medical or mental health diagnoses, prognosis, or the cause of any medical or mental health conditions; and the reasonableness of any invoices from any provider.

## 22.    Bar Plaintiff Jain's mother from testifying as to any medical diagnosis, treatment, or providing foundation for medical bills.

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiff Jain's mother from providing testimony or evidence of Plaintiffs' mental health, medical treatment, diagnoses, and mental health treatment bills because Plaintiff Jain's mother was withdrawn as a witness in this regard and was not disclosed as an expert in this case. Therefore, any such testimony would amount to an untimely disclosure and would be unduly prejudicial to Defendants. In support of their Motion, Defendants state the following:

1.      Plaintiff Jain's mother allegedly provided professional treatment to Plaintiff A. Plaintiffs initially disclosed mental health providers in this matter, including Plaintiff Jain's mother, but subsequently withdrew them as witnesses in open court. Plaintiffs' counsel further stipulated that he was not offering Plaintiff Jain's mother in her professional capacity as a licensed psychologist. Thereafter, Defendants dropped their request for complete records from

Plaintiff Jain's mother and she was not requested to answer questions in deposition about her treatment of Plaintiff A or any diagnoses made.

2.      Plaintiff Jain's mother was never disclosed in any capacity other than as a treating psychologist. Because she was withdrawn as a treating psychologist and not disclosed as any other type of witness, she was never deposed.

3.      Plaintiff Jain's mother was likewise not disclosed as an expert under Federal Rule of Civil Procedure 26(a)(2)(A), (B), or Federal Rule of Evidence 702, and the time for disclosing expert testimony has long passed. Fed. R. Civ. P. 26(a)(2)(D).

8.      Plaintiff Jain's mother should be barred from testifying as to alleged treatment, diagnoses, prognoses, or unpaid medical bills for any services rendered to Plaintiff A or to the Jain family because Plaintiffs withdrew her as a witness in this regard and because she has not been disclosed as an expert witness. *Musser v. Gentiva Health Srvsv.*, 356 F. 3d 751, 756-60 (7th Cir. 2004) (barring expert witness testimony where witnesses were not disclosed as experts in a timely and proper manner).

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order to bar Plaintiff Jain's mother from testifying regarding Plaintiff A's alleged mental health treatment; Plaintiff A's medical or mental health diagnoses, prognosis, or the cause of any medical or mental health conditions; the reasonableness of any invoices from any provider; and from testifying as to causation of any of Plaintiffs' or the Jain Family's alleged medical or mental health conditions.

## 23.     Bar Plaintiffs from Introducing any Medical Bills

Defendants, by through their attorneys, Wiedner & McAuliffe, move this Honorable Court to enter an Order barring testimony by Plaintiffs and their Counsel or witnesses from introducing into evidence any reference to medical or mental health bills.

1.      Plaintiffs did not include any medical/mental health bills in their pre-trial submission on damages and should therefore be barred from introducing any bills into evidence at trial.

2.      While Plaintiffs initially produced in discovery certain bills, they have not supplemented their production. Plaintiffs should be barred from introducing any bill that was not previously produced to Defendants in discovery.

3.      Further, under Illinois law, when a medical bill has not been paid, the plaintiff has the burden of proving that the charges are reasonable. *Kunz v. Little Co. of Mary Hosp. and Health Care Centers*, 373 Ill. App. 3d 615, 624-25 (1st Dist. 2007). Reasonableness can be established through the testimony of a person who has knowledge of the services rendered and the usual and customary charges for those services. *Arthur v. Catour*, 216 Ill. 2d 72, 82 (Ill. 2005). Absent evidence of its reasonableness, an unpaid bill or the unpaid portion of a medical bill is not admissible in evidence. *Id*. at 96. Here, Plaintiffs have withdrawn their treaters as witnesses and no witness competent to testify as to the reasonableness of any bills has been disclosed. Plaintiffs should be barred from introducing any unpaid bills into evidence.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs, their counsel or their witnesses from introducing into evidence any reference to medical or mental health bills.

