# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| S. JAIN, for herself and on behalf of her son, MINOR "A," | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | No. 17 C 0002 |
| v. | ) ) | Judge Ronald A. Guzmán |
| BOARD OF EDUCATION OF BUTLER SCHOOL DISTRICT 53, HEIDI WENNSTROM, KELLY VOLIVA, and LISA OWEN, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons explained below, defendants' motion for summary judgment is granted as to Count I of the Fifth Amended Complaint, and Counts III and IV are dismissed without prejudice.

## BACKGROUND

In this action, plaintiff, S. Jain, asserts for herself and on behalf of her minor son, "A," claims that arise from Butler School District 53's (the "District's") actions and investigation stemming from a report that Jain had engaged in deception in order to provide A with unfair advantages in academic competitions (the National Geographic Bee (the "GeoBee") and the WordMasters Challenge ("WordMasters")). In the current complaint, plaintiffs allege that District employees interrogated A about cheating in those competitions and "coerced a false confession from him that he participated in the GeoBee contest after studying the actual contest questions." (ECF No. 170, 5th Am. Compl. ¶¶ 57, 87.) They further allege that, following a "biased" investigation of the purported cheating, A was prohibited from participating in future academic competitions

while a student in the District, and Jain was not permitted to serve as a parent volunteer in any school-related contests. (*Id.* ¶ 121.)

Plaintiffs sued the District; the District's Board of Education (the "Board") and its members at the relevant time; District Superintendent Heidi Wennstrom; Kelly Voliva, the former Principal of the District's Brook Forest Elementary School ("Brook Forest"); and Brook Forest Assistant Principal Lisa Owen. Plaintiffs also sued two attorneys who performed relevant work for the District, but the Court dismissed the claims against those defendants on March 22, 2018, as well as several other claims. (ECF No. 208, Mem. Op. & Order.)

Plaintiffs' remaining claims are under 42 U.S.C. § 1983 and Illinois law for A's unlawful seizure, against Wennstrom, Voliva, and Owen (the "Administrators") (Counts I and III), and under Illinois law for willful and wanton conduct by both plaintiffs against the Board (Count IV).[1] Defendants move for summary judgment on the remaining claims under Federal Rule of Civil Procedure 56.

## MATERIAL FACTS[2]

In January 2016, A was a fifth-grade student at Brook Forest, a public elementary school in Oak Brook, Illinois. On January 15, 2016, Wennstrom received information from a District parent who alleged that other District parents had obtained in advance the examination questions for the

---

[1]Count IV was originally asserted against all defendants, but the parties recently agreed to dismiss with prejudice from that claim the District and the individual defendants, leaving the Board as the sole defendant to Count IV.

[2]The Court has disregarded several immaterial statements contained in the parties' Local Rule 56.1 statements of fact.

2

GeoBee.³  On January 19, 2016, the first round of the GeoBee took place, in which A participated. Later that day, around 2:00 p.m., Owen, who was A's homeroom teacher, came to A's desk in his homeroom and told him that they needed to go to the principal's office so that "they" could ask A some questions.  (ECF No. 253-3, Dep. of A, at 27.)  A had never been to the principal's office before.

For purposes of their motion for summary judgment, defendants are crediting A's account of the ensuing meeting.  (ECF No. 253, Defs.' LR 56.1 Stmt. ¶ 1.)  After A arrived at Voliva's office, he sat in a chair on one side of a table, with Wennstrom directly across the table from him, Owen across the table and to the left, and Voliva across the table and to the right.  Wennstrom and Voliva proceeded to question A (A characterizes this questioning as an "interrogat[ion]").  (*Id.* at 16.)  They asked A dozens of questions.  Initially, the Administrators spoke very kindly to A and told him he was not going to be in trouble, but after a few minutes, they used "mean voice[s]" to "say[] things" that, according to A, he had not done.  (*Id.* at 32.)  They "yelled" and "glar[ed]" at him.  (*Id.* at 32, 34.)  A felt scared and very nervous and was shaking and sweating.  The Administrators said things to him that did not make sense, such as "Do you know why you're here?," "We know the truth," "Don't lie," and "You don't need to cry."  (*Id.* at 34, 36.)  A does not remember whether he cried, but he says that he was "very teary and upset."  (*Id.* at 35.)