**24.     Bar lay witnesses from using legal terminology in their testimony or testifying as to legal conclusions**

Defendants, through their attorneys, Wiedner & McAuliffe, move this Honorable Court to enter an Order barring Plaintiffs and their witnesses from using terminology with legal meanings to describe conduct and that will confuse, mislead, and be unhelpful to the jury. In support of their Motion, Defendants state as follows:

1.      Lay witnesses are not permitted to testify regarding legal conclusions and instead are limited to testifying as to what they "saw and heard." *Larsen v. Barrientes*, No. 1:09-cv-55, 2010 U.S. Dist. LEXIS 69419, **7-8 (N.D. Ind. July 12, 2010); *see U.S. v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009). Lay witness testimony that amounts to a legal conclusion is unhelpful to the jury, which is capable of evaluating evidence and drawing its own conclusions as to the legal impact of the evidence. *Noel*, 581 F. 3d at 496. Relying on *U.S. v. Noel*, the court in *Larsen v. Barrientes*, barred the plaintiff's witnesses from describing the conduct of a police officer as "unreasonable" or "excessive" because these were terms have a legal meaning and were core issues that the jury was charged with evaluating pursuant to the plaintiff's excessive force claim. 2010 U.S. Dist. LEXIS 69419, at **7-8. In *U.S. v. Noel*, the court barred the government from having its witness testify that photographs were "child pornography," and cited decisions barring witnesses from using terms like "conspiracy" or from opining that a defendant knew he was engaging in illegal activity. *Noel*, 581 F. 3d at 496 (citing *U.S. v. Espino*, 32 F.3d 253, 257 (7th Cir. 1994); *U.S. v. Wantuch*, 525 F.3d 505, 514 (7th Cir. 2008)); *accord U.S. v. Baskes*, 649 F.2d 471, 478 (7th Cir. 1980) (upholding trial court's decision to bar lay witness from testifying whether conduct was "wilful" [sic] because it was a legal conclusion).

2.      Here, Plaintiffs and their lay witnesses provided opinion testimony amounting to legal conclusions in their depositions and should not be permitted to do so at trial because it would be unhelpful to the jury. Additionally, Plaintiffs and their lay witnesses misused these

terms as they are understood both legally and in general conversation, and thus, this testimony would also mislead and confuse a jury and would be unduly prejudicial to Defendants.

3.      The terms Plaintiffs and their lay witnesses should be barred from testifying to are: "negligence," "willful and wanton," "interrogation," "interrogation defendants," "unreasonable," "seizure," and "home-school."

4.      The terms "negligence" or "willful and wanton" are key legal terms that will be used by the jury to, in part, determine the outcome of this case. As such, lay witnesses cannot testify to that conduct was "negligent" or "willful" because these terms have a legal meaning. *Scottsdale Ins. Co. v. City of Waukegan*, 689 F. Supp. 2d 1018, 1023 (N.D. Ill. 2010) (witness may not testify as to the legal implications of conduct and merely telling the jury what result to reach is not helpful to the jury); *Noel*, 581 F. 3d at 496; *Baskes*, 649 F.2d at 478.

5.      The terms "interrogation" and "custodial interrogation" likewise have a legal meaning and to allow Plaintiffs or their witnesses from testifying that the interview of Plaintiff A amounted to an interrogation would not only be unhelpful, it would prejudice the Defendants. In Plaintiffs' Fifth Amended Complaint, Plaintiffs repeatedly use the phrase "custodial interrogation" and refer to certain Defendants as "interrogation defendants." (Ex. A, Complaint, ¶¶3, 57, 80, 81, 115). Courts have held that these terms have recognizable legal meanings which are not implicated unless law enforcement personnel is involved and arises in the context of a criminal matter. *See Sabol v. Walter Payton College Prep. H.S.*, 804 F. Supp. 747, 756 (N.D. Ill. 2011) (finding plaintiff's characterization of questioning by school as an interrogation was "way off base" because police were not involved and there was no criminal activity suspected); *Walgren v. Heun*, 2019 U.S. Dist. LEXIS 8634, **3-4, 13 (N.D. Ill. Jan. 17, 2019) (describing questioning of a student by deans and a police officer as an "interrogation" because of police

presence and suspicion of criminal conduct by student); *C.S. v. Couch*, 843 F. Supp. 2d 894, 919 (N.D. Ind. 2011) (holding questioning of student was not a custodial interrogation where police were not present). Here, it is undisputed that there were no police present during the questioning of Plaintiff A and no criminal conduct was suspected. Accordingly, Plaintiffs, their lay witnesses, and their counsel should not be permitted to characterize the interview of Plaintiff as an "interrogation" or "custodial interrogation." To allow them to do so would be prejudicial, unhelpful, and misleading.