Wennstrom turned her laptop screen toward A, showed him questions that were asked during the GeoBee that morning, and asked him about those questions.  Wennstrom asked A to read the questions out loud to see if he recognized them.  At his deposition, A denied having seen those

---

³Although plaintiffs do not dispute the content of this fact statement, they argue that it should be stricken as inadmissible hearsay.  It is not.  Defendants are not offering the statement to prove the truth of the matter asserted, *i.e.*, that District parents had obtained the examination questions for the GeoBee, but to establish that such a complaint was made to Wennstrom and its effect on her.

3

specific questions before the GeoBee, but acknowledged that he had told Wennstrom that his mother had had access to those questions. A stated in his deposition, however, that what he had told Wennstrom was not "accurate" in that he had "only said that so [he] would get out of the room faster," and that he had agreed with what the Administrators "wanted [him] to say" because otherwise, they would not move on to the next question. (*Id.* at 47-48, 50-51.) A also stated: "[Wennstrom] . . . put words in my mouth and I was very scared and nervous so it wasn't the actual thing what I said. It wasn't the truth." (*Id.* at 53.) Wennstrom and Voliva also asked A about WordMasters and another test and about how A had studied for them. Nothing else was discussed at the meeting. Owen did not ask A any questions. The meeting lasted between an hour and fifteen minutes and an hour and a half, and afterward, Owen walked A back to his classroom. A's parents were not present during the meeting, they were not notified in advance about it, and plaintiff Jain had not previously been contacted about the topics that were discussed with A.

In their Local Rule 56.1 fact statements, the parties also set forth a number of additional facts pertaining to the ensuing events—Wennstrom's and the Board's investigation of the cheating allegations, the sanctions imposed on plaintiffs, and the effects on A. Because these facts are not material to the disposition of defendants' motion, the Court does not discuss them.

## DISCUSSION

**A.  Legal Standards**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016). The Court must construe the evidence and all inferences that reasonably can

4

be drawn therefrom in the light most favorable to the nonmovant. *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). Under Rule 56, the movant has the initial burden of informing the court why a trial is not necessary. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmovant bears the ultimate burden of persuasion on a particular issue, the movant's initial burden may be discharged by pointing out to the court that there is an absence of evidence to support the nonmovant's case. *Id.* Upon such a showing, the nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (internal quotation marks and citation omitted). The nonmovant need not produce evidence in a form that would be admissible at trial, but he must go beyond the pleadings to demonstrate that there is evidence upon which a jury could find in his favor. *Id.* at 1168-69 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

B.  **Section 1983 Unconstitutional Seizure**

Count I is A's claim against the Administrators under 42 U.S.C. § 1983 for unlawful seizure in violation of the Fourth Amendment. Defendants contend that they are entitled to summary

judgment on the merits and because qualified immunity shields them from liability.[4] The qualified-immunity ground is dispositive, so the Court need not reach the merits.[5]

In general, qualified immunity shields public officials from liability for civil damages "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The goal of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow*, 457 U.S. at 818. Thus, qualified immunity is both a liability defense and a limited entitlement not to stand trial. *Jackson v. Curry*, 888 F.3d 259, 262 (7th Cir. 2018). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, --- U.S. ----, 136 S. Ct. 305, 308 (2015) (citation and internal punctuation omitted).