6.      The term "unreasonable" likewise has a specific legal meaning within the context of Plaintiffs' Fourth Amendment claim and Plaintiffs and their lay witnesses should not be permitted to testify as to their opinion that the questioning of Plaintiff A was unreasonable. Specifically, to impose liability against the Defendants under the Fourth Amendment claim, the jury must decide whether the questioning was objectively unreasonable in the context of the school environment. *Walgren*, 2019 U.S. Dist. LEXIS 8634, at **10-13. Just as in *Larsen v. Barrientes*, where the reasonableness of the police officer's conduct was an issue for the jury to decide, this Court should not permit Plaintiffs or their witnesses to testify as to their opinion of whether the questioning of Plaintiff A was unreasonable. 2010 U.S. Dist. LEXIS 69419, at **7-8.

7.      This Court should similarly prevent Plaintiffs and their lay witnesses from testifying that Plaintiff A was subject to a "seizure" within the meaning of the Fourth Amendment. *Walgren*, 2019 U.S. Dist. LEXIS 8634, at **10-13 (assuming for purposes of the motion that questioning of a student constituted a "seizure" within the meaning of the Fourth Amendment). This too is a question for the jury to determine and Plaintiffs' and their witnesses' opinions on whether Plaintiff A was "seized" would be unhelpful and prejudicial.

8.     The investigation conducted by the Defendants in this case arose out of allegations that Plaintiff Jain obtained extracurricular contest questions and course evaluation materials in advance to prepare Plaintiff A for the contests and course evaluations. Plaintiff Jain admitted in her deposition that to obtain the extracurricular contest questions in advance of the WordMasters Challenge (an extracurricular contest), she identified herself as a "home-school." (Ex. F, Deposition of Plaintiff Jain, pp. 75-76, 170, 195). When the allegations of the GeoBee (another extracurricular test) were brought to Dr. Wennstrom's attention, a third-party parent informed Dr. Wennstrom that Plaintiff Jain instructed her to identify herself as a home-school to obtain the GeoBee questions in advance of the contest. (Ex. E, Wennstrom Affidavit, ¶17). It is undisputed in this case that Plaintiff A attends public school and is not home-schooled by Plaintiff Jain or anyone else. (Ex. A, Complaint, ¶7). Plaintiff Jain undisputedly does not operate a "home-school." Despite this, both her and her husband testified that they provide extensive instruction and guidance to Plaintiff A at home in an attempt to explain and justify Plaintiff Jain's improper characterization of herself as a home-school. (Ex. F, Deposition of Plaintiff Jain, pp. 76-77, 170-72; Ex. G, Deposition of Plaintiff A's father, pp. 48-49). Plaintiff Jain and lay witnesses should not be permitted to testify that Plaintiff A was home-schooled because he undisputedly was not, and home-schooling and public school educations are mutually exclusive terms. "The term 'private school' as a lawful substitute for public schooling has been extended to include home schooling, where the teacher is competent, the required subjects are taught, and the child receives an education at least equivalent to public schooling." *People v. Harrell*, 34 Ill. App. 2d 205, 207-8 (4th Dist. 1962) (citing *People v. Levisen*, 404 Ill. 574, 576-7 (1950). To allow Plaintiffs or their lay witnesses to claim Plaintiff A was actually home-schooled would be confusing and misleading to a jury, as he undisputedly was not.