---

[4]Based on the same arguments, defendants also contend that they are entitled to summary judgment on Count III, A's unlawful-seizure claim against the Administrators under Article I, Section 6 of the Illinois Constitution. (ECF No. 234, Defs.' Mem. Supp. Mot. Summ. J. at 2.) As to qualified immunity, however, defendants have not asserted it as a defense to Count III; they have asserted it solely with respect to Count I, the § 1983 claim. (ECF No. 223, Defs.' Am. Affirmative Defenses ¶ 2.) It does not appear that qualified immunity for federal claims extends to state-law claims under Illinois law, in any event. *Horton v. City of Chi.*, No. 13 CV 6865, 2018 WL 4699790, at *14 (N.D. Ill. Sept. 30, 2018). But ultimately, Count III may be a nonstarter; courts in this district have concluded that Article I, Section 6 of the Illinois Constitution does not create a private right of action for damages. *See, e.g.*, *Lee v. Vill. of Glen Ellyn*, No. 16 CV 7170, 2017 WL 2080422, at *4 (N.D. Ill. May 15, 2017) (citing cases).

[5]There is one matter pertaining to the parties' merits arguments that the Court must discuss. Plaintiffs cite *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009), and provide the following explanatory parenthetical: "two-hour interrogation of 9-year[-]old girl in a private office at school constituted a violation of the Fourth Amendment." (ECF No. 263, Pls.' Resp. Defs.' Mot. at 4.) But plaintiffs' counsel neglects to inform the Court that the Supreme Court vacated as moot the very portion of the Ninth Circuit's opinion that addressed the Fourth Amendment issue. *See Camreta v. Greene*, 563 U.S. 692, 714 (2011). Counsel should be more careful with subsequent history.

"Qualified-immunity analysis usually entails a two-step inquiry: we ask (1) whether the facts alleged or shown by the plaintiff establish a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (citing *Pearson*, 555 U.S. at 232). "This order of inquiry is not rigid, however; we may address the second question first if it simplifies the analysis." *Id*. Assuming for the sake of argument that plaintiff A has established a genuine issue of material fact as to the first prong, the Court turns to the second prong of the qualified-immunity analysis, because a plaintiff's failure to establish *either* prong is dispositive. *See Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017).

To show that a right was clearly established, a plaintiff must demonstrate that existing case law at the time of the challenged conduct "'placed the statutory or constitutional question beyond debate.'" *Dockery*, 911 F.3d at 466 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Qualified immunity cannot be defeated simply by 'alleging a violation of extremely abstract rights.'" *Id.* (brackets omitted) (quoting *White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 552 (2017)); *see also City of Escondido v. Emmons*, --- U.S. ----, 139 S. Ct. 500, 503 (2019) ("This Court has repeatedly told courts not to define clearly established law at a high level of generality.") (internal punctuation and citation omitted). "[T]o place the constitutional question beyond debate, the precedent must be 'particularized to the facts of the case.'" *Dockery*, 911 F.3d at 466 (quoting *White*, 137 S. Ct. at 552); *see also Emmons*, 139 S. Ct. at 504 ("While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate.") (brackets omitted). Alternatively, a plaintiff may overcome qualified immunity by persuading the court that the conduct in question is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable public officer could have thought

she was acting lawfully. *Dockery*, 911 F.3d at 466-67 (quoting *Abbott v. Sangamon Cty.*, 705 F.3d 706, 723-24 (7th Cir. 2013)). Such "obvious cases" are "rare." *District of Columbia v. Wesby*, --- U.S. ----, 138 S. Ct. 577, 590 (2018).

Plaintiffs contend in a single sentence "[a]s an initial matter" that the defendants' conduct was so egregious and unreasonable that no reasonable official could have believed it would not violate the law. (ECF No. 263, Pls.' Resp. Defs.' Mot. at 10.) The argument is undeveloped and therefore waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). It is also unpersuasive. As for case law existing at the relevant time, plaintiffs fail to point to analogous authority. They simply cite one decision, *Wallace by Wallace v. Batavia School District 101*, 68 F.3d 1010 (7th Cir. 1995), for the proposition that "school officials may be subject to constitutional claims for Fourth Amendment violations when they are unreasonable under the circumstances then existing and apparent." (Pls.' Resp. Defs.' Mot. at 11 (internal punctuation omitted).) This is an assertion of a decision that reaffirms the right to be free from unreasonable seizures in a general sense. Plaintiffs' argument is not sufficiently particularized to the circumstances of A's questioning by the Administrators. *See Findlay v. Lendermon*, 722 F.3d 895, 900 (7th Cir. 2013). Plaintiffs fail to identify any factually-similar case that would have alerted the Administrators that their conduct violated a clearly-established right. Moreover, plaintiffs do not discuss the facts of *Wallace*, which are inapposite because they involved a teacher grabbing the arm of a sixteen-year-old student in order to prevent a fight. Because plaintiffs have not satisfied their burden of showing the existence