9.      Moreover, Plaintiffs filed this lawsuit in part because they believe that the discipline imposed upon Plaintiff A for approximately one year (barring him from extracurricular contests and disallowing Plaintiff A's parents from serving as volunteers in extracurricular contests for the School District) constitutes willful and wanton conduct. (Ex. A, Complaint, ¶¶3, 4, 121, 126, 171, 176(c)). Plaintiffs' allegations ignore the fundamental fact that Plaintiff Jain admitted to obtaining the WordMasters questions in advance of the test and that Plaintiff A admitted to Dr. Wennstrom that he had seen and studied the WordMasters and GeoBee questions in advance of the tests. (Ex. F, Deposition of Plaintiff Jain, pp. 75-76, 170, 195; Ex. E Wennstrom Affidavit, ¶28). These admissions were further bolstered by the information provided to Dr. Wennstrom by a third-party parent who informed her that Plaintiff Jain pressured her to identify as a home-school to obtain the GeoBee questions in advance of that test. (Ex. E, Wennstrom Affidavit, ¶¶16-17). Thus, the discipline imposed directly addressed the academic dishonesty engaged in by both Plaintiffs, and in fact, was the only way to ensure the academic integrity of the contests and ensure that the School District as a whole was not disqualified from participating in the contests, a punishment that had been rendered by the contest administrators themselves in other school districts where students were found to be cheating. (Ex. E, Exhibit 2 of Wennstrom's Affidavit, ¶¶10, 13-14). Plaintiff Jain should not be permitted to explain away her misrepresentations of herself as a home-school in order to justify her misconduct and where she undisputedly was not operating a home-school. Not only would this be unhelpful to the jury, it is factually and legally incorrect and would be extremely prejudicial to Defendants.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring to bar lay witnesses, including Plaintiffs, from providing testimony that amounts to legal conclusion or unhelpful opinion testimony.

34

**25.    Bar Hearsay Testimony regarding the Subject Interview.**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiff S. Jain, Plaintiffs' counsel and their witnesses from commenting, referencing or testifying regarding any statements or comments made relating to the subject interview, and in support thereof, state the following:

1.    Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is inadmissible at trial. Fed. R. Evid. 801(c).

2.    It is undisputed that the only persons present for the interview of Plaintiff A were Plaintiff A, Dr. Wennstrom, Ms. Voliva, and Ms. Owen. Plaintiff S. Jain and Plaintiff A's father were not present for the interview and have no personal knowledge of how the interview was conducted, what was said therein, how long the interview lasted, what Plaintiff A's responses were during said interview, what the demeanor or reaction of any person present was, or any other fact about the interview itself.

3.    Despite their lack of personal knowledge, Plaintiff Jain and Plaintiff A's father both testified in their depositions regarding all of the above-facts based upon what their son, Plaintiff A, told them. Additionally, both individuals consistently assign adjectives to exaggerate and mischaracterize the interview of Plaintiff A to fit their narrative of the case, without having any personal knowledge of what transpired during the interview. (Ex. F, Deposition of Plaintiff Jain, pp. 21-22, 26-27, 34, 151; Ex. G, Deposition of Plaintiff A's father, pp. 16-17, 36-39, 55).

4.    Any statements and comments that Plaintiff A made to any witness following the occurrence relating to the accident are hearsay and inadmissible at trial. Fed. R. Evid. 801(c); 807. These statements were made out-of-court and would be offered to prove the truth of the matter asserted: that the interview occurred consistently with the manner in which Plaintiff A

35

related it to other individuals in his post-interview statements. Therefore, these statements are prejudicial and unreliable hearsay statements and must be barred from trial.

WHEREFORE, Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiff S. Jain, or Plaintiffs' counsel, or other witnesses, from commenting, referencing or testifying regarding any statements or comments Plaintiff A made to any individual relating to the interview.

## 26. Bar testimony and argument that any Defendant was required to notify or obtain consent from Plaintiff A's parents prior to interviewing him

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs, Plaintiffs' counsel and their witnesses from commenting, referencing, arguing, or testifying that Defendants had any obligation to notify Plaintiff A's parents or obtain their consent to interview Plaintiff A, and in support thereof, state the following:

1.      Throughout their Fifth Amended Complaint, Plaintiffs suggest that it was wrongful and actionable for Dr. Wennstrom, Ms. Voliva, and Ms. Owen to have interviewed Plaintiff A regarding the GeoBee without notifying his parents or obtaining their consent (Ex. A, Complaint, ¶¶3, 79, 136).