of clearly-established law that prohibited the Administrators' actions, the Court grants summary judgment to those defendants on Count I on the ground of qualified immunity.[6]

C.      **State-Law Claims for Unlawful Seizure and Willful and Wanton Conduct**

The remaining claims are Count III, A's state-law claim for unlawful seizure, and Count IV, a state-law claim for willful and wanton conduct, which is considered an aggravated form of negligence under Illinois law.[7] *See Sparks v. Starks*, 856 N.E.2d 575, 577 (Ill. App. Ct. 2006). "The general rule, when the federal claims fall out before trial, is that the district court should relinquish jurisdiction over any supplemental . . . state law claims in order to minimize federal judicial intrusion into matters of purely state law." *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015). The Court does not see any reason to continue exercising jurisdiction over plaintiffs' state-law

---

[6]The Court's conclusion that the Administrators are entitled to qualified immunity should not be taken as an indication that the Court condones the manner in which A was questioned. The Court is mindful that defendants have accepted A's version of the events as true only for purposes of their motion and that their position throughout this litigation has been that their meeting with A was much shorter than he asserts and that they did not yell at him or attempt to intimidate him. However, they have never disputed that three administrators, including the District superintendent, questioned A outside his parents' presence and absent exigent circumstances about academic dishonesty that was allegedly initiated by one of those parents. While the Administrators' conduct did not violate clearly-established rights of which a reasonable person would have known, their response was disproportionate to the circumstances presented. Indeed, there was little or no reason for the investigation of this incident to be conducted in this manner. Three adults in positions of authority questioned a nine-year-old child, for whose well-being they were responsible, outside the presence of his parents about an event that posed no immediate danger to the safety or well-being of other students or the orderly conduct of school activities. One would expect that in the future, educators in such situations would devote greater consideration to the welfare of the child entrusted to their care than the need to connect the child's parent to scholastic misconduct. It cannot be good for any nine-year-old child to be pressured into implicating his parent in wrongdoing.

[7]Plaintiffs allege that all defendants willfully and wantonly did the following: failed to properly investigate the allegations of academic dishonesty; "targeted the overwhelming weight of their authority on a 9-year-old boy"; disclosed their "unfounded allegations and unwarranted punishment" to District families and staff; employed a law firm to conduct an "inherently biased and flawed investigation"; and "continue to single out" A "for different treatment than his peers." (5th Am. Compl. ¶ 176.)

claims, and, after having considered the factors of "judicial economy, convenience, fairness, and comity," *id.*, the Court in its discretion declines to exercise supplemental jurisdiction over the claims, and dismisses Counts III and IV without prejudice. See 28 U.S.C. § 1367(c)(3); *Harvey v. Town of Merrillville*, 649 F.3d 526, 533 (7th Cir. 2011) (when a district court declines to exercise supplemental jurisdiction over state-law claims, the proper course is to dismiss them without prejudice).

## CONCLUSION

Defendants' motion for summary judgment [233] is granted as to Count I of the Fifth Amended Complaint. The Court will enter judgment in favor of the Administrators and against A on the § 1983 claim. The Court declines to exercise supplemental jurisdiction over Counts III and IV, the remaining state-law claims, and dismisses those claims without prejudice. All pending motions and schedules are stricken as moot. Civil case terminated.

**DATE**: March 12, 2019

**Ronald A. Guzmán**
**United States District Judge**