2.      Teachers and school officials stand in the relation of parents and guardians with respect to students and disciplinary and non-disciplinary matters. *Gallarneau v. Calvary Chapel of Lake Villa*, 2013 IL App (2d) 120218, ¶7; 105 ILCS 5/24-24. This is known as the *in loco parentis* doctrine. *Gallarneau*, 2013 IL App (2d) 120218, ¶7.

3.      Illinois courts have considered whether parental notification or consent is needed prior to school officials questioning a student and have held that notification and consent are not required. *Wilson v. Cahokia Sch. Dist. 187*, 470 F. Supp. 897, 911-2 (S.D. Ill. 2007) (citing

*Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 663-4 (1995)) (finding that interview of sixth grade student did not violate Fourth Amendment where parent refused consent and was not present for interview). In fact, in *Wilson v. Cahokia School District 187*, the court specifically held that whether a parent consents to questioning or a search of a student should not be considered as part of the reasonableness standard under Fourth Amendment claims. *Id*. at 911-2. In so holding, the court noted that it is easy to imagine circumstances under which a parent might withhold consent, which would frustrate the school's responsibility to maintain discipline and investigate allegations of misconduct. *Id*. (citing *N.J. v. T. L. O*., 469 U.S. 325, 339 (1985)) (finding that schools must maintain a "proper educational environment," which requires swift, effective action) (quotation in original).

4.      Indeed, in *Walgren v. Heun*, a student's parents filed a Fourth Amendment claim arising out of an interrogation of their son; there, the school's deans and a police officer questioned the student about whether he had child pornography on his phone, and even after searching the phone and finding nothing, informed him that he was guilty of possessing child pornography and would have to register as a sex offender. No. 17-cv-04036, 2019 U.S. Dist. LEXIS 8634, *4 (N.D. Ill. Jan. 17, 2019). The parents emphasized that they were not contacted prior to the interrogation of their son, who committed suicide shortly after the interrogation. *Id*. at n. 3. In rejecting their arguments, the court found that these allegations were irrelevant as to whether the conditions of the "seizure" of the student were unreasonable under the Fourth Amendment. *Id*.

5.      In their depositions and Complaint, Plaintiff A's parents repeatedly attempt to construe the fact that Plaintiff A's parents were not notified or present during the questioning of Plaintiff A is wrongful or actionable. (Ex. A, Complaint, ¶¶3, 79, 136).

6.      Plaintiff A and Plaintiff A's parents, along with their counsel, should be prohibited from testifying or arguing that the school's decision to interview A without the consent or notification of A's parents was wrongful or actionable.

7.      First, any such suggestion or argument is contrary to well-settled law stating that school officials have the right to question students without parental consent or notification. *Wilson*, 470 F. Supp. at 911-2; 105 ILCS 5/24-24.

8.      Second, the fact that Plaintiff A's parents were not notified or present for the interview is not relevant to whether the questioning of A was unreasonable under the Fourth Amendment. *Wilson*, 470 F. Supp. at 911-2; *Walgren v. Heun*, 2019 U.S. Dist. LEXIS 8634, n. 3; 105 ILCS 5/24-24; Fed. R. Evid. 401. To allow Plaintiff A, Plaintiff A's parents, and their counsel to argue that a lack of consent was improper would be extremely prejudicial to the Defendants and is not probative of any issue in this case. Fed. R. Evid. 403.

9.      As noted in *Wilson*, there are multiple reasons why a parent might withhold consent and prevent a school from appropriately investigating misconduct. *Wilson*, 470 F. Supp. at 911-2. That is the exact circumstance here. Dr. Wennstrom was notified by a third-party parent that Plaintiff Jain pressured her into improperly obtaining the 2016 GeoBee questions in advance of the test and sharing them with Plaintiff Jain so that she could use them to prepare Plaintiff A for the actual exam questions. (Ex. E, Wennstrom Affidavit, ¶¶16-17, 29). Accordingly, Plaintiff A's parents were a core part of the misconduct investigated in this case; the facts presented to Dr. Wennstrom further suggested that Plaintiff Jain forced Plaintiff A to engage in the very academic dishonesty at issue. (Ex. E, Wennstrom Affidavit, ¶¶16-17, 21, 28, 34). Thus, not only were the Defendants under no obligation to obtain consent from Plaintiff A's parents to interview him, but

it defies logic to include a parent in an interview of the student where the school reasonably believed the parents were the cause of the wrongful conduct at issue.

WHEREFORE, Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs, Plaintiffs' counsel and their witnesses from commenting, referencing, arguing, or testifying that Defendants had any obligation to notify Plaintiff A's parents or obtain their consent to interview Plaintiff A or that it was wrongful or actionable to interview him without parental notification and consent.

**27.    Bar argument and testimony that Plaintiffs had any right to participate in extracurricular tests or contests**

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring Plaintiffs, Plaintiffs' counsel and their witnesses from commenting, testifying or arguing that Plaintiffs have any right to participate in extracurricular contests, and in support thereof, state the following:

1.    This case was filed in part because Plaintiffs believe that the discipline imposed on Plaintiffs following the investigation into academic dishonesty barred Plaintiff A from participating in extracurricular contests and from Plaintiff A's parents, including S. Jain, from volunteering at extracurricular contests. (Ex. A, Complaint, ¶¶3, 4, 176(c)).

2.    Plaintiffs highlight in their Fifth Amended Complaint a student's right to an education and state that it is against this backdrop that their claims should be viewed. (Ex. A, Complaint, ¶5).

3.    It is undisputed that the only discipline imposed on Plaintiffs were to bar them from participating in extracurricular contests, and this decision was lifted approximately one year after it was put in place. Plaintiff A was never removed from school and was not denied an education. The discipline was put in place as a direct consequence of Plaintiff Jain obtaining the

contest questions for the WordMasters Challenge and GeoBee in advance of the contests, and having Plaintiff A study those questions in advance of the contest. (Ex. E, Wennstrom Affidavit, ¶28; Ex. F, Deposition of Plaintiff Jain, pp. 75-76, 170, 195). Notably, in this litigation, while both Plaintiffs now argue they did not obtain the GeoBee questions in advance, Plaintiff Jain admitted that she obtained the WordMasters contest questions in advance by registering as a home school. (Ex. F, Deposition of Plaintiff Jain, pp. 75-76, 170, 195). Thus, even if Plaintiffs did not cheat on the GeoBee exam, it is undisputed that they cheated on the WordMasters Challenge. Additionally, while Plaintiffs dispute that they wrongfully obtained the GeoBee questions in advance, a third-party parent informed Dr. Wennstrom that Plaintiff Jain convinced her to obtain the questions and share them with her. (Ex. E, Wennstrom Affidavit, ¶¶16-17).

4.      Thus, after determining that there was evidence of academic dishonesty with respect to both contests, in addition to the F&P Assessment used to qualify students into the Gifted Program, Dr. Wennstrom informed Plaintiffs that Plaintiff A could not participate in extracurricular contests and his parents could not volunteer at extracurricular contests.

5.      Extracurricular activities, like the tests and contests at issue here, are a privilege, not a right. *Kulovitz v. Illinois High School Asso.*, 462 F. Supp. 875, 877-78 (N.D. Ill. 1978); *A.C. v. Bd. of Educ.*, No. 05-4092, 2005 U.S. Dist. LEXIS 38070, **8-9 (C.D. Ill. Dec. 28, 2005); *Jordan by Edwards v. O'Fallon Twp. High Sch. Dist. No. 203 Bd. of Educ.*, 302 Ill. App. 3d 1070, 1075-76 (5th Dist. 1999); *Clements v. Board of Education*, 133 Ill. App. 3d 531, 533, 536-37 (4th Dist. 1985). This policy is in line with long-standing case law within Illinois and the Seventh Circuit that students do not have a right to participate in extracurricular activities, including tests like the WordMasters Challenge and GeoBee. *Piekosz-Murphy v. Bd. of Educ. Of Cmty. High Sch. Dist. 230*, 858 F. Supp. 2d 952, 958-9 (N.D. Ill. 2012) (finding no right to

40

participate in National Honor Society); *Todd v. Rush Cty. Sch.*, 133 F.3d 984, 986 (7th Cir. 1998) (stating that extracurricular activities are a privilege, not a right); *Robinson v. Ill. High Sch. Assoc.*, 45 Ill. App. 2d 277, 286 (2nd Dist. 1963) (the right to a public education does not include participation in extracurricular activities).

6.      It should not be lost on this Court that this entire litigation arose out of the School District barring Plaintiff A from participating in extracurricular contests and his parents could not volunteer at extracurricular contests after they concluded Plaintiff Jain wrongfully obtained extracurricular contest questions in advance of the contests to provide Plaintiff A with an unfair advantage. Plaintiffs do not have any protected interest in participating in extracurricular activities such as these contests, and Plaintiffs, their attorneys, and witnesses should be barred from testifying, suggesting, or arguing that they have any right to participation in these extracurricular tests.

WHEREFORE, Defendants move this Honorable Court, *in limine*, to enter an Order barring Plaintiffs, Plaintiffs' counsel and their witnesses from commenting, testifying or arguing that Plaintiffs have any right to participate in extracurricular contests.

## 28.    Bar evidence of subsequent remedial measures

Defendants, by and through their attorneys, WIEDNER & McAULIFFE, LTD., move this Honorable Court to enter an Order barring evidence of, or reference to, any subsequent remedial measures. In support of this Motion, Defendants state the following:

1.      Defendants move this Honorable Court, *in limine*, for an order barring Plaintiffs, as well as their counsel and witnesses, from introducing into evidence, referencing, testifying to or mentioning any subsequent remedial measures undertaken by Defendants and the organizers of GeoBee, WordMasters, and the Fountas & Pinnell ("F&P") exams. Evidence of actions

subsequent to the occurrence is not admissible to prove wrongdoing. Fed. R. Evid. 407. The primary ground for excluding evidence of subsequent remedial measures to prove negligence or culpable conduct is the "social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." *Public Service Co. v. Bath Iron Works Corp.*, 773 F.2d 783, 791 (7th Cir. 1985) (quoting Advisory Committee Notes to Proposed Rule 407). Rule 407 is not limited to "repair[s]" in the literal sense. *See Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1045 (7th Cir. 2007) (barring plaintiff from using evidence that defendant changed their insurance policy to establish defendant's culpable conduct); *Ford v. Schmidt*, 557 F.2d 408, 410-11 (7th Cir. 1978) (finding evidence of new postage stamp policy instituted by state prison following civil right suit alleging that prison's former stamp policy prevented plaintiffs from mailing court papers inadmissible to prove culpable conduct).

3. The only purpose Plaintiffs could have in eliciting testimony regarding subsequent remedial measures is to imply an admission of guilt by Defendants. Moreover, the probative value of any exhibits or testimony relating to subsequent remedial measures is overwhelmingly outweighed by the danger of unfair prejudice it would impose. Fed. R. Evid. 403; *see Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007).

4. Plaintiffs should be barred from introducing any evidence or testimony that the Defendants changed any of their practices or school policies after the interview of Plaintiff A or after learning that Plaintiff S. Jain was able to obtain the questions to the WordMasters or GeoBee contests in advance of the tests and purchased the F&P Assessments to prepare Plaintiff A in advance of the F&P test.

5. For context, the investigation into the academic dishonesty of Plaintiffs revealed three instances of academic dishonesty engaged in by Plaintiffs: 1) obtaining the WordMasters

extracurricular contest questions in advance of the test, which Plaintiff S. Jain has now admitted; 2) obtaining the GeoBee extracurricular contest questions in advance of the test, which Plaintiff S. Jain admits she attempted to do; and 3) obtaining the F&P Assessments in advance of the tests administered by the school, which Plaintiff S. Jain admits. (Ex. E, Wennstrom Affidavit, ¶¶16-17, 28-29, 34; Ex. F, Deposition of Plaintiff Jain, pp. 66, 75-76, 78-80, 160-61, 167-69, 170, 176-77, 195). In response to these instances of academic dishonesty, Defendant Wennstrom determined that Plaintiff A should not be permitted to participate in extracurricular contests and his parents should not be permitted to volunteer at the school for extracurricular contests. (Ex. E, Wennstrom Affidavit, ¶35).

6.     In deposition, Plaintiff S. Jain attempted to explain that she did not believe it was improper for her to obtain the WordMasters contest questions in advance of the test by representing she operated a home school because nothing on these websites required her to prove she operated a home school. (Ex. F, Deposition of Plaintiff Jain, pp. 75-76, 170-72). Despite the fact that Plaintiff A was given an unfair advantage by having the test questions in advance, Plaintiff S. Jain maintained that these test questions were "publicly available" and therefore did not engage in academic dishonesty. (Ex. F, Deposition of Plaintiff Jain, pp. 48, 170-71). Likewise, despite Plaintiff S. Jain instructing another parent on how to register as a home school to gain access the contest questions, she attempted to explain that obtaining the questions was proper because her son's teacher provided a link to the GeoBee's website to all the parents.  (Ex. E, Wennstrom Affidavit, ¶17; Ex. F, Deposition of Plaintiff Jain, pp. 69, 164-65, 167).

7.     Plaintiff S. Jain similarly testified in deposition that the F&P manuals were "publicly available" and that nothing prohibited her from purchasing these materials to help her son study for the F&P exam. (Ex. F, Deposition of Plaintiff Jain, pp. 48, 79).

8. The F&P exam is used to assist the school in placing students into the Gifted Language Arts program. (Ex. E, Wennstrom Affidavit, ¶34; Ex. E, Exhibit 2 of Wennstrom's Affidavit, ¶8). The exam is designed and is only accurate when students have not been pre-exposed to the exam questions. (Ex. E, Exhibit 2 of Wennstrom's Affidavit, ¶8). This fact is stated in the manuals that Plaintiff S. Jain purchased and used to prepare Plaintiff A for the exam, which Plaintiff S. Jain claims she did not read or know. (Ex. F, Deposition of Plaintiff Jain, pp. 176-77). Plaintiff A was placed in the Gifted Language Arts Program based upon his F&P scores, which jumped by four grade levels in one year. (Ex. E, Exhibit 2 of Wennstrom's Affidavit, ¶8).

9. On information and belief, GeoBee, WordMasters, and F&P may have included additional statements on their websites and in their materials in direct response to the conduct of Plaintiff S. Jain to make clearer than it already was that it is wrongful for parents to obtain these materials in advance of the tests to prepare their children and provide them with an unfair advantage.

10. Plaintiffs, their counsel, and witnesses should be barred from testifying or introducing any evidence that Defendants, GeoBee, WordMasters, or F&P made any changes to their policies or practices following the discovery of Plaintiffs' conduct in this case because it is not probative of any fact and is unduly prejudicial.

WHEREFORE Defendants move this Honorable Court, *in limine*, to enter an Order barring evidence of, or reference to, any subsequent remedial measures, including but not limited to barring any evidence that Defendants', GeoBee's, WordMaster's, or F&P's policies or practices changed following the alleged conduct at issue in this case.

Respectfully Submitted:


/s/ Rachel S. Nevarez
One of the Attorneys for Defendants

Darcy L. Proctor- ARDC #6199731
dlproctor@wmlaw.com
Rachel S. Nevarez-ARDC # 6304120
rsnevarez@wmlaw.com
WIEDNER & McAULIFFE, LTD.
One North Franklin, Suite 1900
Chicago, Illinois  60606
(312) 855-1105

**CERTIFICATE OF SERVICE**

I, Rachel S. Nevarez certify that I electronically filed Defendants' Motions in Limine with the Clerk of the Court using the CM/ECF system on February 21, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties that have not filed their appearances will receive this notice via regular e-mail. Parties may access this filing through the Court's electronic system.

/s/ Rachel S. Nevarez
*Attorney for* **Defendants Butler Illinois School District 53, et al.**

Darcy L. Proctor – ARDC #6199731
dlproctor@wmlaw.com
Rachel S. Nevarez- ARDC #6309408
rsnevarez@wmlaw.com
WIEDNER & McAULIFFE, LTD.
One N. Franklin St., Suite 1900
Chicago, Illinois 60606
Telephone: (312) 855-1105
Facsimile: (312) 855-1792